ORIGINAL

FAXED



1 | **McGuireWoods LLP**
Matthew C. Kane, Esq. (SBN 171829)
2 |     E-Mail: mkane@mcguirewoods.com
Michael D. Mandel, Esq. (SBN 216934)
3 |     E-Mail: mmandel@mcguirewoods.com
John A. Van Hook, Esq. (SBN 205067)
4 |     E-Mail: jvanhook@mcguirewoods.com
Christopher A. Killens, Esq. (SBN 254466)
5 |     E-Mail: ckillens@mcguirewoods.com
1800 Century Park East, 8th Floor
6 | Los Angeles, California 90067
Telephone: (310) 315-8200
7 | Facsimile: (310) 315-8210

8 | Attorneys for Defendant
BANK OF AMERICA CORPORATION

9

10 | **UNITED STATES DISTRICT COURT** LB

11 | **NORTHERN DISTRICT OF CALIFORNIA**

12 | CV 13 2223

13 | SHERI GARIBALDI, on behalf of herself and    CASE NO.
all others similarly situated,

14 |         Plaintiff,     [San Mateo County Superior Court Case No. CIV-521097]

15 |      vs.     **DEFENDANT BANK OF AMERICA**

16 |      **CORPORATION'S NOTICE TO**
BANK OF AMERICA CORPORATION, and    **FEDERAL COURT OF REMOVAL OF**
17 | DOES 1 through 10,     **CIVIL ACTION FROM STATE COURT**

18 |         Defendants.    **DECLARATION OF ROBERT**
**DROZYNSKI IN SUPPORT THEREOF**
19 |     *[Filed Under Separate Cover]*

20 |     Complaint Filed:    04/12/2013
Complaint Served:   04/15/2013

21

22

23

24

25

26

27

28

47954831.2

1  **TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN**

2  **DISTRICT OF CALIFORNIA:**

3        PLEASE TAKE NOTICE that Defendant BANK OF AMERICA CORPORATION

4  ("Defendant" or "BAC") hereby removes the above-entitled action from the Superior Court in and

5  for the County of San Mateo (the "State Court") to this United States District Court for the

6  Northern District of California, on the grounds that this Court has original jurisdiction over this

7  civil action pursuant to 28 U.S.C. §§ 1331, 1332(d), 1441 and 1446, the Class Action Fairness Act

8  of 2005 ("CAFA"), and all other applicable bases for removal. In support of its Notice of

9  Removal, Defendant avers as follows:

10                            **STATE COURT ACTION**

11       1.     Plaintiff Sheri Garibaldi ("Plaintiff") filed a Complaint against Defendant (the

12  "Complaint") in the State Court on April 12, 2013, in a case styled as *Sheri Garibaldi, on behalf of*

13  *herself and all others similarly situated, v. Bank of America Corporation and DOES 1 through 10,*

14  Case No. CIV-521097 (the "State Court Action"), a true and correct copy of which is attached

15  hereto as Exhibit A.

16       2.     On or about April 15, 2013, BAC's registered agent for service of process was

17  served with the following documents from the State Court Action, a true and correct copy of each

18  of which is attached hereto as the Exhibits identified below:

19                  Exhibit A:     Complaint

20                  Exhibit B:     Summons

21                  Exhibit C:     Civil Case Cover Sheet

22                  Exhibit D:     Certificate Re: Complex Case Designation

23       3.     Defendant is informed and believes that the aforementioned documents and

24  exhibits constitute all of the process, pleadings, and orders on file in the State Court action.

25       4.     Defendant is informed and believes that it is the only defendant which has been

26  properly served with process in the State Court Action. Defendant Does 1-10 have yet to be

27  identified, and thus are to be disregarded for the purposes of this removal. *See* 28 U.S.C. §

28

4795483.2                                             2

**DEFENDANT BANK OF AMERICA, CORPORATION'S NOTICE TO FEDERAL COURT**
**OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

1 | 1441(a). As such, Defendant BAC is the only Defendant needed to join and consent to this
2 | removal.

3 | ### REMOVAL JURISDICTION: CLASS ACTION FAIRNESS ACT

4 | 5. Pursuant to 28 U.S.C. §§ 1332 and 1441, removal to this Court is proper under
5 | CAFA. Under CAFA, this Court has jurisdiction over class actions where any member of the
6 | class is a citizen of a State different from any defendant, and where the aggregate amount in
7 | controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and the number of
8 | members of all proposed plaintiff classes in the aggregate is at least 100 class members. 28 U.S.C.
9 | § 1332(d)(2)-(6). CAFA authorizes removal of such actions under 28 U.S.C. § 1446.

10 | 6. As required by 28 U.S.C. § 1441, Defendant seeks to remove this case to the
11 | United States District Court for the Northern District of California which is the District Court
12 | embracing the place where the State Court Action has been filed.

13 | 7. In accordance with 28 U.S.C. § 1446(d), Defendant will provide contemporaneous
14 | written notice of this Notice of Removal to all adverse parties and to the Clerk of the State Court.

15 | 8. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §
16 | 1332(d)(2), and is one which may be removed to this Court by Defendant, because (1) the number
17 | of members of all proposed plaintiff classes in the aggregate is at least 100 class members; (2)
18 | there is diversity of citizenship between Plaintiff and Defendant; and (3) the amount-in-
19 | controversy exceeds $5,000,000, exclusive of interest and costs.

20 | 9. Plaintiff alleges that she worked for Defendant "as a part-time non-exempt
21 | employee" from 2005 until February 2013. *See* Complaint, ¶¶ 1 and 3. She further alleges that
22 | Defendant provided and provides part-time employees with an hours-based classification to
23 | determine accrual of certain benefits such as vacation pay, floating holidays and holiday pay and
24 | that Defendant scheduled and schedules its part-time employees to work more hours than the
25 | hours-based classification. *Id.* at ¶¶ 4-8.

26 | 10. Plaintiff purports to bring this action pursuant to California Code of Civil
27 | Procedure § 382 as a class action, and seeks certification on behalf of the following putative
28 | classes and subclasses:

4795483.2      3

    a. All current and former non-exempt, part time, BAC employees employed at retail banking centers in California whose average hours of work exceed(ed) their hours-based classification between the present and four years prior to the filing of the Complain (hereinafter, "**Class 1**");

    b. All former non-exempt, part –time, BAC employees employed at retail banking centers in California whose average hours of work exceeded their hours-based classification between the present and four years prior to the filing of the Complaint (hereinafter, "**Subclass 1a**");

    c. All current and former non-exempt, part-time BAC employees employed at retail banking centers in California who worked at more than one location in a day between the present and four years prior to the filing of the Complaint (hereinafter "Class 2").

    d. All former non-exempt, part-time, BAC employees employed at retail banking centers in California who worked at more than one location in a day between the present and four years prior to the filing of the Complaint (hereinafter, "**Subclass 2a**");

    e. All former, California-based, BAC employees who were not paid the cash value of their accrued recognition points upon separation from BAC's employ between the present and four years prior to the filing of the Complaint (hereinafter, "**Class 3**"); and

    f. All former, California-based, BAC employees with accrued recognition points whose access to the on-line store was removed upon their termination or whose accrued points otherwise "expired" between the present and four years prior to the filing of the Complaint (hereinafter, "**Class 4**").

*See id.* at ¶32(a)-(d).

    11.    BAC did not employ Plaintiff or any of the putative class members that she seeks to represent. Rather, Plaintiff was employed at all times relevant to this action by Bank of America, N.A. ("BANA"). Accordingly, BANA, and not BAC, is the proper defendant in this action.

**Citizenship of Parties**

    12.    **Plaintiff's Citizenship.** Defendant is informed and believes and thereupon alleges that, at the time that the State Court Action was filed and at the time that this Notice of Removal is filed, Plaintiff is a resident and citizen of the State of California and has the intent to remain in California. *See* Exh.A (Complaint) ¶1.

4795483.2

4

**DEFENDANT BANK OF AMERICA, CORPORATION'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

1      13.    **Defendant's Citizenship.** The Summons and Complaint names Defendant BAC as

2 the sole identified defendant. As shown on the California Secretary of State's Business Entity

3 Search website, Defendant BAC is a corporation formed and existing under the laws of the State

4 of Delaware, with its headquarters and principal place of business located at all relevant times in

5 Charlotte, North Carolina:



16 *See* URL at http://kepler.sos.ca.gov/. At its North Carolina headquarters, BAC's officers direct,

17 control, and coordinate its activities, and the majority of its executive and administrative functions

18 are performed there. Thus, at all relevant times, BAC was not and is not a citizen of the State of

19 California but, rather, was and is a citizen of the States of Delaware and North Carolina for the

20 purpose of determining jurisdiction.[1] *See Hertz Corp. v. Friend*, 130 S.Ct. 1181, 175 L.Ed.2d

21 1029, 1041-42 (2010) (for the purposes of removal, the "nerve center" test applies, whereby a

22 corporation is deemed to be a citizen of the State where the corporation's officers direct, control,

23 and coordinate the corporation's activities); *Tosco Corp. v. Communities for a Better*

24 *Environment*, 236 F.3d 495, 499 (9th Cir. 2001).

---

27     [1] Even if Plaintiff had named BANA, the entity that employed Plaintiff, as the defendant in this action, it would make no difference to this removal, as BANA is a citizen of North Carolina.

4795483.2              5

1      14.    **Doe Defendants.** The Complaint also names "DOES 1 through 10" as defendants.

2 For purposes of removal, "the citizenship of defendants sued under fictitious names shall be

3 disregarded." 28 U.S.C. § 1441(a). Therefore, for purposes of removal with jurisdiction based on

4 28 U.S.C. § 1332, the citizenship of all of the "Doe" defendants is to be disregarded.

5 **Aggregate Membership**

6      15.    According to Plaintiff, the putative classes that she purports to represent "are

7 sufficiently numerous that joinder of all putative class members is impracticable." *See* Exh. A

8 (Complaint) ¶ 35. Plaintiff also alleges that her claims are typical of the putative class members

9 that she seeks to represent. *Id.,* ¶ 37. While Defendant disputes that it employed any putative

10 class members or is otherwise a proper defendant in this action, its subsidiary BANA employed

11 approximately 13,418 individuals who were non-exempt, part-time banking center employees in

12 California between April 12, 2009 and October 12, 2012. *See* Decl. of Robert Drozynski

13 ("Drozynski Decl.") at ¶ 5.  Thus, the aggregate membership of the proposed class is at least 100

14 as required under CAFA.

15 **Amount in Controversy**

16      16.    The claims of the individual members in a class action are aggregated to determine

17 if the amount in controversy exceeds the sum or value of $5 million. *See* 28 U.S.C. § 1332(d)(6).

18 In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value

19 of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the

20 viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive

21 relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. 109-14, at 42.

22 Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear

23 that any doubts regarding the maintenance of class actions in state or federal court should be

24 resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain

25 about whether 'all matters in controversy' in a purported class action 'do not in the aggregate

26 exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over

27 the case . . . Overall, new section 1332(d) is intended to expand substantially federal court

28

1  jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that

2  interstate class actions should be heard in a federal court if properly removed by any defendant.").

3        17.    Here, Plaintiff does not allege a specific amount in controversy. Thus, the Court

4  must consider as evidence of the amount in controversy that which is "facially apparent" on the

5  Complaint. *See, e.g., Rippee v. Boston Market Corp.*, 408 F.Supp.2d 982, 984 (S.D. Cal. 2005).

6  If the amount in controversy is unclear or ambiguous from the face of the complaint, a removing

7  defendant must only satisfy "preponderance of the evidence standard," *i.e.*, that "it is more likely

8  than not" that the amount in controversy is satisfied. *Guglielmino v. McKee Foods Corp.*, 506

9  F.3d 696, 699 (9th Cir. 2007); *Ray v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 53155, *11-

10  13 (C.D. Cal. May 9, 2011) (applying preponderance of the evidence standard where prayer failed

11  to state the total amount in controversy "for all claims alleged and all remedies sought"); *Trahan*

12  *v. U.S. Bank Nat'l Assoc.*, 2009 U.S. Dist. LEXIS 119310, *8-9 (N.D. Cal. Nov. 30, 2009) (same).

13        18.    Defendant's establishment of the amount-in-controversy, as set forth below, is

14  based on an assumption *for purposes of removal only* that the allegations of Plaintiff's Complaint

15  regarding her theories of liability are true but *without any type of express or implied admission*

16  *that any such liability in fact exists, or that Plaintiff can properly assert her claims on a class-*

17  *wide basis.*

18        19.    Plaintiff asserts eight causes of action against Defendant based on her allegations

19  that, as part of an alleged uniform policy and/or procedure, Defendant:

20          a.  "breached the parties' agreement by providing Plaintiff an Class 1 paid vacation

21              based on their hours-based classification and not on the average number of hours

22              worked or scheduled per week." *Id.* at ¶ 46;

23          b.  "breached the parties' agreement by failing to provide Plaintiff and Class 1 a paid

24              floating holiday on those weeks in which a bank holiday occurred and they were

25              not scheduled to work." *Id.* at ¶ 47;

26          c.  "breached the parties' agreement by providing Plaintiff and Class 1 holiday pay

27              based on their hours-based classification and not on the average number of hours

28              worked or scheduled per week." *Id.* at ¶ 48;

d. "did not pay Plaintiff and Subclass 1a all their vacation pay upon termination." *Id.* at ¶ 52;

e. "did not provide Plaintiff and Subclass 1a with floating holidays and/or holiday pay in accordance with their uniform policies" which resulted in Plaintiff and Subclass 1a not being paid holiday pay upon termination. *Id.* at ¶ 53;

f. "did not pay Plaintiff and Class 3 the cash value of their accrued recognition points upon termination." *Id.* at ¶ 54;

g. "removed Plaintiff's and Class 4's access to the on-line store upon separation, interfering with their right to 'redeem' recognition points post-termination, thus resulting in an illegal forfeiture of accrued recognition points." *Id.* at ¶ 55;

h. "[allowed] recognition points [to] ire' if not used by a date certain, thus resulting in an illegal forfeiture of accrued recognition points." *Id.* at ¶56;

i. "failed to pay Plaintiff and Class 2 their agreed-upon wage and/or overtime for time spent by Plaintiff and Class 2 traveling between retail bank locations on the same day." *Id.* at ¶ 62;

j. "did not reimburse Plaintiff and Class 2 for the reasonable and necessary transportation costs incurred in traveling between branches on the same day." *Id.* at ¶68;

k. "did not pay Plaintiff, the Subclasses, and Classes 3 and 4 all wages due and owing upon their separation from [BAC's] employ." *Id.* at ¶7 2;

l. "did not pay straight –time and/or overtime wages due as a result of Subclass 2a's travel time." *Id.*;

m. "did not pay the accrued vacation and holiday pay due to Subclass 1a as a result of its failure to provide floating holidays and its systematic under-calculation of vacation and holiday pay." *Id.*;

n. "did not pay the cash value of Plaintiff's and Class 3's accrued recognition points upon termination." *Id.*;

o. "knowingly failed to provide Plaintiff and Classes 1 and 2 with accurate wage statements [in that Defendant] did not accurately state the vacation pay earned, the holiday pay earned, or the floating holiday pay earned with respect to Class 1 [and] did not accurately state the hours worked or the proper rate of pay with respect to Class 2." *Id.* at ¶ 77;

p. "withheld wages and violated the California Labor Code by not paying to Plaintiff and Classes 3 and 4 the cash value of accrued recognition points upon termination." *Id.* at ¶ 87; and

q. "violated a variety of California wage and hour laws" in violation of California Business and Professions Code section 17200. *Id.* at ¶¶ 84-85;

20. Thus, Plaintiff seeks damages for *inter alia,* breach of contract, failure to pay accrued vacation and holiday pay upon termination, failure to pay overtime and/or straight-time wages as well as waiting time penalties, failure to provide accurate wage statements penalties, restitution and attorneys' fees and costs. *See* Exh. A (Complaint), ¶¶ 42-85 and Prayer for Relief.

21. While BAC denies any liability as to Plaintiff's claims, and further denies that it employed Plaintiff or any putative class member as alleged by Plaintiff, based on the allegations, claims, and prayer for relief set forth in the Complaint, the amount in controversy in this action, exclusive of interest and costs, exceeds the sum of $5,000,000.

22. For purposes of this Notice of Removal, BANA's payroll and employment data for the putative classes defined by Plaintiff, which are used to determine the CAFA amount-in-controversy, can be summarized as follows:[2]

a. Since at least April 12, 2009, BANA has paid Plaintiff and its non-exempt, part-time banking center employees in California their wages on a bi-weekly basis, or 26 times per year.

---

[2] At the time of this Notice of Removal, the payroll data available for the calculations provided herein extended only through October 12, 2012. As such, the amount-in-controversy estimates are understated.

b. From April 12, 2009 through October 12, 2012, there were 435,788 pay periods for 13,418 individuals who were non-exempt, part time banking center BANA employees in California.

c. Of the 435,788 total pay periods from April 12, 2009 through October 12, 2012 described in paragraph 21.b. above, there were 261,549 pay periods where a part-time employee worked more hours than he or she was scheduled to work.

d. Of the 13,418 individuals described in paragraph 21.b. above, 12,791 of them worked more hours than they were scheduled for on one or more occasion.

e. Between April 12, 2009 through October 12, 2012, the average hourly rate of pay for the 12,791 employees described in paragraph 21.d. above was $12.59.

f. Between April 12, 2012 through October 12, 2012, 5,039 non-exempt, part-time banking center employees in California terminated their employment with BANA, either voluntarily or involuntarily.

g. The average hourly rate of pay for the 5,039 employees described in paragraph 21.f. above, on their respective termination date, was $12.76.

h. There were 37,770 pay periods from April 12, 2012 through October 12, 2012 for 4,998 non-exempt, part-time banking center employees in California who also worked more hours than they were scheduled on one or more occasions.

*See* Drozynski Decl., ¶¶ 4-11.

23. **Vacation Time Accrual Claim.** Plaintiff's purported First Cause of Action seeks damages for vacation hours, on the theory that she should have accrued vacation hours according to the average hours she actually worked, rather than her classification as a part-time employee. *See* Complaint at ¶¶ 8-12. As noted above, Defendant disputes that it employed any putative class member or is otherwise a proper defendant in this action. Further, Defendant denies that BANA had any obligation to have employees accrue vacation hours according to the number of hours they actually worked. BANA had no obligation to provide employees with any particular vacation accrual amount. At this point, Defendant is unable to provide a meaningful estimate of the amount-in-controversy as to this theory. Nevertheless, Plaintiff's other causes of action, including

1   her Fifth Cause of Action (for waiting time penalties) and her Sixth Cause of Action (for wage

2   statement penalties), are derivative of her vacation accrual theory. As set forth below, the amount-

3   in-controversy based on those claims exceeds the $5 million threshold under CAFA.

4       24.   **Waiting Time Penalties**. Plaintiff's purported Fifth Cause of Action seeks

5   waiting time penalties for alleged failure to pay all wages due upon termination. *See* Exh. A,

6   Complaint, ¶¶ 52-54. Between April 12, 2010 and October 12, 2012, there were 5,039

7   terminations involving part-time non-exempt California employees. Those individuals were

8   earning an average hourly rate of $12.76 at the time of their termination. For purposes of

9   calculating the amount-in-controversy for removal, Defendant ~~assumes~~ estimates that Plaintiff will

10  seek the maximum of 30 days of waiting time penalties under California Labor Code § 203 for

11  each of the putative class members she purports to represent. *See* Exh. A, Complaint, ¶ ¶ 71 and

12  73 ("Under California law, an employer must pay an employee all wages due upon termination or

13  resignation. The willful failure to do so can result in waiting time penalties equal to 30 days of an

14  employee's wage (citations omitted) … [The] conduct of BofA was willful."). *See also Korn v.*

15  *Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1205-06 (E.D. Cal. 2008) ("[C]ourts may consider

16  the maximum statutory penalty available in determining whether the jurisdictional amount in

17  controversy requirement is met."). Thus, using the average hourly rate in effect for the putative

18  class members prior to their respective terminations, and assuming that the putative class

19  members' will each seek the maximum of 30 days of penalties, the total amount in controversy on

20  Plaintiff's Third Cause of Action for **waiting time penalties** is calculated as **$15,431,433.60**:

21

22      **5,039** [number of terminations] **x $12.76** [average hourly rate in effect for the
        terminated employees prior to each respective termination] **x 4 hours x 30 days** =
        **$7,715,716.80** for waiting time penalties claims, from April 2010 through October

23      2012.

24       25.   **Penalties for Alleged Inaccurate Itemized Wage Statements.** Plaintiff's

25  purported Sixth Cause of Action alleges that Defendant "knowingly failed to provide Plaintiff and

26  Classes 1 and 2 with accurate wage statements [in that Defendant] did not accurately state the

27  vacation pay earned, the holiday pay earned, or the floating holiday pay earned with respect to

28  Class 1 [and] did not accurately state the hours worked or the proper rate of pay with respect to

1   Class 2." *See* Exh. A, Complaint, ¶ 77. As a result, Plaintiff seeks statutory penalties in the

2   amount of $50 for the initial pay period in which a violation occurred and $100 for each

3   subsequent violation, up to a maximum aggregate penalty of $4,000. *Id.,* ¶ 76; *see also* California

4   Labor Code Sections 226 and 226.3. Between April 2012 and October 2012, there were 37,770

5   pay periods for 4,998 putative class members who had worked more hours than they were

6   scheduled. Assuming for purposes of these calculations only that Plaintiff is seeking wage

7   statement penalties based on this theory, among others, the total amount in controversy for the

8   putative Seventh Cause of Action from April 2012 through October 2012 can be estimated as

9   follows:

10       [($50 for initial violation) x (4,998 putative class members) = **$249,900** in penalties
         for the alleged initial violation for all of the putative class members] + [($100 for
11       each subsequent violation) x (32,772 subsequent pay periods)] = **$3,277,200**] =
         **$3,527,100** related to wage statement penalties claims, from April 2012 through
12       October 2012.

13       26.   **Attorneys' Fees.** Plaintiff's Complaint also seeks an award of statutory attorneys'

14   fees. It is settled in the Ninth Circuit that where attorneys' fees are authorized by statute, they are

15   appropriately part of the calculation of the "amount in controversy" for purposes of removal. *See*

16   *Kroske v. U.S. Bank Corp.,* 432 F.3d 976, 980 (9th Cir. 2005); *Johnson v. America Online, Inc.,*

17   280 F.Supp.2d 1018 (N.D. Cal. 2003); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th

18   Cir. 1998) ("where an underlying statute authorizes an award of attorneys' fees, either with

19   mandatory or discretionary language, such fees may be included in the amount in controversy.").

20   The Ninth Circuit has used a benchmark rate of 25% of the potential damage award as an estimate

21   for attorneys' fees. Applying this benchmark to the potential amounts in controversy on

22   Plaintiff's, the potential amount in controversy related to Plaintiff's demand for a **statutory**

23   **award of attorneys' fees** is calculated at no less than **$5,208,871.92:**

| Cause of Action | Amount in Controversy | 9th Circuit Benchmark | Attorneys' Fees |
|---|---|---|---|
| Waiting Time Penalties | $7,715,716.80 | x 25% | $1,928,929.20 |
| Wage Statement Penalties | $3,527,100 | x 25% | $881,775.00 |
| **TOTAL** | | | **$2,810,704.20** |

27. Accordingly, the total amount in controversy for Plaintiff's claims asserted in this action, conservatively estimated, is well over the $5,000,000.00 jurisdictional minimum:

| Remedies Sought | Amount in Controversy |
|---|---|
| **Alleged Waiting Time Penalties** | **$7,715,716.80** |
| **Alleged Inaccurate Wage Statement Penalties** | **$3,527,100.00** |
| **Statutory Attorneys' Fees** | **$2,810,704.20** |
| **TOTAL AMOUNT IN CONTROVERSY** | **$14,053,521.00** |

28. Plaintiff also asserts claims for damages for failure to pay "recognition points," failure to pay for travel time, failure to reimburse for business expenses under Labor Code § 2802, including claims for damages as well as attorney's fees and derivative penalties. *See generally*, Complaint. While Defendant is not able to provide meaningful amount-in-controversy estimates for these claims at this time, they nevertheless make it even more apparent that the total amount-in-controversy for Plaintiff's claims exceeds the $5 million threshold.

29. In sum, because there exists diversity of citizenship between Plaintiff and Defendant, and because the amount in controversy exceeds CAFA's $5,000,000.00 jurisdictional threshold, Defendant may remove this action pursuant to 28 U.S.C. §§ 1332(d) and 1441(b).

## VENUE

30. Venue lies in this Court because Plaintiff's action is pending in this district and division. *See* 28 U.S.C. § 1441(a).

31. Nothing in this Notice of Removal is intended or should be construed as any type

1 of express or implied admission by Defendant of any fact, of the validity or merits of any of

2 Plaintiff's claims, causes of action, and allegations, or of any liability for the same, all of which

3 is/are hereby expressly denied, or as any type of express or implied waiver or limitation of any of

4 Defendant's rights, claims, remedies, and defenses in connection with this action, all of which are

5 hereby fully and expressly reserved. Further, Defendant expressly reserves the right to amend or

6 supplement this Notice of Removal and the evidence in support thereof to the fullest extent

7 permitted by applicable law.

8       WHEREFORE, Defendant requests that the above-captioned action now pending in the

9 State Court be removed to the United States District Court for the Northern District of California.

10

11

12 Date: May 15, 2013                **McGuireWoods LLP**

13

14                            By:

15                                Matthew C. Kane, Esq.
                               Michael D. Mandel, Esq.

16                                John A. Van Hook, Esq.
                               Christopher A. Killens, Esq.

17                            Attorneys for Defendant
                         BANK OF AMERICA CORPORATION

18

19

20

21

22

23

24

25

26

27

28

4795483.2                           14

# EXHIBIT A

1  CHRIS BAKER, State Bar No. 181557
2  cbaker@bakerlp.com
   BAKER LAW PRACTICE
3  44 Montgomery Street, Suite 3520
   San Francisco, CA 94104
4  Telephone: (415) 433-1064
   Fax: (415) 520-0446
5
6  Attorney for Plaintiff
   SHERI GARIBALDI
7

**FILED**
**SAN MATEO COUNTY**
APR 2 2013
Clerk of the Superior Court
By

8              THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                      FOR THE COUNTY OF SAN MATEO
10

11             Case No.   **CIV 5 21 0 9 7**

12             **CLASS ACTION**

13             **CAUSES OF ACTION**

14

15 SHERI GARIBALDI                              **1.** BREACH OF CONTRACT

16 (on behalf of herself and all others similar situated)  **2.** FAILURE TO PAY ACCRUED
                                                VACATION AND HOLIDAY PAY AND
17              Plaintiff,                       ACCRUED RECOGNITION POINTS
                                                UPON TERMINATION
18      vs.

19 BANK OF AMERICA CORPORATION AND             **3.** FAILURE TO PAY OVERTIME
   DOES 1 THROUGH 10                            AND/OR STRAIGHT-TIME PAY
20

21              Defendants.                     **4.** REIMBURSEMENT OF TRAVEL
                                                EXPENSES
22
                                               **5.** WAITING TIME PENALTIES
23
                                               **6.** FAILURE TO PROVIDE ACCURATE
24                                              WAGE STATEMENTS

25                                             **7.** ILLEGAL FORM OF PAYMENT AND
                                                UNLAWFUL COERCION
26

27                                             **8.** UNFAIR BUSINESS PRACTICES

28

GARIBALDI COMPLAINT AGAINST BANK OF AMERICA

Plaintiff Sheri Garibaldi ("Plaintiff") brings the following class action on behalf of herself and all others similarly situated against Defendant Bank Of America Corporation ("BofA").

## PARTIES

1.      Until February of 2013, Plaintiff worked as a part-time non-exempt employee in the Belmont and Foster City, California branches of Defendant BofA. Plaintiff resides in San Mateo County.

2.      BofA is a corporation that does business in San Mateo County and throughout California.

3.      Plaintiff is ignorant of the true names of those defendants sued as DOES 1 through 10. On information and belief, DOES 1 through 10 do business in California and are in some manner responsible for the conduct alleged in this Complaint. Upon discovering the true names and capacities of these fictitiously named defendants, Plaintiff will amend this complaint to show their true names and capacities. (For purposes of this Complaint, "BofA" should be read to include the Doe Defendants.)

## FACTS

3.      Plaintiff started work for BofA as a part-time, non-exempt teller in 2005. At all times, her hourly wage – as set by BofA – was less than $20.00 an hour. Initially, she worked only in the Belmont branch of BofA. In the latter part of her employment, she worked in both the Belmont and Foster City branches.

**I.      Vacation and Holiday Pay**

4.      Under BofA policy, a "part-time" employee is an employee who works between 20 and 37.5 hours a week on an ongoing basis. "Part-time" employees are entitled to vacation pay, floating holidays, holiday pay, and other benefits. BofA also provides part-time employees with an hours-based classification, *e.g.*, a "20 hour" employee, a "24 hour" employee, etc.

5.      Throughout her employment, BofA described and classified Plaintiff as a "20 hour" part-time employee. Despite this classification, Plaintiff regularly worked, and was regularly projected and scheduled to work, significantly more than 20 hours a week.

1    6.    On information and belief, BofA regularly scheduled and schedules its part-time

2 employees to work more hours than their hours-based classification. Among other things,

3 different retail branches share part-time employees. Thus, similar to Plaintiff, a "20 hour

4 employee" might work, during the same week, 20 hours at one location and 12 hours at another

5 location, and yet still be classified as a "20 hour" employee.

6    7.    On information and belief, BofA engaged in the practice of scheduling part-time

7 employees in excess of their hours-based classification in order to reduce costs. By scheduling

8 part-time employees in excess of their hours-based classification, BofA could avoid paying full-

9 time employees overtime. By scheduling part-time employees in excess of their classification,

10 BofA could avoid the cost and overhead associated with hiring additional part-time employees, or

11 converting part-time employees to full-time ones.

12    8.    By scheduling part-time employees in excess of their hours-based classification,

13 BofA also paid these employees less than they were due in vacation and holiday pay. This is

14 illegal.

15    9.    In exchange for her labor, BofA agreed to pay Plaintiff a specific wage. A part of

16 that wage was paid vacation days. Another part of that wage was "floating" holidays. Another

17 part of that wage was holiday pay.

18    10.    Pursuant to the terms of her employment with BofA (as evidenced by BofA's

19 uniform vacation policies), BofA promised that Plaintiff would accrue vacation based

20 (essentially) on her average hours. Thus, for example, if Plaintiff was entitled to two weeks of

21 vacation per year, and she averaged *20* hours of work per week, she would earn *40* hours of

22 vacation per year. If, on the other hand, Plaintiff averaged *25* hours of work per week, and she

23 was entitled to a two-week vacation, then she would earn *50* hours of vacation per year.

24    11.    BofA did not pay Plaintiff vacation pay in accordance with its uniform vacation

25 policies. Instead, BofA paid Plaintiff vacation pay based on her hours-based classification as a 20

26 hour employee. It did not pay her based on her *actual* average hours (i.e., the number of hours

27 she actually worked or was scheduled).

28.

14357879.1                                    - 3 -

12.     On information and belief, BofA paid all of its part-time employees vacation pay based on their hours-based classification as opposed to their actual average hours. As a result, part-time employees received less vacation (and vacation pay) than BofA promised them.

13.     Also pursuant to the terms of her employment with BofA (as evidenced by BofA's uniform holiday policies), BofA promised to provide Plaintiff a "floating holiday" when a bank holiday fell on a day she was not scheduled to work. This floating holiday was the equivalent of an extra vacation day.

14.     BofA did not provide Plaintiff with a floating holiday in accordance with its policies. This floating holiday was not regularly included as a part of Plaintiff's accrued vacation.

15.     On information and belief, BofA did not provide other part-time employees with a floating holiday in accordance with its promise and policies. On information and belief, floating holiday(s) were not included in part-time employees' accrued vacation. BofA does not cap the number of floating holidays an employee could accrue.

16.     In addition, at some point within the limitations period, BofA issued a revised holiday pay policy. Under the new policy, BofA stated (essentially) that it would pay part-time employees 20% of their average weekly hours on any bank holiday. Thus, for example, if an employee averaged *20* hours a week, she would receive *4* hours of holiday pay in any week with a bank holiday. If, on the other hand, an employee averaged *25* hours a week, she would receive *5* hours of holiday pay.

17.     BofA failed to comply with its holiday pay policy. Instead, it paid Plaintiff holiday pay based on her erroneous hours-based classification, and not on her average hours. On information and belief, BofA erroneously paid all part-time employees holiday pay based on their hours-based classification instead of their average weekly hours. BofA systematically underpaid and underpays part-time employees with respect to holiday pay.

**II.     Travel Time, Overtime, and Transportation Costs**

18.     During the latter part of her employment with BofA, Plaintiff worked at both the Belmont and Foster City retail bank locations. Generally, she would work in the morning at

1  Belmont and in the afternoon at Foster City on one day a week. On information and belief, other

2  part-time non-exempt employees also worked at more than one branch on the same day.

3       19.    Due to BofA's uniform timekeeping system, Plaintiff was required to "clock-out"

4  of the Belmont location when she stopped working at Belmont, and then "clock back in" to the

5  Foster City location when she started working at Foster City.

6       20.    BofA knew or should have known that Plaintiff was working at both locations and

7  that she had to travel by car between locations. It knew or should have known that other non-

8  exempt employees were working at more than one location in a day and traveling between

9  locations.

10       21.    Plaintiff was not reimbursed for the mileage she incurred in traveling from

11  Belmont to Foster City during the middle of the work day. She was not paid for the time she

12  spent traveling from Belmont to Foster City.

13       22.    On information and belief, BofA has a uniform policy of not paying mileage for

14  travel between branches to non-exempt employees who work at more than one branch in a day.

15  On information and belief, BofA has a uniform policy of not paying for the time spent traveling

16  between branches to non-exempt employees who work at more than one branch in a day. Often

17  times, this off-the-clock work results in an employee (including Plaintiff) working more than 8

18  hours in a day, thus entitling the employee to overtime pay under California law.

19  **III.    The Recognition Points Program**

20       23.    Also during Plaintiff's employment, BofA paid Plaintiff part of her wages and

21  compensation in the form of "recognition points." These points were paid for excellent

22  performance or for completion of pre-defined tasks (such as winning a sales contest). On

23  information and belief, the purpose of such points was to drive behavior, unify teams and the

24  BofA culture, improve employee engagement and retention, and significantly impact BofA's

25  bottom line. On information and belief, BofA's points program applied to all California BofA

26  employees.

27       24.    Plaintiff earned a substantial amount of recognition points during the course of her

28  employment.

14357879.1

- 5 -

25. The recognition points were accrued over time and assigned a cash value by BofA.

26. Plaintiff, and other California-based employees, could "redeem" their points through an on-line store. The points could only be used to purchase merchandise or gift cards on the on-line store.

27. Upon her separation from BofA on February 20, 2013, BofA did not pay Plaintiff the cash value of her points. On information and belief, BofA did not pay other former employees the cash value of their accrued points upon separation.

28. Also upon her separation from BofA's employ, BofA shut-off Plaintiff's access to the on-line store. BofA restored this access, only upon Plaintiff's request, on March 20, 2013. It informed her that her points would "expire" on that same day.

29. On information and belief, BofA has a practice of removing former employees' access to its on-line store. On information and belief, BofA has a policy and practice of causing a forfeiture of employee recognition points, either upon termination, or if those points are not used by a date certain.

## JURISDICTION AND VENUE

30. This case is brought pursuant to California Code of Civil Procedure section 382.

31. Venue is proper in the County of San Mateo because that is where Plaintiff worked for BofA and that is where Plaintiff resides. BofA also does business in San Mateo County.

## CLASS ALLEGATIONS

32. Plaintiff brings this action on behalf of the following classes and subclasses (collectively "Classes").

    a. **Class 1.** All current and former non-exempt, part-time, BofA employees employed at retail banking centers in California whose average hours of work exceed(ed) their hours-based classification between the present and four years prior to the filing of this Complaint.

    (i) **Subclass 1a.** All former non-exempt, part-time, BofA employees employed at retail banking centers in California whose average hours of work exceeded their hours-based classification between the present and four years prior to the filing of this Complaint.

1          b.     **Class 2.** All current and former non-exempt, part-time, BofA employees

2  employed at retail banking centers in California who worked at more than one location in a day

3  between the present and four years prior to the filing of this Complaint.

4              (i)     **Subclass 2a.** All former non-exempt, part-time, BofA employees

5  employed at retail banking centers in California who worked at more than one location in a day

6  between the present and four years prior to the filing of this Complaint.

7          c.     **Class 3.** All former, California-based, BofA employees who were not paid

8  the cash value of their accrued recognition points upon separation from BofA's employ between

9  the present and four years prior to the filing of this Complaint.

10         d.     **Class 4.** All former, California-based, BofA employees with accrued

11  recognition points whose access to the on-line store was removed upon their termination or whose

12  accrued points otherwise "expired" between the present and four years prior to the filing of this

13  Complaint.

14      33.    Plaintiff reserves the right refine the definition of the proposed Classes (including

15  the applicable time frame) based on further investigation and discovery.

16      34.    Plaintiff's claims should be resolved on a class-wide basis, and there is a well-

17  defined community of interest with respect to the litigation.

18      35.    The Classes are sufficiently numerous and joinder of all putative class members is

19  impracticable. While the exact number of Class members is currently unknown to Plaintiff,

20  Plaintiff contends – based on information and belief – that there are more than fifty retail BofA

21  branches within fifteen miles of San Mateo County alone. These branches are typically staffed

22  with part-time, non-exempt employees.

23      36.    The Classes are ascertainable.

24          a.     With respect to Class 1, it is possible, through discovery, to identify: (1)

25  the hours-based classification of each putative class member; and (2) the average hours each class

26  member actually worked.

27          b.     With respect to Class 2, it is possible, through discovery, to identify all

28  non-exempt employees who worked at more than one location in a day.

14357879.1

1    c.    With respect to Class 3, it is possible, through discovery, to identify all

2    former BofA employees who were not paid the cash-value of their accrued recognition points

3    upon separation from BofA's employ.

4    d.    With respect to Class 4, it is possible, through discovery, to identify all

5    former BofA employees with accrued recognition points whose access to the on-line store was

6    removed upon their separation or whose accrued points otherwise "expired."

7    37.    Plaintiff's claims are typical of the claims of the classes she seeks to represent. All

8    class members sustained damage in the form of improperly paid (or unpaid) wages, unpaid

9    holiday pay, unpaid floating holidays, unpaid vacation, unpaid overtime and/or straight time pay,

10    and unreimbursed expenses.

11    38.    Plaintiff will fairly and adequately represent and protect the interests of the class.

12    Plaintiff is a former part-time non-exempt employee. She does not have interests which are

13    adverse to the interests of absent class members.

14    39.    Class counsel is experienced and qualified and capable. He has litigated numerous

15    class action cases.

16    40.    There are common questions of law and fact. These include:

17    a.    Do BofA's policies require it to award vacation on the basis of a part-time

18    employee's hours-based classification or on her actual or scheduled average hours?

19    b.    In construing BofA's policies regarding vacation pay, must the court apply

20    principles of equity and fairness in accordance with Labor Code section 227.3?

21    c.    If BofA's policies permit it to award vacation on the basis of a part-time

22    employee's hours-based classification, is such a policy legal?

23    d.    Did or does BofA comply with its vacation policies with respect to the

24    class members, or does it engage in some other practice?

25    e.    Did BofA policies require it to award part-time employees a floating

26    holiday when they were not scheduled to work on a bank holiday?

27    f.    Was BofA's floating holiday policy, as a legal matter, just a vacation

28    policy?

14357879.1                                    - 8 -

1        g.     If BofA's floating holiday policy was actually a vacation policy, was it an

2  illegal policy?

3        h.     If BofA's floating holiday policy was actually a vacation policy, was there

4  any cap on the number of floating holidays that a class member could accrue?

5        i.     If BofA's floating holiday policy was actually a vacation policy, on what

6  schedule did the floating holidays vest?

7        j.     Do BofA's policies require it to pay holiday pay on the basis of a part-time

8  employee's hours-based classification or on her actual or scheduled average hours?

9        k.     Did or does BofA comply with its holiday pay policies with respect to the

10  class members, or does it engage in some other practice?

11        l.     Does the time a non-exempt employee spends traveling between locations

12  on a single day constitute work time?

13        m.    If time spent traveling between locations on a single day constitutes work

14  time, was BofA aware (or should it have been aware) of this work time?

15        n.     Does BofA have a policy of not compensating non-exempt employees for

16  time spent traveling between work locations on a single day?

17        o.     Is the transportation cost of traveling between locations on a single day a

18  reasonable and necessary expense that BofA is required to reimburse under Labor Code section

19  2802?

20        p.     Must BofA pay former employees the cash value of accrued recognition

21  points upon separation from BofA's employ?

22        q.     Does BofA's recognition points program violate Labor Code section 212

23  because recognition points are the equivalent of "scrips, coupons, or other thing redeemable . . . in

24  merchandise?"

25        r.     Does BofA's recognition points program violate Labor Code section 450

26  because the program, in effect, compels or coerces employees "to patronize his or her employer,

27  or any other person, in the purchase of a thing of value?"

28

41. A class action is the superior way of resolving the class members' claims. Class treatment will permit a large number of similarly situated persons to prosecute their claims in a single forum and without unnecessary duplication, and without fear of retaliation. The damage incurred by each class member is relatively small, and the burdens of litigation would make it difficult or impossible for individual members to redress the wrong done to them. The cost to the court system of individualized litigation would be substantial. Individualized litigation would also present the potential for inconsistent or contradictory judgments.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

#### (On Behalf of Plaintiff and Class 1)

42. Plaintiff incorporates paragraphs 1 through 41 of this Complaint as if fully set forth here.

43. As a term of Plaintiff's and Class 1's employment, BofA agreed to provide Plaintiff and Class 1 paid vacation based on the average number of hours worked per week. This agreement was evidenced in BofA's uniform policies.

44. As an additional term of Plaintiff's and Class 1's employment, BofA agreed to provide Plaintiff and Class 1 a floating holiday on weeks in which a bank holiday occurred. This agreement was evidenced in BofA's uniform policies.

45. As an additional term of Plaintiff's and Class 1's employment, BofA agreed to provide Plaintiff and Class 1 a paid holiday on weeks in which a bank holiday occurred, based on the average number of hours worked per week. This agreement was evidenced in BofA's uniform policies.

46. BofA breached the parties' agreement by providing Plaintiff and Class 1 paid vacation based on their hours-based classification and not on the average number of hours worked or scheduled per week.

14357879.1

- 10 -

47.    BofA breached the parties' agreement by failing to provide Plaintiff and Class 1 a paid floating holiday on those weeks in which a bank holiday occurred and they were not scheduled to work.

48.    BofA breached the parties' agreement by providing Plaintiff and Class 1 holiday pay based on their hours-based classification and not on the average number of hours worked or scheduled per week.

49.    Plaintiff and Class 1 suffered harm as a result of BofA's breach. They were provided less paid vacation than they were contractually entitled to. They were not provided paid floating holidays. They were provided less holiday pay than they were contractually entitled to.

## SECOND CAUSE OF ACTION

### (FAILURE TO PAY ACCRUED VACATION, HOLIDAY PAY, AND ACCRUED RECOGNITION POINTS UPON TERMINATION)

#### (On Behalf of Plaintiff, Subclass 1a, and Classes 3 and 4)

50.    Plaintiff incorporates paragraphs 1 through 49 of this Complaint as if fully set forth here.

51.    Under California law, an employer must pay an employee all accrued wages upon her termination. *See* Labor Code section 201. Vacation pay cannot be forfeited. Wages cannot be forfeited.

52.    BofA did not pay Plaintiff and Subclass 1a all their vacation pay upon termination. Under BofA's uniform policies, Plaintiff and Subclass 1a accrued vacation pay based on their average hours scheduled or worked. BofA, however, wrongfully calculated the accrued vacation pay of Plaintiff and Subclass 1a based on their erroneous hours-based classification. This resulted in the illegal forfeiture of vacation pay upon termination.

53.    In addition, BofA did not provide Plaintiff and Subclass 1a with floating holidays and/or holiday pay in accordance with their uniform policies. Holiday pay was miscalculated in the same manner as vacation pay. Floating holidays constituted accrued vacation. There was no cap on the number of floating holidays an employee could accrue. BofA did not pay Plaintiff and Subclass 1a holiday pay upon their termination.

14357879.1                                     - 11 -

54. In addition, BofA did not pay Plaintiff and Class 3 the cash value of their accrued recognition points upon termination. These accrued recognition points constituted wages. This resulted in the illegal forfeiture of wages upon termination.

55. In addition, BofA removed Plaintiff's and Class 4's access to the on-line store upon separation, interfering with their right to "redeem" recognition points post-termination, thus resulting in an illegal forfeiture of accrued recognition points.

56. In addition, BofA's practice is to have recognition points "expire" if not used by a date certain, thus resulting in an illegal forfeiture of accrued recognition points.

57. Plaintiff, Subclass 1a, and Classes 3 and 4 were harmed as a result of BofA's actions. They did not receive all the vacation pay to which they were entitled upon their termination. They did not receive all the floating holiday and holiday pay to which they were entitled upon their termination. They did not receive the cash value of their accrued recognition points upon termination. They lost access to the on-line store upon separation. Accrued recognition points expired upon a date certain, and thus lost all value.

## THIRD CAUSE OF ACTION

## (FAILURE TO PAY OVERTIME AND/OR STRAIGHT-TIME PAY)

### (On Behalf of Plaintiff and Class 2)

58. Plaintiff incorporates paragraphs 1 through 57 of this Complaint as if fully set forth here.

59. BofA was obligated to pay Plaintiff and Class 2 their agreed-upon wage for all hours worked.

60. In addition, under California law, an employer must pay an employee overtime based upon their agreed-upon wage for time worked in excess of 8 hours in a day. *See* California Labor Code sections 510, 1194 and Industrial Wage Order 8(3)A.

61. BofA knew or should have known that Plaintiff's and Class 2's time spent traveling between retail locations on the same day constituted compensable time worked.

62. BofA failed to pay Plaintiff and Class 2 their agreed-upon wage and/or overtime for time spent by Plaintiff and Class 2 traveling between retail bank locations on the same day.

14357879.1                                    - 12 -

63.     Plaintiff and Class 2 were harmed as a result.  They did not receive all the wages to which they were entitled.

### FOURTH CAUSE OF ACTION

### (REIMBURSEMENT OF TRAVEL EXPENSES)

### (On Behalf of Plaintiff and Class 2)

64.     Plaintiff incorporates paragraphs 1 through 63 of this Complaint as if fully set forth here.

65.     California law requires an employer to reimburse employees for their reasonable and necessary business expenses. *See* Labor Code section 2802.

66.     Plaintiff and Class 2 incurred reasonable and necessary business expenses in the form of transportation costs in traveling between retail banking locations on the same day.  They were traveling between the branches to perform work for their employer.  Without traveling between these branches, they could not perform the work.

67.     BofA knew or should have known that Plaintiff and Class 2 were incurring transportation costs.

68.     BofA did not reimburse Plaintiff and Class 2 for the reasonable and necessary transportation costs incurred in traveling between branches on the same day.

69.     Plaintiff and Class 2 were harmed as a result.  They did not receive reimbursement for the transportation costs to which they were owed.

### FIFTH CAUSE OF ACTION

### (WAITING TIME PENALTIES)

### (On Behalf of Plaintiff, Both Subclasses, and Classes 3 and 4)

70.     Plaintiff incorporates paragraphs 1 through 69 of this Complaint as if fully set forth here.

71.     Under California law, an employer must pay an employee all wages due upon termination or resignation.  The willful failure to do so can result in waiting time penalties equal to 30 days of an employee's wage. *See* Labor Code section 203.

14357879.1

- 13 -

72.    BofA did not pay Plaintiff, the Subclasses, and Classes 3 and 4 all wages due and owing upon their separation from BofA's employ.  BofA did not pay straight-time and/or overtime wages due as a result of Subclass 2a's travel time.  BofA did not pay the accrued vacation and holiday pay due to Subclass 1a as a result of its failure to provide floating holidays and its systemic under-calculation of vacation and holiday pay.  BofA did not pay the cash value of Plaintiff's and Class 3's accrued recognition points upon termination.

73.    This conduct by BofA was willful.  It knew or should have known of the travel time being incurred by Plaintiff and Subclass 2a.  It knew or should have known that it was not paying Plaintiff and Subclass 1a floating holidays.  It knew or should have known that it was systematically under-calculating the value of Plaintiff and Subclass 1a's vacation pay and holiday pay.  It knew of should have known that recognition points constituted wages that could not be forfeited and had to be paid.

74.    As a result, BofA is liable to Plaintiff, the Subclasses, and Classes 3 and 4 for waiting time penalties.

## SIXTH CAUSE OF ACTION

### (FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS)

#### (On Behalf of Plaintiff and Classes 1 and 2)

75.    Plaintiff incorporates paragraphs 1 through 74 of this Complaint as if fully set forth here.

76.    Under California law, an employer must provide employees with an accurate wage statement.  Among other things, the wage statement must include the gross wages earned, the total hours worked, and the wage rate worked for each hour.  An employee suffers injury when this law is violated if the employee cannot (among other things) easily determine from the wage statement the gross or net wages paid or earned or the hours worked.  The penalties for violating this law are set by statute. *See* California Labor Code sections 226 and 226.3

77.    BofA knowingly failed to provide Plaintiff and Classes 1 and 2 with accurate wage statements.  BofA did not accurately state the vacation pay earned, the holiday pay earned, or the

1  floating holiday pay earned with respect to Class 1. BofA did not accurately state the hours
2  worked or the proper rate of pay with respect to Class 2.

3      78.    Plaintiff and Classes 1 and 2 suffered injury as a result of BofA's conduct. They
4  were not able, from a review of the wage statement, to determine the gross and net wages earned
5  or paid, as well as hours worked.

6                          **SEVENTH CAUSE OF ACTION**
7                      **(On Behalf of Plaintiff and Classes 3 and 4)**
8                **(ILLEGAL FORM OF PAYMENT AND UNLAWFUL COERCION)**

9      79.    Plaintiff incorporates paragraphs 1 through 78 of this Complaint as if fully set
10 forth here.

11     80.    It is illegal for an employer to pay an employee in "scrip, coupon, cards, or other
12 things redeemable, in merchandise . . . or redeemable otherwise than in money." *See* Labor Code
13 section 212(a)(2). BofA paid Classes 3 and 4 in recognition points. By virtue of its on-line store,
14 these points were redeemable in merchandise. This was an illegal form of payment.

15     81.    It is illegal for an employer to compel or coerce any employee to patronize his or
16 her employer or a third party in the purchase of a thing of value. *See* Labor Code 450. BofA, by
17 requiring that employees redeem their accrued recognition points in an on-line store (whether its
18 own or a third party's), violated Labor Code section 450.

19     82.    BofA's withheld wages and violated the California Labor Code by not paying to
20 Plaintiff and Classes 3 and 4 the cash value of accrued recognition points upon termination. As a
21 result, Plaintiff and Classes 3 and 4 are entitled to penalties.

22                          **UNFAIR BUSINESS PRACTICES**
23                      **(On Behalf of Plaintiff And All Classes)**

24     83.    Plaintiff incorporates paragraphs 1 through 82 of this Complaint as if fully set
25 forth here.

26     84.    California law prohibits any unlawful, unfair, or fraudulent business practice. *See*
27 California Business and Professions Code section 17200.

28

14357879.1                              - 15 -

85.    Through its actions (as described above), BofA has violated a variety of California wage and hour laws.  Plaintiff and the Classes have been harmed by BofA's conduct.  Among other things, they have not been paid wages, overtime, vacation pay, business expenses, or the cash-value of accrued recognition points.  They are entitled to restitution.

## DEMAND FOR A JURY TRIAL

86.    Plaintiff hereby demands a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Classes, prays for judgment against BofA as follows:

1.    An Order that this action may proceed and be maintained on a class-wide basis;

2.    Appropriate injunctive relief;

3.    Attorneys fees and costs;

4.    Restitution, according to proof;

5.    Damages, according to proof;

6.    Civil penalties, according to proof;

7.    Back wages, according to proof;

8.    Interest;

9.    All other relief the Court deems equitable and proper.

DATED: April 11, 2013                BAKER LAW PRACTICE

\

Chris Baker

**EXHIBIT B**

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Bank Of America Corporation and Does 1 through 10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Sheri Garibaldi on behalf of herself and all others similarly situated

| FOR COURT USE ONLY |
| --- |
| *(SOLO PARA USO DE LA CORTE)* |

# FILED
**SAN MATEO COUNTY**

APR 1 2 2013

Clerk of the Superior Court

By: _____
DEPUTY

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: |
| *(El nombre y dirección de la corte es):* Superior Court of San Mateo | *(Número del Caso):* |
| 400 County Center | CIV 521087 |

Redwood City, California 94064

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Chris Baker, Baker Law Practice, 44 Montgomery St., Suite 3520, San Francisco, CA 94104 (415)433-1064

| DATE: APR 1 2 2013 | JOHN C. FITTON | Clerk, by | _____ | , Deputy |
| *(Fecha)* | | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 |
| Judicial Council of California | | www.courtinfo.ca.gov |
| SUM-100 [Rev. July 1, 2009] | | |

**EXHIBIT C**

CM-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Chris Baker, Bar No. 181557<br>Baker Law Practice<br>44 Montgomery Street, Suite 3520<br>San Francisco, CA 94104<br>TELEPHONE NO.: 415-433-1064   FAX NO.: 415.520.0446<br>ATTORNEY FOR (Name): Sheri Garibaldi | FOR COURT USE ONLY |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo<br>STREET ADDRESS: 400 County Center<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Redwood City, California 94063<br>BRANCH NAME: | **RECEIVED**<br><br>APR 1 2 2013<br><br>CLERK OF THE SUPERIOR COURT<br>SAN MATEO COUNTY |
| CASE NAME:<br>Garibaldi v. Bank Of America | |

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: CIV 521097 |
|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☑ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation**
**(Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint (*not specified above*) (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition (*not specified above*) (43)

2. This case ☑ is  ☐ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☑ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action (specify): 8 (Breach of Contract, Wage and Hour Violations)
5. This case ☑ is  ☐ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 4-11-2013

CHRIS BAKER
(TYPE OR PRINT NAME)                    ▶ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

# EXHIBIT D

Garibaldi v. Bank of America Corp

## CERTIFICATE RE: COMPLEX CASE DESIGNATION

[*This Certificate Must Be Completed And Filed With Your Civil Case Cover Sheet
If You Have Checked A Complex Case Designation Or Counter-Designation* ]

1.      In the attached Civil Case Cover Sheet, this case is being designated or counter-

designated as a complex case [or as not a complex case] because at least one or more of the

following boxes has been checked:

☐      Box 1 – case type that is best described as being [or not being] provisionally

complex civil litigation (i.e., antitrust or trade regulation claims, construction defect claims

involving many parties or structures, securities claims or investment losses involving many

parties, environmental or toxic tort claims involving many parties, claims involving mass torts, or

insurance coverage claims arising out of any of the foregoing claims).

☒      Box 2 – complex ~~[or not complex]~~ due to factors requiring exceptional judicial

management.

☒      Box 5 - Is ~~[or is not]~~ a class action suit.

2.      This case is being so designated based upon the following supporting information

[including, without limitation, a brief description of the following factors as they pertain to this

particular case: (1) ~~management of a large number of separately represented parties~~; (2)

complexity of anticipated ~~factual and/or~~ legal issues; (3) numerous pretrial motions that will be

time-consuming to resolve; ~~(4) management of a large number of witnesses or a substantial~~

~~amount of documentary evidence;~~ (5) coordination with related actions pending in one ~~or more~~

~~courts in other counties, states or countries or in a federal court;~~ (6) whether or not certification

of a putative class action will in fact be pursued~~, and (7) substantial post-judgment judicial~~

~~supervision~~]:

- 1 -

1

2 _see attached_

3

4

5

6

7

8

9

10

11

12

13

14 *[Attach additional pages, if necessary.]*

15     3.     Based on the above-stated supporting information, there is a reasonable basis for

16 the complex case designation or counter-designation ~~[or noncomplex case counter-designation]~~

17 being made in the attached Civil Case Cover Sheet.

18                     \*\*\*\*\*

19

20     I, the undersigned counsel or self-represented party, hereby certify that the above is true

21 and correct and that I make this certification subject to the applicable provisions of California

22 Code of Civil Procedure, Section 128.7 and/or California Rules of Professional Conduct, Rule 5-

23 200 (B) and San Mateo County Superior Court Local Rules, Local Rule 2.30.

24

25 Dated: _4/11/2013_

26

27 _Chris Baker_

28 [Type or Print Name]              [Signature of Party or Attorney For Party]

- 2 -

**Garibaldi v. Bank Of America Corporation**

**Attachment To Certificate Re: Complex Case Designation**

This class action challenges the legality of a number of Bank of America's (BofA's) pay practices. The classes are potentially quite large. The legal issues are potentially complex, and include:

    1.    The legality of BofA's practice of paying non-exempt part-time tellers vacation and holiday pay on the basis of their hours-based classification as opposed to actual hours worked or scheduled.

    2.    Whether BofA knew or should have known of the travel time and travel expense incurred by part-time tellers in working in more than one branch per day. And

    3.    The legality of BofA's "use or lose it" policy with respect to its payment of employee wages in "recognition points" under Labor Code sections 201, 212, and 450, whether employees must be paid their accrued recognition points in cash upon termination, and, potentially, the legality of non-cash payments in any event.

1  **PROOF OF SERVICE**

2  **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3       I am employed in the County of Los Angeles, State of California.  I am over
the age of eighteen years and not a party to the within action; my business address is
4  1800 Century Park East, 8th Floor, Los Angeles, California 90067-1501.

5       On **May 15, 2013,** I served the following document(s) described as

6  **DEFENDANT BANK OF AMERICA CORPORATION'S
NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL
7  ACTION FROM STATE COURT**

8       on the interested parties in this action by placing true copies thereof enclosed
in sealed envelopes addressed as follows:
9

10  Chris Baker, Esq.                *Attorney for Plaintiff*
BAKER LAW PRACTICE      **SHERI GARIBALDI**
44 Montgomery Street, Suite 3520
11  San Francisco, California  94104
(T) 415-433-1064 / (F) 415-520-0446
12  Email:  cbaker@bakerlp.com

13  ☒  **BY MAIL:** I am "readily familiar" with the firm's practice of collection and
processing correspondence for mailing with the United States Postal Service.
14  Under that practice, it would be deposited with the United States Postal
Service that same day in the ordinary course of business.  Such envelope(s)
15  were placed for collection and mailing with postage thereon fully prepaid at
Los Angeles, CA, on that same day following ordinary business practices.
16  (C.C.P. § 1013 (a) and 1013a(3))

17  ☐  **BY FACSIMILE:** I caused said document(s) to be transmitted by facsimile
pursuant to Rule 2008 of the California Rules of Court.  The telephone
18  number of the sending facsimile machine was 310.315.8210.  The name(s)
and facsimile machine telephone number(s) of the person(s) served are set
19  forth in the service list.  The document was transmitted by facsimile
transmission, and the sending facsimile machine properly issued a
20  transmission report confirming that the transmission was complete and
without error.
21

22  ☐  **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or
other facility regularly maintained by the overnight service carrier, or
23  delivered such document(s) to a courier or driver authorized by the overnight
service carrier to receive documents, in an envelope or package designated by
24  the overnight service carrier with delivery fees paid or provided for,
addressed to the person(s) served hereunder.  (C.C.P. § 1013(d)(e))

25  ☐  **BY HAND DELIVERY:** I caused to be delivered such envelope(s) by hand
to the office of the addressee(s).  (C.C.P. § 1011(a)(b))

26

27

28

48020241

1

Proof of Service

1   ☐   **BY PERSONAL SERVICE:** I caused to be personally delivered such
          envelope(s) to the addressee(s).  (C.C.P. § 1011)

2

          I declare under penalty of perjury under the laws of the State of California

3  that the foregoing is true and correct.

4           Executed on **May 15, 2013**, at Los Angeles, California.

5

6                                         Debbie J. Calderon

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

48020241

2

Proof of Service