1

**McGuireWoods LLP**
Matthew C. Kane, Esq. (SBN 171829)
    E-Mail:  mkane@mcguirewoods.com

2

Michael D. Mandel, Esq. (SBN 216934)
    E-Mail:  mmandel@mcguirewoods.com

3

John A. Van Hook, Esq. (SBN 205067)
    E-Mail:  jvanhook@mcguirewoods.com

4

Christopher A. Killens, Esq. (SBN 254466)
    E-Mail:  ckillens@mcguirewoods.com

5

1800 Century Park East, 8th Floor
Los Angeles, California 90067

6

Telephone: (310) 315-8200
Facsimile: (310) 315-8210

7

8

Attorneys for Defendant
BANK OF AMERICA, NATIONAL ASSOCIATION

9

**UNITED STATES DISTRICT COURT**

10

**NORTHERN DISTRICT OF CALIFORNIA**

11

12

SHERI GARIBALDI, on behalf of herself and all others similarly situated,

CASE NO. 3:13-CV-02223-SI

13

Plaintiff,

**DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6), 12(f) AND/OR 23(d)(1)(D):**

14

vs.

15

BANK OF AMERICA, National Association,

16

Defendant.

**(1)   NOTICE OF MOTION AND MOTION**

17

**(2)   REQUEST FOR JUDICIAL NOTICE**

18

**(3)   MEMORANDUM OF POINTS AND AUTHORITIES**

19

*Filed Under Separate Cover:*

20

**(4)   [PROPOSED] ORDER**

21

**Date:     December 20, 2013**
**Time:     9:00 a.m.**

22

**Crtrm.: 10**

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

NOTICE OF MOTION AND MOTION ............................................................................... iv

REQUEST FOR JUDICIAL NOTICE .............................................................................. vii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................1

I.      INTRODUCTION.......................................................................................................... 1

II.     STATEMENT OF FACTS............................................................................................. 2

      A.     Alleged Improper Accrual of Vacation and Paid Time Off ................................. 2

      B.     Alleged Illegal Forfeiture Of "Floating Holidays" And "Occasional Illness" Days................................................................................................................... 3

      C.     Derivative Claims................................................................................................ 4

      D.     Plaintiff's Class Allegations ............................................................................... 4

III.    LEGAL ARGUMENT .................................................................................................. 4

      A.     Applicable Legal Standards Under Rules 12(b)(6), 12(f) & 23(d)(1)(D) ................. 4

      B.     Plaintiff's Labor Code Claims Are Preempted By The National Bank Act of 1864. ................................................................................................................. 5

            1.     The NBA Preempts Any State Law That Obstructs, Impairs, or Conditions a National Bank's Ability to Fully Exercise Its Powers. ............ 5

            2.     The Bank Has Plenary Authority To Establish The Compensation For Its Employees........................................................................................ 8

            3.     The NBA Preempts Plaintiff's Labor Code Claims Because They Impose Obligations That Are Inconsistent With Parallel Federal Law............................................................................................................ 8

            4.     The NBA Preempts Plaintiff's State Law Wage And Hour Claims Because The Enforcement Of The State Laws Would Frustrate The Purpose Of The NBA. ...................................................................... 10

      C.     The Second Cause of Action for "Failure To Pay Accrued Pay Upon Termination," Based On Plaintiff's Paid Time Off Theories, Fails As A Matter Of Law. ............................................................................................... 11

            1.     The Bank Was Not Obligated To Permit Plaintiff to Accrue Vacation Or Other Paid Time Off (Or Pay Her For Paid Time Off) Based Upon Her Actual Scheduled Hours Or Actual Hours Worked........ 12

**DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT**

2.   Plaintiff's Claims For Alleged Forfeiture of Unused Floating Holidays And Occasional Illness Fail As A Matter Of Law Because They Are Not Subject To The Legal Requirements For Vacation Pay. .......................................................................................................... 13

D.   Plaintiff's Breach of Contract Claim Fails Because Plaintiff Failed To Attach or Allege the Contractual Provision Upon Which She is Suing.**Error! Bookmark n**

E.   Plaintiff's Sixth Cause of Action for Section 203 Waiting Time Penalties Fails Because It is Derivative Of Her Other Failed Claims And Because Good Faith Disputes Exist Regarding The Underlying Claims. ........................... 17

F.   Plaintiff's Seventh Cause of Action for Inaccurate Wage Statement Penalties Fails As A Matter Of Law. ................................................................ 18

1.   Plaintiff's Wage Statement Penalties Claim Fails To The Extent It is Derivative Of Plaintiff's Other Claims. ...................................... 18

2.   Section 226(a) Does Not Require Accrued Paid Time Off To Be Listed On A Wage Statement. ................................................... 18

3.   To The Extent Plaintiff Asserts A Claim Under Section 226.3, It Fails Because Section 226.3 Provides No Private Right Of Action. ........... 19

G.   Plaintiff's Ninth Cause of Action Under the UCL Fails Because It is Wholly Derivative of Plaintiff's Underlying Failed Claims. ................................................ 19

H.   Plaintiff's Tenth Cause of Action for PAGA Penalties Fails Because It is Wholly Derivative of Plaintiff's Underlying Failed Claims. .................................. 20

I.   The Class Action Allegations Should Be Dismissed And/Or Stricken. .................. 20

1.   Plaintiff Cannot Satisfy The Elements Of Rule 23. .................................... 20

a.   Plaintiff Has Failed to Plead an Ascertainable "PTO Class." ......... 21

b.   Plaintiff's Floating Holidays Class And Occasional Illness Class Are Improper Merits-Based Class Definitions. ..................... 22

c.   No Commonality Exists As A Matter Of Law. .............................. 23

2.   The Class Allegations In The TAC Fail To Satisfy FED. R. CIV. P. 8. ......... 24

IV.   CONCLUSION .......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Ashcroft v. Iqbal*
   129 S.Ct. 1937 (2009) ..................................................................................................... 24

*Balistreri v. Pacifica Police Dept.*
   901 F.2d 696 (9th Cir. 1990) ............................................................................................ 5

*Bank of America v. City and County of San Francisco*
   309 F.3d 551 (9th Cir. 2002) ......................................................................................... 8, 9

*Barnett Bank, N.A. v. Nelson*
   517 U.S. 25 (1996) ............................................................................................................ 9

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007) ....................................................................................................... 24

*Bostick v. St. Jude Med., Inc.*
   No. 03-2636 BV, 2004 U.S. Dist. LEXIS 29997 (W.D. Tenn. Aug. 17, 2004) ................... 22

*Deleon v. Time Warner Cable, LLC*
   No. CV 09-2438 AG, 2009 U.S. Dist. LEXIS 74345 (C.D. Cal. July 17, 2009) ................. 24

*Evans v. Federal Reserve Bank of Philadelphia*
   2004 WL 1535772 (E.D. Pa. 2004) ............................................................................ 10, 12

*Eversole v. EMC Mortg. Corp.*
   No. 05-124-KSF, 2007 U.S. Dist. LEXIS 38892 (E.D. Ky. May 29, 2007) ....................... 22

*Fantasy, Inc. v. Fogerty*
   984 F.2d 1524 (9th Cir. 1993) .......................................................................................... 5

*Farm Credit Svcs. v. Am. State Bank*
   339 F.3d 764 (8th Cir. 2003) ............................................................................................ 5

*Farmers' & Mechanics' National Bank v. Dearing*
   91 U.S. 29 (1875) ............................................................................................................. 7

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*
   458 U.S. 141 (1982) .......................................................................................................... 7

*Gilbert v. Eli Lilly & Co., Inc.*
   56 F.R.D. 116 (D.P.R. 1972) ............................................................................................. 5

*Green v. Bank of America, N.A.*
   2013 U.S. Dist. LEXIS 76221 (C.D. Cal. May 30, 2013) ............................................. 10, 11

*Hanni v. Am. Airlines, Inc.*
   No. C 08-00732 CW, 2010 U.S. Dist. LEXIS 3410 (N.D. Cal. Jan. 15, 2010) .................. 22

iii

*Harding v. Time Warner, Inc.*
   No. 09-cv-1212-WQH-WMc, 2010 U.S. Dist. LEXIS 5896 (S.D. Cal. Jan. 26, 2010) ........ 25

*Harding v. Time Warner, Inc.*
   No. 09cv1212-WQH-WMc, 2009 U.S. Dist. LEXIS 72851 (S.D. Cal. Aug. 18, 2009)............
   ..................................................................................................................................... 24, 25

*Karrer v. Best Buy Co., Inc.*
   2012 U.S. Dist. LEXIS 77242 (C.D. Cal. May 24, 2012) .................................................. 15

*Kennedy v. Unumprovident Corp.*
   50 Fed.Appx. 354 (9th Cir. 2002) ................................................................................ 21

*Kroske v. US Bank Corp.*
   432 F.3d 976 (9th Cir. 2006) ............................................................................. 7, 10, 12

*Marquette National Bank of Minneapolis v. First of Omaha Service Corp.*
   439 U.S. 299 (1978)........................................................................................................ 7

*Martinez v. Wells Fargo Home Mortgage, Inc.*
   598 F.3d 549 (9th Cir. 2010) ......................................................................................... 8

*McKinnon v. Dollar Thrifty Auto. Group*
   2013 U.S. Dist. LEXIS 29095 (N.D. Cal. Mar. 4, 2013).................................................... 6

*Montgomery v. Bank of America Corp.*
   515 F.Supp.2d 1106 (C.D. Cal. 2007) ............................................................. 1, 7, 10, 12

*Mora v. U.S. Bank N.A.*
   2012 U.S. Dist. LEXIS 79357 (N.D. Cal. June 7, 2012) .................................................... 6

*O'Connor v. Boeing N. Am., Inc.*
   184 F.R.D. 311 (C.D. Cal. 1998) .................................................................................. 21

*Rose v. Chase Bank USA, N.A.*
   513 F.3d 1032 (9th Cir. 2008) ........................................................................................ 9

*Sidney-Vinstein v. A.H. Robins Co.*
   697 F.2d 880 (9th Cir. 1983) ......................................................................................... 5

*Wal-Mart Stores, Inc. v. Dukes*
   131 S.Ct. 2541 (2011)................................................................................................... 23

*Watters v. Wachovia Bank, N.A.*
   550 U.S. 1, 127 S. Ct. 1559, 167 L. Ed. 2d 389 (2007)................................................. 8, 9

*Wells Fargo Bank N.A. v. Boutris*
   419 F.3d 949 (9th Cir. 2005) ......................................................................................... 9

*Zhong v. August August Corp.*
   498 F.Supp.2d 625 (S.D.N.Y. 2007) ............................................................................. 24

**CALIFORNIA CASES**

*Barnhill v. Robert Saunders & Co.*
  125 Cal.App.3d 1 (1981)................................................................ 17

*Korea Supply v. Lockheed Martin Corp.*
  29 Cal. 4th 1134 (2003) ............................................................... 20

*Paton v. Advanced Micro Devices, Inc.*
  197 Cal. App. 4th 1505. (2011) ....................................... 13, 15, 16

*Smith v. RadioShack Corp.*
  D052730, 2009 Cal. App............................................................ 16, 17

*Suastez v. Plastic Dress-Up Co.*
  31 Cal.3d 774 (1982) ................................................................... 16

**FEDERAL STATUTES**

12 U.S.C. § 93a.................................................................................... 7

12 U.S.C. § 21 ................................................ 1, 7, 8, 9, 10, 11, 12, 13, 20

FED. R. CIV. P. 8................................................................. 5, 20, 24, 25

FED. R. CIV. P. 8(a) .......................................................................... 24

FED. R. CIV. P. 12 ............................................................................. 24

FED. R. CIV. P. 12(b)(6) .................................................................. 2, 4

FED. R. CIV. P. 12(f) ........................................................................... 2

FED. R. CIV. P. 23 .............................................................. 5, 20, 24

FED. R. CIV. P. 23(c)(1) .................................................................. 20

FED. R. CIV. P. 23(d)(1)(D) ........................................................ 5, 20

FED. R. CIV. P. Rule 12(f) ................................................................. 5

**CALIFORNIA STATUTES**

8 Cal. Code Regs. § 13520.............................................................. 17

Cal. Lab. Code § 201....................................................................... 17

Cal. Lab. Code § 203.................................................. 3, 13, 17, 18

Cal. Lab. Code § 226....................................................................... 13

Cal. Lab. Code § 226(a)............................................................. 18, 19

Cal. Lab. Code § 226(e)........................................................ 3, 18, 19

Cal. Lab. Code § 226(e)(2)(B)(i) .................................................... 19

Cal. Lab. Code § 226.3 .................................................................. 19

Cal. Lab. Code § 227.3 ............................................................ 15, 16

Cal. Lab. Code § 2699(a) .............................................................. 20

Cal. Industrial Welfare Commission Wage Order 7-2001 ....................... 10

**OTHER AUTHORITIES**

12 C.F.R. § 7.2011 ................................................................... 8, 9

69 Fed. Reg. 1916 (2004) ............................................................... 8

69 Fed. Reg. 1916 (2004) § 7.4009(a) and (b) ................................... 7, 8

23 OCC Q.J. 28 (Mar. 2004), 2004 WL 2360325 .................................. 8

Wright et al., FED. PRAC. & PROC., § 1795 (3d ed. 2005) ...................... 5

## NOTICE OF MOTION AND MOTION

**TO PLAINTIFF SHERI GARIBALDI AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on December 20, 2013, at 9:00 a.m., in Courtroom 10 of the United States District Court, Northern District of California, Defendant Bank of America, National Association ("the Bank" or "Defendant") will and hereby does move the Court to dismiss and/or strike Plaintiff Sheri Garibaldi's Third Amended Complaint ("TAC") pursuant to FED. R. CIV. P. 12(b)(6), 12(f), and/or 23(d)(1)(D) on the grounds that:

1. Plaintiff's First Cause of Action for "breach of contract/paid time off" is barred because Plaintiff failed to allege the terms of the contract that Defendant allegedly breached.

2. Plaintiff's Second, Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action fail as a matter of law because they are completely preempted by the National Bank Act, 12 U.S.C. § 21, et seq.

3. Plaintiff's Second Cause of Action for "Failure to pay accrued pay upon termination" is barred because Plaintiff has not alleged sufficient facts to demonstrate that any accrued pay was owed based on her paid time off theories.

4. Plaintiff's Sixth Cause of Action for "waiting time penalties" fails as a matter of law because:

   a. it is wholly derivative of Plaintiff's other causes of action, which are legally deficient; and

   b. good faith disputes exist regarding the underlying claims as a matter of law.

5. Plaintiff's Seventh Cause of Action for "failure to provide accurate wage statements" under Labor Code section 226 ("Section 226")[1] fails as a matter of law because:

---

[1] Unless otherwise noted, "Section" references herein shall refer to sections of the California Labor Code.

a. Plaintiff's wage statement penalties claim is derivative of Plaintiff's other causes of action, which are legally deficient;

b. Plaintiff's wage statement penalties claim incorrectly assumes that Section 226 requires employers to "state the paid time off … earned each pay period."; and

c. To the extent Plaintiff sues to enforce Section 226.3, the claim fails as a matter of law because the statute provides no private right of action.

6. Plaintiff's Ninth Cause of Action for unfair business practices in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), fails as a matter of law because it is wholly derivative of Plaintiff's other causes of action, which are legally deficient.

7. Plaintiff's Tenth Cause of Action for penalties under the Private Attorneys General Act, Labor Code section 2699 *et seq.* ("PAGA") fails as a matter of law because it is wholly derivative of Plaintiff's other causes of action, which are legally deficient. [2]

Defendant further moves to strike the following allegations from Plaintiff's TAC pursuant to FED. R. CIV. P. Rule 12(f) and/or 23(d)(1)(D) on the grounds that they are immaterial and impertinent:

- Plaintiff's class action allegations as alleged in Paragraphs 39-48 of the TAC;

- Plaintiff's allegations that various classes suffered harm and requests for damages and other relief on behalf of classes, including without limitation those in Paragraphs 50-51, 53-55, 58-64, 85-87, 90-91, 98, and 104; and

---

[2] The parties have reached an agreement to resolve Plaintiff's various claims on behalf of "The Travel Class" and "The Points Class."  Defendant understands the Second, Sixth, Seventh, Ninth and Tenth Causes of Action to be asserted, in part, on behalf of the Travel Class and the Points Class.  Defendant understands the Third, Fourth, and Fifth Causes of Action to be asserted on behalf of the Travel Class.  Defendant understands the Eighth Cause of Action to be asserted on behalf of the Points Class.  As a result, Defendant does not move to dismiss the causes of action or portions of the causes of actions asserted on behalf of the Travel Class or the Points Class.  Nevertheless, Defendant does not waive any defenses as to these claims, and reserves all right to assert its defenses to these claims in a subsequent motion, if necessary.

- Plaintiff's request in her Prayer for Relief for "An Order that this action may proceed and be maintained on a class-wide basis."

This Motion is based on this Notice, the attached Request for Judicial Notice and Memorandum of Points and Authorities, the Court's file and records in this action, all matters which may be judicially noticed pursuant to FED. R. EVID. 201, and such other and further evidence and arguments in support of this Motion as may be presented to the Court at or before the hearing on this Motion.

DATED: November 12, 2013          MCGUIREWOODS LLP

                                  By:    /s/ Michael D. Mandel
                                         Matthew C. Kane, Esq.
                                         Michael D. Mandel, Esq.
                                         John A. Van Hook, Esq.
                                         Christopher A. Killens, Esq.

                                         Attorneys for Defendant
                                         Bank of America, National Association

<u>**REQUEST FOR JUDICIAL NOTICE**</u>

**TO THIS HONORABLE COURT, AND TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

Pursuant to FED. R. EVID. 201(b) and (d), Defendant Bank of America, National Association ("Defendant") hereby requests that the Court take judicial notice of the following in support of its Motion to Dismiss and/or Strike Plaintiff's Complaint Pursuant to FED. R. CIV. P. Rule 12(b)(6), and 12(f) (the "Motion"):

Exhibit A: Office of Comptroller of Currency's list of national banks as of 10/31/2013 (available at http://www.occ.gov/topics/licensing/national-bank-lists/national-by-name-v2.pdf).

Exhibit B: California Division of Labor Standards Enforcement's samples of pay stubs compliant with Labor Code section 226(a) for employees paid hourly and by piece-rate (available at http://www.dir.ca.gov/dlse/PayStub.pdf and http://www.dir.ca.gov/dlse/PayStubForPieceRate.pdf).

Defendant's request is made pursuant to FED. R. EVID. Rule 201(b) and (d) on the grounds that the foregoing documents are proper subjects for judicial notice because they are records of this Court and/or their contents are not subject to reasonable dispute and they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

DATED: November 12, 2013                          **McGUIREWOODS LLP**


By:      /s/ Michael D. Mandel
                Matthew C. Kane, Esq.
                Michael D. Mandel, Esq.
                John A. Van Hook, Esq.
                Christopher A. Killens, Esq.

                Attorneys for Defendant
                Bank of America, National Association

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.    INTRODUCTION

Plaintiff Sheri Garibaldi worked for Bank of America, N.A. as a part-time bank teller until she was terminated for poor performance.  She now brings this lawsuit against Defendant asserting various claims arising out of alleged violations by BANA with respect to its vacation pay and other paid time off policies.  But Plaintiff has failed to state a claim upon which relief can be granted and her claims otherwise fail as a matter of law in several respects.

First, Plaintiff's claims for alleged violations premised on the California Labor Code all fail because they are preempted by the National Bank Act, 12 U.S.C. § 21 et seq. ("NBA").  The NBA was enacted to protect national banks against intrusive regulation by states and to facilitate a "uniform and universal operation through the entire territorial limits of the country."  *Montgomery v. Bank of America Corp.*, 515 F.Supp.2d 1106, 1110 (C.D. Cal. 2007) ("*Montgomery*").  By this lawsuit, Plaintiff improperly seeks to apply California-specific requirements upon the Bank that diverge from the requirements imposed by federal law, and therefore frustrate the goal of the NBA to foster efficient and uniform banking operations nationwide.

Second, Plaintiff's claims fail for the additional reason that they assume, without any support, that the Bank violated California law by calculating vacation accrual rates and paying part-time employees for various other forms of paid time off based upon the Bank's designation of an employee's hours-based classification (i.e., identifying an individual as a "20-hour per week employee"), rather than calculating vacation accrual and paying for paid time off based on the number of hours the employee was actually scheduled to work in each week or actually worked in a week.

Third, Plaintiff's claims for alleged illegal forfeiture of "floating holidays" and "occasional illness" days fail because these are not "vacation" days as defined by California law, and are therefore not subject to a prohibition against  the forfeiture of accrued, unused vacation days.

Fourth, Plaintiff's penalties claims fail because they are derivative of their failed paid time off claims.  Her waiting time penalties claim fails because, even if Plaintiff's paid time off theories ultimately prevailed, the Bank had a good faith basis to conclude that its practices were lawful.

**DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT**

Plaintiff's wage statement penalties fail because employers have no obligation to state the accruals for paid time off on employees' wage statements.

Fifth, Plaintiff's claim for alleged "breach of contract" fails because Plaintiff has failed to attach or plead the contents of the specific contractual provisions on which she is suing.

Finally, even if Plaintiff's claims were not legally defective, they would still be improper to proceed on a putative class basis. Plaintiff has set forth patently unascertainable and merits-based class definitions. Further, from the face of the TAC, there are numerous individualized inquiries that will be necessary to adjudicate Plaintiff's claims, which preclude class treatment.

These deficiencies subject the TAC and the purported causes of action, allegations, and requests for relief therein to dismissal with prejudice under FED. R. CIV. P. 12(b)(6) and/or striking under FED. R. CIV. P. 12(f) and/or 23(d)(1)(D).

## II. STATEMENT OF FACTS

### A. Alleged Improper Accrual Of Vacation And Paid Time Off

Plaintiff alleges that from 2005 until February 2013, she worked as a part-time teller for the Bank. *See* TAC, ¶¶ 1, 4. Plaintiff alleges that, throughout her employment, the Bank classified her in its payroll system (which is the system that tracks accrual of vacation and other paid time off) as a "20 hour" per week part-time employee. *See* TAC, ¶ 9. Despite this 20-hour classification, Plaintiff alleges she regularly was scheduled for and worked "significantly more than 20 hours a week." *Id.* Plaintiff alleges that it is a regular practice for the Bank to schedule employees to work a greater number of hours than their hours-based classification. Plaintiff acknowledges that employees actually accrued vacation and other forms of paid time off based upon their hours-based classification, and that the Bank paid employees for paid time off based upon their hours-based classification. *See* TAC, ¶ 12. Plaintiff contends, however, that this provided employees with less paid time off than they were "due" because, she claims, employees should have accrued vacation and other forms of paid time off based upon their actual hours scheduled or worked. *Id.*

Notwithstanding the fact that Plaintiff acknowledges that she and others accrued vacation time based upon their hours-based classification, and that the Bank actually paid her and other

2

1  employees for paid time off based upon their hours-based classification, Plaintiff alleges that she

2  was actually promised something different.  Specifically, she alleges that, through the Bank's

3  "uniform policies," she was promised that she "would accrue vacation based (essentially)[3] on her

4  average scheduled hours."  *See* TAC, ¶ 15.  Further, Plaintiff alleges that the Bank promised her

5  that she would accrue and be paid for other forms of paid time off "based on, essentially, her

6  average scheduled hours."  She further alleges that she was promised that if her scheduled hours

7  increased, her paid time off would likewise increase."  *See* TAC, ¶ 16.  In sum, Plaintiff's claim is

8  premised on an allegation that she should have accrued vacation (and other forms of paid time off)

9  based upon the hours she was actually scheduled to work (or that she actually did work), not the

10  hours-based classification the Bank assigned her in its payroll system.

   **B.**     **Alleged Illegal Forfeiture Of "Floating Holidays" And "Occasional Illness" Days**

11

12          In addition to vacation pay, Plaintiff alleges that she was promised a "floating holiday" if

13  certain conditions were met, including when a bank holiday fell on a day she was not scheduled to

14  work.  Plaintiff offers the legal conclusion, with no support, that "[t]his floating holiday was the

15  equivalent of an extra vacation day."  *See* TAC, ¶ 19.  Plaintiff also alleges that she was promised,

16  pursuant to the Bank's "occasional illness" (i.e., sick day) policy, that she could use two

17  "occasional illness" days per year "for any purpose, not just illness."[4]  Plaintiff concludes, without

18  support, that "BofA's occasional illness policy was actually an illegal use or lose it vacation

19  policy."  *See* TAC, ¶ 22.

   **C.**     **Derivative Claims**

20

21          Based on the theories described above, Plaintiff asserts derivative claims, including the

22  Second Cause of Action for failure to pay wages at termination, the Sixth Cause of Action for

23  waiting time penalties under Section 203, the Seventh Cause of Action for inaccurate wage

24  _____

25  [3] As discussed further herein, Plaintiff should do more than allege the "essence" of the Bank's alleged promises; she should have attached or alleged their specific contents so that it is possible
26  to determine what alleged promises the Bank breached.
   [4] As with Plaintiff's other claims, she does not attach or quote the policies upon which she is
27  suing.  The Bank's actual policies regarding occasional illness days impose conditions upon using these two days for personal reasons, including the prior approval from the employee's manager.

28

statement penalties under Section 226(e), and the Ninth Cause of Action for Unfair Business

Practices under the UCL, and the Tenth Cause of Action for penalties under the PAGA.

### D.      Plaintiff's Class Allegations

Plaintiff seeks to pursue her claims on behalf of "the PTO Class," "the Floating Holiday

Class," and "the Occasional Illness Class":[5]

a. "**The PTO Class**.  All current and former part-time, non-exempt, BofA employees employed in California whose average hours worked or scheduled (including paid time off) exceed(ed) their hours-based classification within the applicable Class Period.";[6]

b. "**The Floating Holiday Class.**  All current and former BofA employees employed in California who accrued more floating holiday hours than they took off in any given year.";

c. "**The Occasional Illness 'OI' Class**.  All current and former BofA employees employed in California who accrued more occasional illness hours than they took off in any given year."

*See* TAC, ¶ 39(a)-(c).

As we discuss in detail below, each of Plaintiff's claims fails as a matter of law and the

TAC should be dismissed, with prejudice.

## III.   LEGAL ARGUMENT

### A.      Applicable Legal Standards Under Rules 12(b)(6), 12(f) & 23(d)(1)(D)

Under FED. R. CIV. P. 12(b)(6), a party may move to dismiss for failure to state a claim

upon which relief can be granted, and a complaint may be dismissed due to: (1) the lack of a

cognizable legal theory; or (2) the absence of sufficient facts alleged under a cognizable legal

theory.  *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

FED. R. CIV. P. Rule 12(f) empowers the Court to "order stricken from any pleading ... any

---

[5] For each defined class, Plaintiff also has alleged a "Subclass," which includes only *former* employees within each defined class.  As described above, Plaintiff also asserts claims on behalf of a putative "Travel Class" and a putative "Points Class."  As the claims asserted by these putative classes are the subject of a pending settlement, Defendant does not include them in this motion.

[6] Adding another layer of uncertainty to Plaintiff's claims, the TAC uses the term "Class Period," but Plaintiff never defines a specific time period that she believes applies to any of her classes. Instead, she defines the "Class Period" as "(a) four years prior to the earliest-filed class action complaint which would operate to toll Plaintiff's and the Classes [sic] claims to (b) the present." TAC, ¶ 40.  But Plaintiff never identifies what class action complaint to which she refers.

4

redundant, immaterial, impertinent, or scandalous matter." Matter is "immaterial" if it has no essential or important relationship to the claim for relief or defenses pleaded. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). An "impertinent" allegation is neither responsive nor relevant to the issues involved in the action and which could not be put in issue or given in evidence between the parties. *Gilbert v. Eli Lilly & Co., Inc.*, 56 F.R.D. 116, 120 n. 6 (D.P.R. 1972). Matters may also be stricken by a court to reduce trial complication and "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

Likewise, FED. R. CIV. P. 23(d)(1)(D) vests the Court with discretion to strike class allegations and require that pleadings "be amended to eliminate therefrom allegations as to representation of absent persons ..." This rule was designed to enable the courts to "give clear definition" to a class action so they can "determine as early in the proceedings as practicable" whether class allegations can be maintained. FED. R. CIV. P. 23, Advisory Committee Notes, 1966 Amendment, Subdivisions (c)(1), (d) and (d)(4). This rule was enacted to ensure "the fair and efficient conduct" of class actions and to "simplify the proof and argument" required in such actions. FED. R. CIV. P. 23, Advisory Committee Notes, 1966 Amendment, Subdivisions (c)(1), (d) and (d)(4). A motion to require amendment can be brought at any stage of proceedings where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met. *Id.*; 7B Wright et al., FED. PRAC. & PROC., § 1795 (3d ed. 2005).

**B.   Plaintiff's Labor Code Claims Are Preempted By The National Bank Act of 1864.**

**1.   The NBA Preempts Any State Law That Obstructs, Impairs, or Conditions a National Bank's Ability to Fully Exercise Its Powers.**

The National Bank Act of 1864, 12 U.S.C. § 21 et seq. ("NBA"), was enacted to protect national banks against intrusive regulation by states and to facilitate a "uniform and universal operation through the entire territorial limits of the country." *See Montgomery*, 515 F.Supp.2d at 1110; *Kroske v. US Bank Corp.*, 432 F.3d 976, 989 (9th Cir. 2006) ("*Kroske*"). A national bank "is an 'instrumentalit[y] of the federal government, created for a public purpose, and as such is

necessarily subject to the paramount authority of the United States." *Marquette National Bank of Minneapolis v. First of Omaha Service Corp.*, 439 U.S. 299, 308 (1978). Accordingly, "the States can exercise no control over [national banks], nor in any wise affect their operation, except in so far as Congress may see proper to permit." *Farmers' & Mechanics' National Bank v. Dearing*, 91 U.S. 29, 34 (1875).

Subsequent to enacting the NBA, Congress delegated the supervision of national banks and the implementation of the NBA to the Office of the Comptroller of the Currency (the "OCC"). See 12 U.S.C. § 93a. The OCC's authority includes "prescrib[ing] rules and regulations to carry out the responsibilities of the office." *Id.* This regulatory authority includes interpretation of state law preemption under the NBA, and carries the same weight and preemptive effect as federal statutes. *See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

Pursuant to its Congressionally-delegated authority, the OCC has provided national banks plenary power to conduct "any activity that is part of, or incidental to, the business of banking, subject to such terms, conditions, and limitations prescribed by the Comptroller of the Currency and any applicable Federal law." OCC, Preemption Final Rule, 69 Fed. Reg. 1916 (2004) § 7.4009(a) and (b). The OCC has promulgated regulations specifically directed toward identifying which state laws affecting national banks are preempted, and which state laws are not preempted. *See* OCC, Preemption Final Rule, 69 Fed. Reg. 1916 (2004); 23 OCC Q.J. 28 (Mar. 2004), 2004 WL 2360325. In this regard, the OCC has established that "A national bank may exercise all powers authorized to it under Federal law, including conducting any activity that is part of, or incidental to, the business of banking, subject to such terms, conditions, and limitations prescribed by the Comptroller of the Currency and any applicable Federal law…. Except where made applicable by Federal law, **state laws that obstruct, impair, or condition a national bank's ability to fully exercise its powers to conduct activities authorized under Federal law *do not apply to national banks*.**" OCC, Preemption Final Rule, 69 Fed. Reg. 1916 (2004) § 7.4009(a) and (b) (emph. added). In addition to this plenary power granted to national banks by the OCC, the OCC specifically has recognized the power of national banks to "adopt compensation plans" for their officers and employees. 12 C.F.R. § 7.2011.

1    In short, the NBA and the OCC regulations "shield[] national banking from unduly

2  burdensome and duplicative state regulation." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11,

3  127 S. Ct. 1559, 167 L. Ed. 2d 389 (2007).  State law "may not curtail or hinder a national bank's

4  efficient exercise of any . . . power, incidental or enumerated under the NBA." *Id.* at 13.

5  Incidental powers "include activities closely related to banking and useful in carrying out the

6  business of banking." *Bank of America v. City and County of San Francisco*, 309 F.3d 551, 562

7  (9th Cir. 2002) ("*City and County of San Francisco*").

8    In accordance with the foregoing principles, and to accomplish the full purposes and

9  objectives of Congress in enacting the NBA, courts routinely have held that "state attempts to

10  control the conduct of national banks are void if they conflict with federal law, frustrate the

11  purposes of the National Bank Act, or impair the efficiency of national banks to discharge their

12  duties." *City and County of San Francisco*, 309 F.3d at 558-59 (affirming that the NBA preempts

13  municipal ordinances purporting to prohibit banks from charging ATM fees to non-depositors).

14  *See also Martinez v. Wells Fargo Home Mortgage, Inc.,* 598 F.3d 549, 556 (9th Cir. 2010)

15  (holding that claim for "unfair" conduct under California's Unfair Competition Law was

16  preempted by OCC regulations because the alleged "unfair conduct"—the amount of certain fees

17  the bank charged—was a "business decision" the OCC has authorized banks to make); *Rose v.

18  Chase Bank USA, N.A.,* 513 F.3d 1032, 1038 (9th Cir. 2008) (holding that the NBA preempted

19  claim under California's UCL against a national bank).

20    The preemptive effect of the NBA is so great that, although there is normally a

21  presumption against the preemption of state laws, in the context of national banks and the NBA,

22  the Supreme Court has "interpreted grants of both enumerated and incidental 'powers' to national

23  banks as grants of authority not normally limited by, but rather ***ordinarily pre-empting, contrary

24  state law***." *Watters*, 550 U.S. at 12 (emph. added) (internal quotation marks omitted); *Wells

25  Fargo Bank N.A. v. Boutris*, 419 F.3d 949, 956 (9th Cir. 2005); *City and County of San Francisco*,

26  309 F.3d at 558-59.  If a state statute interferes with a power that national banks are authorized to

27  exercise, the state statute presents an "irreconcilable" conflict with federal law and is therefore

28

7
**DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT**

1   preempted under principles of conflict preemption.  *See Barnett Bank, N.A. v. Nelson*, 517 U.S.

2   25, 26 (1996).

### 2.   The Bank Has Plenary Authority To Establish The Compensation For Its Employees.

Consistent with its plenary authority to carry out the "business of banking" free of

intrusive and burdensome state regulations, the OCC specifically has recognized the authority of

national banks the power to "adopt compensation plans" for their officers and employees.  12

C.F.R. § 7.2011.  This vests national banks with the authority to compensate their employees as it

sees fit, subject only to limitations imposed by federal law, in this case, the FLSA.  There is no

question that the OCC recognizes Defendant as a national bank.  *See* RJN, Exhibit A (OCC's list

of national banks).  Accordingly, to the extent Plaintiff seeks to impose any state-law obligations

or seek any recovery beyond that which might be provided for or available under the FLSA, her

claims are preempted.

### 3.   The NBA Preempts Plaintiff's Labor Code Claims Because They Impose Obligations That Are Inconsistent With Parallel Federal Law.

Separate and apart from the NBA preempting Plaintiff's state law wage and hour claims

based upon the Bank's plenary authority to set the compensation and other terms and conditions of

its officers' employment unencumbered by state regulation conflicting with federal laws,  the

NBA also preempts Plaintiffs' state law wage and hour claims for the simple reason that the state

laws purport to impose greater burdens on the Bank than those imposed by federal law.

Consistent with the preemption principles discussed above and the purpose of the NBA to

protect national banks against intrusive regulation by states and to facilitate a "uniform and

universal operation through the entire territorial limits of the country," *Montgomery, supra*, 515

F.Supp.2d at 1110, the NBA preempts the California Labor Code provisions purporting to impose

requirements for payment and vesting of vacation pay, penalties for allegedly inaccurate wage

statements, and penalties for failing to pay all wages at termination because such state-specific

obligations and penalties would preclude the Bank from ensuring a "uniform and universal

operation through the entire territorial limits of the country."  *See Kroske,* 432 F.3d at 989;

*Montgomery*, 515 F.Supp.2d at 1110.

1    To subject national banks to individual state employment laws and regulations would

2   "subject [the banks] to a myriad of different laws and regulations which vary from jurisdiction to

3   jurisdiction," which would frustrate the purpose of the NBA and the intent of Congress.  *Evans v.*

4   *Federal Reserve Bank of Philadelphia*, 2004 WL 1535772, *5 (E.D. Pa. 2004) ("*Evans*").  Given

5   that the purpose of the NBA is to protect national banks against intrusive regulation by states and

6   to facilitate a "uniform and universal operation through the entire territorial limits of the country,"

7   applying the California laws at issue here would clearly frustrate the purpose of the NBA.

8    On precisely these grounds, another district court recently held that the NBA preempts

9   certain provisions of the California Industrial Welfare Commission Wage Order 7-2001 that

10   purport to impose requirements on the Bank with regard to certain non-exempt employees beyond

11   that which is required by federal law.  *See Green v. Bank of America, N.A.,* 2013 U.S. Dist. LEXIS

12   76221 (C.D. Cal. May 30, 2013).  In concluding that the NBA preempts the Wage Order as

13   applied to the Bank, the court held:

14    The [NBA] is principally aimed at protecting national banks from intrusive
    state regulation of the business of banking or activities incident to the
15    business of banking.  It has long been recognized that in order to effectuate
    that aim, state regulations that interfere with or obstruct a national bank from
16    exercising the powers granted by the National Bank Act are preempted.
    [*City and County of San Francisco*].
17

18    In this case, the Wage Order at issue is preempted, if at all, because it
    conflicts with or frustrates the purpose of the NBA and the Congressional
19    intent to create a national banking system with uniform and universal
    operation through the entire territorial limits of the country.  *Talbot v. Board*
20    *of Commissioners of Silver Bow County*, 139 U.S. 438 (1891).  Within the
    area of conflict preemption, courts have routinely found state regulations
21    which grant individuals greater rights or protections than afforded under
    parallel federal laws to be preempted.  [*Kroske*]. …
22

23    But Wage Order 7-2001 goes farther than the FLSA and even beyond the
    FLSA's saving clause.  29 U.S.C. § 218.  In including a seating requirement,
24    Wage Order 7-2001 spurs off of the path of parallelism with the FLSA and
    provides employees with added protections. …
25    Here, it is the case that because Section 14(a) of Wage Order 7-2001
    regulates working conditions outside of the scope of the parallel FLSA wage
26    and hour rules and grants additional rights to employees, the regulation
    offends and frustrates the intent of the National Bank Act to regulate
27    uniformly and universally across the United States.

28

**DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT**

1    *Id.* at *2-5.

2         To ensure that national banks have the ability to operate across the country under a

3    uniform and consistent set of requirements, the NBA preempts state laws to the extent that they

4    impose additional or inconsistent regulations regarding the workplace conditions of a national

5    bank's employees.  Accordingly, as applied to the Bank, the NBA and relevant OCC regulations

6    preempt the provisions of the California Labor Code that purport to impose obligations on the

7    Bank beyond those required by the FLSA.  Thus, Plaintiff's Second, Sixth, Seventh, Ninth and

8    Tenth Causes of Action, premised on precisely such state laws, must be dismissed with prejudice.

9         Plaintiff asserts various claims arising under California state law that the Bank did not

10   properly calculate the accrual of certain paid time off, and that the Bank improperly utilized a use-

11   it-or-lose-it system for other types of paid time off.  But these claims depend on legal requirements

12   that deviate from and are inconsistent with federal law.  Plaintiff's claims for penalties under the

13   California Labor Code (for alleged inaccurate itemized wage statements and failure to pay all

14   wages due timely upon separation of employment) are derivative of her various paid time off

15   theories.  These alleged violations have no parallel in the FLSA.  In the absence of any federal

16   requirement that the Bank provide itemized wage statements with particular information, or

17   provide payment of wages within certain time frames upon separation of employment, it is

18   particularly clear that these state laws impose requirements on the Bank in California that do not

19   exist nationally.  Plaintiff also seeks to recover a remedy from the Bank that is not permitted by

20   federal law.  As a result, each of Plaintiff's Labor Code claims plainly frustrates the purpose of the

21   NBA of uniform national banking operations, and the NBA necessarily preempts them.

22              **4.      The NBA Preempts Plaintiff's State Law Wage And Hour Claims
                         Because The Enforcement Of The State Laws Would Frustrate The**

23              **Purpose Of The NBA.**

24        Even if there were no conflict between state and federal law with respect to Plaintiff's state

25   law wage-and-hour claims, permitting Plaintiff's state law claims to proceed against the Bank

26   would nevertheless "frustrate the purpose" of the NBA because it would preclude the Bank from

27   ensuring a "uniform and universal operation through the entire territorial limits of the country."

28   *See Kroske*, 432 F.3d at 989; *Montgomery*, 515 F.Supp.2d at 1110.

1       To illustrate, if Plaintiff's state law wage-and-hour claims were allowed to stand, the Bank

2   could be required to have *different* terms and conditions of employment for its employees in *each*

3   jurisdiction where it does business because of the variances in each state's wage and hour laws.

4   This scenario would preclude the Bank's ability to achieve any uniformity in its operations and its

5   employees would be subject to different terms and conditions depending on their location.  As

6   courts have noted, national banks should not be subjected to state employment laws and

7   regulations which would "subject [the banks] to a myriad of different laws and regulations which

8   vary from jurisdiction to jurisdiction" because this would frustrate the purpose of the NBA and the

9   intent of Congress.  *See, e.g., Evans*, 2004 WL 1535772 at *5.

10      Further, if the Court were to conclude that the NBA does not preempt Plaintiff's state law

11  wage-and-hour claims, it would impair the efficiency of the Bank to discharge its duties.  It would

12  greatly increase the Bank's costs because it would have to create special rules for scheduling,

13  tracking, and paying employees for paid time off, as well as special rules for wage statements and

14  the final payment of wages to terminating employees.  The Bank would also have to conduct a

15  review of the wage and hour laws of each state in which it does business to determine the exempt

16  status of employees in accordance with those laws.

17      Accordingly, Plaintiff's Second, Cause of Action for alleged failure to pay accrued paid

18  time off upon termination, the Sixth Cause of Action for "waiting time" penalties pursuant to

19  Section 203, the Seventh Cause of Action for alleged inaccurate wage statements under Section

20  226, and Ninth Cause of Action for alleged unfair business practices under the UCL, and the

21  Tenth Cause of Action for penalties under PAGA are all preempted by the NBA, because they

22  conflict with federal law, frustrate the purpose of the NBA, and otherwise impair the efficiency of

23  the Bank to discharge its duties, and should be dismissed with prejudice.

24  **C.      The Second Cause of Action for "Failure To Pay Accrued Pay Upon Termination," Based On Plaintiff's Paid Time Off Theories, Fails As A Matter**

25  **Of Law.**

26      In addition to being preempted by the NBA, Plaintiff's Second Cause of Action fails as a

27  matter of law for several separate and independent reasons.

28

1.   **The Bank Was Not Obligated To Permit Plaintiff to Accrue Vacation Or Other Paid Time Off (Or Pay Her For Paid Time Off) Based Upon Her Actual Scheduled Hours Or Actual Hours Worked.**

California law does not require the Bank to provide any paid vacation or other paid time off to its employees. *See Paton v. Advanced Micro Devices, Inc.*, 197 Cal. App. 4th 1505, 1511. (2011). As a result, the Bank is free to adopt any policies it chooses regarding paid time off. Nevertheless, Plaintiff now proceeds on the theory that Bank had an obligation to provide her and other putative class members with vacation and paid time off accrual (and pay for paid time off) based on the hours they actually worked from week to week, rather than based on the policy the Bank adopted and implemented of doing it based upon their hours-based classification. This theory has no legal support, and thus fails as a matter of law.

As alleged in the TAC, the Bank provided Plaintiff, a part-time employee, with an hours-based classification in its payroll system of 20 hours. TAC, ¶ 9. The Bank then used the hours-based classification of Plaintiff and other employees to calculate their accrual of paid time off (including vacation pay).[7]

But Plaintiff alleges that her hours-based classification did not reflect the hours she actually was scheduled or worked from week to week, and that her "regularly scheduled hours were significant more than [her hours-based classification of] 20 hours a week." *Id.* Plaintiff asserts that the Bank's practice of using the hours-based classification (as opposed to their actual hours scheduled or worked) violates California law: "By scheduling part-time employees in excess of their hours-based classification, BofA also paid these employees less than they were due in paid time off. This is illegal." TAC, ¶ 12. But Plaintiff fails to advance any viable theory as to why this is illegal.

Plaintiff's legal conclusion has no factual (or legal) support and incorrectly assumes that

---

[7] For example, an employee with a classification of 20 hours would receive 4 hours for each vacation day used, while an employee with a classification of 30 hours would receive 6 hours for each vacation day used. If the Bank used the "actual" scheduled hours or "actual" hours worked per week, employees' accrual rates could change from week to week, causing an administrative nightmare for tracking accruals. By selecting and using the "hours-based classification" accrual purposes, the Bank can ensure that employees would accrue at a uniform rate from week to week.

1   employees were "due" more vacation pay than the Bank decided to pay them.  While it may be

2   true that Plaintiff would have received more vacation time if the Bank used her actual hours

3   worked (or actual hours scheduled) to calculate her accrual rather than her hours-based

4   classification, that does not support the assertion that the Bank had an obligation in the first place

5   to use either of these as the basis for calculating vacation or paid time off accrual.  This is

6   particularly true where Plaintiff concedes, as she must, that it is the Bank's *uniform practice* to

7   provide paid time off based on employees' hours-based classification.  *See* TAC, ¶ 17.

8          An employer is entitled to provide employees with any amount of paid vacation and

9   holiday, *or none at all*.  The fact that Plaintiff believes that Defendant's system for providing

10   accrued paid time off was not generous enough, was arbitrary, or was unfair, does not state a claim

11   for a violation of the law.  Accordingly, Plaintiff has failed to meet her burden to plead factual

12   allegations that "allow[] the court to draw the reasonable inference that the defendant is liable for

13   the misconduct alleged."  *Iqbal, supra*, 129 S.Ct. at 1949.

14          **2.      Plaintiff's Claims For Alleged Forfeiture of Unused Floating Holidays**
            **And Occasional Illness Fail As A Matter Of Law Because They Are Not**
15          **Subject To The Legal Requirements For Vacation Pay.**

16          Another basis for Plaintiff's Second Cause of Action is the allegation that the Bank did not

17   pay employees upon termination for unused floating holidays and occasional illness days.  TAC,

18   ¶¶ 59-60.  While Plaintiff asserts that floating holidays and occasional illness days are merely

19   additional forms of vacation, Plaintiff provides no factual or legal support for these claims.

20          Despite Plaintiff's conclusory statements that floating holidays and occasional illness days

21   are the same as vacation, they are distinct from vacation, and therefore Section 227.3 does not

22   apply to them.  Only floating holidays that are provided to employees **without restriction** may be

23   deemed equivalent to vacation days.  *See, e.g.,* DLSE Enforcement Manual § 15.1.12 (2002) ("The

24   DLSE has always opined that leave time which is provided without condition is presumed to be

25   vacation no matter what name is given to the leave by the employer. . . . [T]here must be an

26   objective standard by which it can be established that the leave time is attributable to holidays,

27   sick leave, bereavement leave or other specified leave.  Tying the right to take the time to a

28   specific event or chain of events such as allowing a vacation period for the Thanksgiving weekend

1    would suffice to satisfy the test.") (emphasis in original).

2           In *Paton, supra*, the Court echoed the DLSE's reasoning and explained that vacation is

3    distinct "from paid time off in that is conditioned upon the occurrence of a specific event or

4    granted for a particular purpose.  For example, some employers give paid time off for state or

5    federal holidays.  The right to this type of time off does not vest with day-to-day employment; it

6    vests upon the occurrence of the holiday." *Id.* at 1519.  The *Paton* Court went on to define

7    vacation as follows: "It is paid time off that accrues in proportion to the length of the employee's

8    service, is not conditioned upon the occurrence of any event or condition, and usually does not

9    impose conditions upon the employee's use of the time away from work." *Id.*

10          Applying the reasoning articulated in *Paton*, the court in *Karrer v. Best Buy Co., Inc.,* 2012

11   U.S. Dist. LEXIS 77242 (C.D. Cal. May 24, 2012), rejected plaintiff's contention that the

12   "shifting" holidays at issue constituted vacation and was not subject to forfeiture.  *Id.* at *22-23.

13   The court reasoned: "The days were not earned in proportion to length of employment, nor were

14   they conditioned only upon rendering services for Best Buy over a period of time.  Instead, the

15   days were 'conditioned upon the occurrence of a specific event' and were 'granted for a particular

16   purpose.'" *Id.* at *23-24.  The court explained that defendant's policy met the requirements of

17   DLSE Manual § 15.1.12, because the shifting holidays were "tethered to a Company designated

18   holiday on which an employee works," and had to be used within a definite time period.  *Id.* at

19   *24.  Moreover, the plaintiffs failed to present any evidence that the company's holiday pay policy

20   was "a subterfuge to avoid paying out accrued vacation pay, or was an inequitable or unfair means

21   of providing vacation pay." *Id.*  Thus, "because the shifting holidays are not vacation wages, they

22   fall outside the requirements of *Suastez* [*v. Plastic Dress-Up Co.*, 31 Cal.3d 774 (1982)] and §

23   227.3.  California law does not require that the shifting holidays in this case be paid out upon

24   termination, nor does it preclude the forfeiture of such holidays.  The Holiday Pay Policy

25   memorandum's provision that the holiday will be lost if not used, and will not be paid out upon

26   termination, is not unlawful." *Id.* at *25.

27          Just as in *Paton* and *Karrer*, Plaintiff has not alleged any facts (nor could she) to even

28   suggest that the floating holidays and occasional illness days provided by the Bank to its

**DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT**

employees implicate the rules governing vacation. The floating holidays and occasional illness days do not accrue in proportion to the length of an employee's service, and are conditioned upon the occurrence of a particular event, and/or are restricted as to their usage. Because an employee can only receive floating holiday credit if specific conditions are met, the Bank's floating holiday policy does not violate California law prohibiting the forfeiture of accrued but unused vacation pay. *See Paton*, 197 Cal. App. 4th at 1519 (vacation is distinct "from paid time off that is conditioned upon the occurrence of a specific event or granted for a particular purpose").

Likewise, the Bank's occasional illness day policy provides associates with paid time off if the associate needs to be absent due to illness or injury of themselves or a family member. As of 2005, associates could accrue ten occasional illness days per calendar year, and could use two for personal reasons, subject to prior approval of their managers. Because this policy imposes conditions on the associate's use of the time away from work, occasional illness days do not constitute vacation days that are not subject to forfeiture. *See Smith v. RadioShack Corp.*, D052730, 2009 Cal. App. Unpub. LEXIS 4162, at *8-10 (May 28, 2009) (a "Personal Paid Absence Benefit," which incorporated sick leave and personal leave, did not constitute vacation subject to Section 227.3 because leave pursuant to the Absence Benefit had to be "necessary" and was limited to certain purposes, i.e., was only to be used "when a team member must be absent because of personal illness, a family member's illness, doctor/dental appointments, the need to visit a child's teacher, or to run an important errand"; "In contrast to vacation leave which is provided regardless of need, employers can also provide employees with a benefit, such as sick leave or other need-based leave, that is designed to meet an employee's specific need to be absent from work. We conclude that RadioShack's Absence Benefit falls into this need-based category, and it is not a vacation benefit.").

Perhaps most tellingly, there is no allegation that the Bank – which already offers generous vacation benefits to its employees and is not in any way obligated to provide its employees any "floating holiday" or "occasional illness" days – is in any way engaged in a subterfuge to avoid paying out accrued vacation pay, or otherwise has acted inequitably or unfairly in its administration of floating holidays or occasional illness days for its employees. It would be

absurd to consider the Bank's floating holiday or occasional illness day policies a "subterfuge" to avoid the rules governing vacation pay because *it already has a bona fide vacation policy* in addition to the floating holiday and occasional illness day policy. *See Smith, supra* (finding it persuasive that defendant provided an express vacation benefit in addition to the Absence Benefit).

### D. Plaintiff's Breach of Contract Claim Fails Because Plaintiff Failed To Attach or Allege the Contractual Provision Upon Which She is Suing.

Plaintiff also asserts a claim for breach of contract on the apparent theory that the Bank breached a contract with Plaintiff by failing to provide vacation accruals and floating holidays consistent with its "uniform policies." But Plaintiff fails to attach the "uniform policies" that she claims Defendant breached. Plaintiff likewise fails to quote or describe in any detail the policy provisions, or provide anything other than vague and conclusory allegations. Plaintiff does not even identify the name of any of the "uniform policies" on which she bases her claim. This is woefully insufficient to state a claim for breach of contract. *See, e.g., McKinnon v. Dollar Thrifty Auto. Group*, 2013 U.S. Dist. LEXIS 29095, *20-21 (N.D. Cal. Mar. 4, 2013) (dismissing a breach of contract claim on a motion to dismiss because "Plaintiffs do not cite, attach, or explain in real detail the contract provisions that Defendants allegedly breached."). *See also Mora v. U.S. Bank N.A.*, 2012 U.S. Dist. LEXIS 79357, *19-20 (N.D. Cal. June 7, 2012) (dismissing plaintiff's contract and promissory estoppel claims because there were inadequate factual allegations, and rejecting the plaintiff's argument that it was sufficient to plead the "legal effect" of a contract).

It is telling that Plaintiff has declined to attach any of the alleged contracts, or to even identify which policies form the basis for her contract claim, and merely quotes selected phrases from unspecified documents. While Plaintiff claims that the Bank has "uniform policies" setting forth these provisions, the truth is that Plaintiff is misstating (or at best, misunderstanding) the actual terms of the Bank's policies. The pleading requirement for a contract claim are designed to prevent precisely what Plaintiff is doing here – misconstruing contract provisions that support her claim, while ignoring the language of the actual policies.

Plaintiff's failure to attach, quote, or cite the relevant policies is even more inexplicable as this is already the fourth version of Plaintiff's operative complaint. Moreover, Plaintiff filed her

1  TAC more than six months after she filed her original complaint.  As a result, Plaintiff has had

2  more than ample time and opportunity to determine the grounds for her contract claim and to

3  identify for Defendant which policies or provisions that she is relying on to state her contract

4  claim.  As Plaintiff is unable to meet the requirements for pleading a contract claim, despite the

5  ample opportunities to do so, her contract claim should be dismissed, with prejudice.

6          **E.      Plaintiff's Sixth Cause of Action for Section 203 Waiting Time Penalties Fails
                  Because It is Derivative Of Her Other Failed Claims And Because Good Faith
7                  Disputes Exist Regarding The Underlying Claims.**

8          Plaintiff's claim for waiting time penalties under Section 203 is purely derivative in that it

9  is based solely on Plaintiff's other claims that Defendant underpaid her, based on her theories

10  regarding vacation and paid time off, travel time pay, and Defendant's recognition points program.

11  *See* TAC, ¶¶ 83-87.  As a result, the claim for Section 203 penalties based on the paid time off

12  theories fails for the same reasons that these underlying claims fail.

13          Furthermore, Plaintiff's claim for waiting-time penalties should be dismissed with

14  prejudice because Plaintiff cannot plausibly allege any "willful" conduct by Defendant as a matter

15  of law.  A good faith dispute about the applicable law will preclude a finding that any non-

16  compliance with Cal. Lab. Code §§ 201 or 202 was "willful," which in turn precludes imposition

17  of waiting time penalties.  *See Barnhill v. Robert Saunders & Co.*, 125 Cal.App.3d 1, 8 (1981)

18  (uncertainty over applicable law constituted good faith dispute regarding payment of wages and

19  therefore precluded assessment).  A "good faith dispute" occurs "when an employer presents a

20  defense, based in law or fact, which, if successful, would preclude any recovery on the part of the

21  employee.  The fact that a defense is ultimately unsuccessful will not preclude a finding that a

22  good faith dispute did exist."  8 Cal. Code Regs. § 13520.

23          Here, Plaintiff's theories that Defendant was required to pay Plaintiff vacation and holiday

24  pay based on her hours worked, rather than her classification as a part-time employee, and her

25  theory that the Bank's floating holiday and occasional illness days were, in effect, vacation days,

26  are novel theories.  Even if these claims ultimately succeeded, it is facially apparent that there is a

27  good faith dispute as to these claims that would preclude the imposition of Section 203 penalties.

28

**F.** **Plaintiff's Seventh Cause of Action for Inaccurate Wage Statement Penalties Fails As A Matter Of Law.**

    **1.** **Plaintiff's Wage Statement Penalties Claim Fails To The Extent It is Derivative Of Plaintiff's Other Claims.**

To the extent Plaintiff's Section 226(e) penalties claim is derivative, i.e., that her wage statement is incorrect because the Bank did not pay her as much as it should have paid her, then her claim fails for the same reasons as her underlying claims, as discussed above.

    **2.** **Section 226(a) Does Not Require Accrued Paid Time Off To Be Listed On A Wage Statement.**

Plaintiff also advances the novel theory that her wage statements are defective because they do not identify the amount of paid time off she accrued in each period. This theory fails as a matter of law because Section 226(a), which sets forth the requirements for wage statements, and which provides the predicate for Section 226(e) penalties, includes no requirements that paid time off accruals be listed on a wage statement. Section 226(a) lists nine different items of information that, if applicable, must be listed on a wage statement. Section 226(a) contains no mention paid time off, or any of the categories of paid time off that Plaintiff believes should have been listed on her wage statement (vacation, occasional illness, and floating holidays). As a result, the premise of Plaintiff's wage statement penalty claim – that the wage statements were inaccurate because they did not itemize accruals of paid time off – has no statutory basis and should be rejected.

Plaintiff will presumably argue that Section 226(a) somehow *implicitly* covers paid time off because it requires a listing of "gross wages earned" during the pay period and vacation can be considered a form of "wages." But the language of Section 226(a), read in context, demonstrates that it requires an accurate itemization of wages that are being paid in the relevant pay period, rather than an itemization of all things, such as paid vacation, that will be paid at some point in the future. Each of the itemized requirements in Section 226(a), such as the dates covered by the pay period, the hourly rate(s), the number of hours worked, the piece-rate and number of pieces earned, and deductions from gross pay, reflect that the purpose of Section 226(a) is to ensure that employees can understand what they are being paid, and understand how their pay was calculated. Nothing in Section 226(a) suggests that wage statements must also apprise employees of vested

1    rights or benefits that are not being paid during that pay period.

2            Further, it appears that the California Division of Labor Standards Enforcement ("DLSE")

3    likewise understands Section 226(a) to require an itemization of wages actually paid during the

4    pay period, and does not require an itemization of vacation accrual or other amounts to be paid in

5    the future.  The DLSE provides two samples on its website of wage statements that comply with

6    Section 226(a), neither of which lists any vacation or paid time off accruals.  *See* RJN, Exhibit B.

7            Recent amendments to Section 226(e) make particularly clear that the requirements in

8    Section 226(a) relate to amounts *actually* paid, rather than amounts that will be paid in the future.

9    As of January 1, 2013, Section 226(e)(2)(B)(i) now provides that a wage statement must allow an

10   employee to promptly and easily determine "[t]he amount of the gross wages or net wages paid to

11   the employee during the pay period."  In short, the statute does not address any wages that ***will be***

12   ***paid in the future***, such as accruals of vacation or other paid time off, and the omission of such

13   information on a wage statement cannot form the basis for a Section 226(e) claim.

14                  **3.    To The Extent Plaintiff Asserts A Claim Under Section 226.3, It Fails**
                            **Because Section 226.3 Provides No Private Right Of Action.**
15

16           Plaintiff's Seventh Cause of Action includes a fleeting reference to Section 226.3.  TAC, ¶

17   89.  To the extent Plaintiff also purports to sue under Section 226.3, such a claim must be

18   dismissed because Section 226.3, by its plain language, is a statute ***to be enforced by the Labor***

19   ***Commissioner***, and provides no private right of action by private citizens.

20           **G.    Plaintiff's Ninth Cause of Action Under the UCL Fails Because It is Wholly**
                    **Derivative of Plaintiff's Underlying Failed Claims.**
21

22           Plaintiff's purported UCL claim also fails as a matter of law because it is wholly derivative

23   of the factually and legally insufficient allegations of his causes of action for "wages, overtime,

24   vacation pay, business expenses, or the cash-value of accrued recognition points."  *See* TAC, ¶¶

25   96-98.  The UCL does not proscribe any particular conduct; rather, it borrows from other laws by

26   making them independently actionable as unfair competitive practices.  *See Korea Supply v.*

27   *Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003).  Here, Plaintiff's UCL claim is based on

28   the allegations of her purported Labor Code causes of action that are preempted by the NBA, fail

                                                          19

1    to satisfy the FED. R. CIV. P. 8 pleading requirements, and are otherwise legally deficient, as

2    discussed above.  Accordingly, because Plaintiff has failed to plead any facts that could establish

3    an actionable predicate violation, her wholly derivative UCL claim must be dismissed as well.

4    **H.      Plaintiff's Tenth Cause of Action for PAGA Penalties Fails Because It is**
         **Wholly Derivative of Plaintiff's Underlying Failed Claims.**

5    

6    As with Plaintiff's UCL claim, her purported PAGA claim fails as a matter of law because

7    it is wholly derivative of her other underlying claims.  PAGA claims merely create new remedies

8    for actions that are already rendered unlawful through other provisions of the Labor Code.

9    In addition, to the extent Plaintiff seeks to use her First Cause of Action for breach of

10   contract as a predicate for PAGA penalties, such a claim would fail as a matter of law because

11   PAGA penalties are only available for certain violations of the Labor Code.  *See* Section 2699(a).

12   PAGA does not create any penalties for breaches of contract.

13   **I.      The Class Action Allegations Should Be Dismissed And/Or Stricken.**

14   Even if the Court finds that Plaintiff has properly pleaded a claim for individual relief, her

15   putative class action claims and allegations nevertheless should be dismissed and/or stricken

16   because Plaintiff has not properly pleaded the essential elements required for certification of a

17   class under FED. R. CIV. P. 23, and cannot do so as a matter of law.

18   **1.   Plaintiff Cannot Satisfy The Elements Of Rule 23.**

19   FED. R. CIV. P. 23(d)(1)(D) authorizes the Court to "require that the pleadings be amended

20   to eliminate allegations about representation of absent persons and that the action proceed

21   accordingly."  In addition, FED. R. CIV. P. 23(c)(1) directs district courts to determine "as soon as

22   practicable" whether the proposed class satisfies Rule 23's requirements.  Therefore, it is entirely

23   appropriate for the Court to examine Plaintiff's allegations and determine at this stage whether

24   Plaintiff can proceed with his putative class action claims.  Indeed, as the Ninth Circuit has

25   recognized, it is sometimes "plain enough from the pleadings to determine whether the interests of

26   the absent parties are fairly encompassed within the named plaintiff's claims."  *Kennedy v.*

27   *Unumprovident Corp.*, 50 Fed.Appx. 354, *3 (9th Cir. 2002).

28   To proceed with her proposed class action, Plaintiff must adequately plead an ascertainable

1   class, which Plaintiff has not done in the TAC.  Moreover, the allegations of the TAC and the

2   nature of Plaintiff's claims establish that individualized inquiries necessarily will predominate in

3   this action, requiring the dismissal or striking of the class action allegations.

4           a.      **Plaintiff Has Failed to Plead an Ascertainable "PTO Class."**

5           For a class to be certified, there must be an ascertainable class – *i.e.*, a class whose

6   members can be identified without individual trials on the merits.  *See Xavier v. Philip Morris*

7   *USA Inc.,* 787 F. Supp. 2d 1075, 1089 (N.D. Cal. Apr. 18, 2011).  A class definition must be

8   "definite enough so that it is administratively feasible for the court to ascertain whether an

9   individual is a member."  *O'Connor v. Boeing N. Am., Inc.,* 184 F.R.D. 311, 319 (C.D. Cal. 1998).

10          The PTO Class is not ascertainable because it depends on the answer to a question that

11  may change over time:  whether the employee's average hours worked or scheduled exceeds their

12  hours-based classification.  This class definition is not ascertainable class for multiple reasons.

13          First, Plaintiff defines the class based whether an employee's "average hours worked *or*

14  scheduled" exceeds their hours-based classification.  But hours worked and hours scheduled may

15  be (and often are) different.  Which figure should be used?   What if the average hours worked are

16  greater than the hours-based classification but the average hours scheduled are below the hours-

17  based classification?  Is that employee a class member?  And over what time period is this average

18  applied? Each year?  The class period?  Some other time period?  Plaintiff leaves her class

19  definition impermissibly vague and ambiguous, and impossible to ascertain.

20          Second, as employees' hours scheduled and hours worked may (and often do) vary from

21  week to week, employees may drift ***in and out*** of the class definition over time.  A light schedule

22  one week could make an employee's "average hours" fall to below their hours-based

23  classification, and thereby take the employee out of the class.  The ability to ascertain an

24  employee's membership in the class is particularly crucial given the nature of Plaintiff's theory.  If

25  Plaintiff's theory is correct, members of the PTO Class would be entitled to receive additional

26  vacation pay.  But those outside the PTO Class will have accrued (and potentially received) ***more***

27  vacation time and pay than they were entitled to under the Bank's policies (and the law, if Plaintiff

28  is correct) and therefore will be subject to reductions in their vacation pay (and potentially subject

to claims **against them** by the Bank to recoup their ill-gotten vacation pay).  Given the implications of Plaintiff's theory, it is therefore crucial that employees (and the Bank) know whether they stand to gain or lose from the success of Plaintiff's claims.  Given Plaintiff's proposed class definition, it is impossible for an employee to know whether they will ultimately be within the class definition.

> **b.  Plaintiff's Floating Holidays Class And Occasional Illness Class Are Improper Merits-Based Class Definitions.**

"A class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a person is a member of the class." *Hanni v. Am. Airlines, Inc.*, No. C 08-00732 CW, 2010 U.S. Dist. LEXIS 3410, *24 (N.D. Cal. Jan. 15, 2010) (quoting 5 James W. Moore, Moore's Federal Practice § 23.21[3][c] (2001)).  Class definitions that incorporate legal standards of liability are inherently unascertainable, as they necessarily require merits determinations.  *See, e.g., Eversole v. EMC Mortg. Corp.*, No. 05-124-KSF, 2007 U.S. Dist. LEXIS 38892, *15-16 (E.D. Ky. May 29, 2007) (the issue of liability in the case was the same "exact question that must be decided before the class can be ascertained."); *Bostick v. St. Jude Med., Inc.,* No. 03-2636 BV, 2004 U.S. Dist. LEXIS 29997, at *48-49 (W.D. Tenn. Aug. 17, 2004) ("The requirement of ascertainability 'is not satisfied when the class is defined simply as consisting of all persons who may have been injured by some generically described wrongful conduct allegedly engaged in by a defendant'" because to establish who belongs in the class, the court would have to "conduct 'mini-trials on the merits'.") (cit. omitted).

Plaintiff's Floating Holiday and Occasional Illness Classes are merits-based because they are defined as those employees with greater numbers of "accrued" floating holiday hours and "accrued" occasional illness hours, than the hours they used.  Whether any of these hours "accrue," however, is a contested issue.  The Bank disputes that anyone had "accrued" floating holiday or occasional illness hours because these paid time off days do not "accrue" in the manner of vacation days.  As a result, the class definition improperly assumes the outcome of one of a central legal dispute.

1

### c.     No Commonality Exists As A Matter Of Law.

2       The allegations of the FAC and the nature of the claims also conclusively establish that

3  individualized issues of law and/or fact necessarily will predominate in this action, thereby

4  justifying the Court to dismiss or strike the class allegations.

5       As the Supreme Court held in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551

6  (2011), "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered

7  the same injury.'  This does not mean merely that they have all suffered a violation of the same

8  provision of law .... Their claims must depend upon a common contention .... That common

9  contention, moreover, must be of such a nature that it is capable of classwide resolution—which

10 means that determination of its truth or falsity will resolve an issue that is central to the validity of

11 each one of the claims in *one stroke*." (emph. added).  Thus, "'[w]hat matters to class certification

12 … is not the raising of common 'questions'—even in droves—but, rather the capacity of a

13 classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.

14 Dissimilarities within the proposed class are what have the potential to impede the generation of

15 common answers.'"  *Id.* (cit. omitted, emph. added).

16       It is readily apparent from the face of the TAC that in order to resolve Plaintiff's putative

17 class action claims, the court would have to engage in multiple individualized inquiries as to each

18 class member that would prevent her from obtaining certification of her proposed classes.  This is

19 particularly obvious as to Plaintiff's breach of contract claim.  Taking Plaintiff's theory at face

20 value, that she understood the Bank's paid time off policies as promising that paid time off accrual

21 would be based on hours actually worked, rather than the hours-based classification, the obvious

22 question is how did every other employee understand the same policies?  As Plaintiff is advancing

23 an interpretation of the written policies that deviate from their plain language and common sense

24 interpretation, is Plaintiff relying on parol evidence or an alleged revision to the Bank's policies?

25 These issues of contract construction and interpretation are extremely ill-suited to class treatment.

26       Numerous other individualized inquiries will necessarily also exist for Plaintiff's other

27 theories.  For example, as to floating holidays and occasional illness days, did other employees

28 understand that their ability to use these days had conditions that did not apply to vacation days?

Did other employees request and obtain permission from their managers to use certain occasional illness days for personal reasons, as required by the policy?  In addition, when using vacation, floating holidays, and/or occasional illness days, it is the responsibility of each individual associate to accurately record in the Bank's timekeeping system the basis for their paid time off. If employees did not accurately record this (for example, they recorded a vacation day as an occasional illness day, or vice versa), it will be impossible to determine their membership in the class or their potential damages without an individualized inquiry, including testimony and cross-examination.  Thus, because Plaintiff's putative class action claims raise individualized inquiries that will generate *individualized answers*, as a matter of law, Plaintiff cannot satisfy the commonality element of FED. R. CIV. P. 23, and the Court should dismiss and/or strike the class allegations with prejudice.

### 2.  The Class Allegations In The TAC Fail To Satisfy FED. R. CIV. P. 8

In addition to Plaintiff's class definition being defective on its face and the nature of the claims necessarily precluding a finding of commonality under FED. R. CIV. P. 23, Plaintiff also has failed to satisfy the pleading requirements of FED. R. CIV. P. 8 in connection with her class action allegations, requiring their dismissal.  Since the Supreme Court decided *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009), courts have applied these holdings to wage and hour class actions to find that plaintiffs must also comply with the same minimum pleading requirements under FED. R. CIV. P. 8(a) in order to survive a FED. R. CIV. P. 12 motion and proceed to class discovery.  *See, e.g.*, *Deleon v. Time Warner Cable, LLC*, No. CV 09-2438 AG (RNBx), 2009 U.S. Dist. LEXIS 74345, *6 (C.D. Cal. July 17, 2009); *Harding v. Time Warner, Inc.*, No. 09cv1212-WQH-WMc, 2009 U.S. Dist. LEXIS 72851, *9 (S.D. Cal. Aug. 18, 2009);  *Zhong v. August August Corp.*, 498 F.Supp.2d 625, 628-30 (S.D.N.Y. 2007).

In other words, ***all*** of the material allegations of a complaint, including those related to class action treatment, must contain sufficient factual allegations for the Court to be able to determine that a plaintiff is entitled to move forward and subject a defendant to the rigors, burdens, and costs of the discovery that typically ensues in a putative class action lawsuit.  Thus, the need for enforcement of these pleading requirements is particularly important in the context of

1  a putative class action like this one.

2        Plaintiff's allegations regarding the Bank's policies and procedures are unsupported by ***any***

3  factual and non-conclusory allegations.  The TAC also is devoid of any factual allegations

4  establishing that Plaintiff has any actual knowledge (and not just speculation) of the understanding

5  of other employees with respect to how they would accrue vacation or other paid time off (i.e.,

6  based upon their hours-based classification or based upon their actual hours worked or scheduled),

7  and the manner in which other employees accrued, used, or recorded any form of paid time off.

8        Even if Plaintiff had alleged sufficient facts to state a claim for relief—which, as discussed

9  above, she has not—at best, she would have alleged a claim for individual relief.  Where, as here,

10  a plaintiff's class-wide claims are based only on bald, conclusory allegations of a policy or

11  practice, those allegations fail to satisfy FED. R. CIV. P. 8 and must be dismissed or stricken.  *See*

12  *Iqbal*, *supra*, 129 S.Ct. at 1950-51; *Harding*, *supra*, 2009 U.S. Dist. LEXIS 72851 at *10-*12;

13  (allegation that defendant "maintain[ed] ... a practice" was "too generic and conclusory to satisfy

14  the [*Twombly*] standard"); *Harding v. Time Warner, Inc.*, No. 09-cv-1212-WQH-WMc, 2010 U.S.

15  Dist. LEXIS 5896, *18 (S.D. Cal. Jan. 26, 2010) (dismissing "practice" allegations a second time

16  where there were no "specific factual allegations which suggest that, in practice, [the employer's]

17  policies resulted in" the wrongful conduct alleged).  Therefore, Plaintiff's putative class action

18  allegations should be dismissed or stricken for failure to comply with FED. R. CIV. P. 8.

19  **IV.**     **CONCLUSION**

20        For all of the foregoing reasons, Defendant requests that Plaintiff's TAC be dismissed with

21  prejudice and/or that the Court dismiss or strike Plaintiff's claims as set forth in this Motion.

22

23

24

25

26

27

28

1   Date:  November 12, 2013                **McGuireWoods LLP**

2

3

4                                           By:   /s/ Michael D. Mandel

                                                  Matthew C. Kane, Esq.
5                                                 Michael D. Mandel, Esq.
                                                  John A. Van Hook, Esq.
6                                                 Christopher A. Killens, Esq.

7                                           Attorneys for Defendant
                                            BANK OF AMERICA, N.A.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT**