1    CHRIS BAKER, State Bar No. 181557
     cbaker@bakerlp.com
2    BAKER LAW PRACTICE
3    44 Montgomery Street, Suite 3520
     San Francisco, CA 94104
4    Telephone: (415) 433-1064
     Fax:  (415) 520-0446
5

6    Attorney for Plaintiff
     SHERI GARIBALDI
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11                                          | **Case No. 3:13-CV-02223-SI**

12                                          | **FOURTH AMENDED CLASS ACTION
                                            | COMPLAINT**
13

14   SHERI GARIBALDI                        | **CAUSES OF ACTION**

15   (on behalf of herself and all others similar situated)   | **1.** BREACH OF CONTRACT/PAID TIME
                                            | OFF POLICIES
16                        Plaintiff,
                                            | **2.** FAILURE TO PAY ACCRUED PAY
17          vs.                             | UPON TERMINATION

18   BANK OF AMERICA, National Association  | **3.** FAILURE TO PAY OVERTIME
                                            | AND/OR STRAIGHT-TIME PAY
19
                                            | **4.** MISSED MEAL BREAKS
20                        Defendant.
                                            | **5.** REIMBURSEMENT OF TRAVEL
21                                          | EXPENSES

22                                          | **6.** WAITING TIME PENALTIES

23                                          | **7.** FAILURE TO PROVIDE ACCURATE
                                            | WAGE STATEMENTS
24
                                            | **8.** ILLEGAL FORM OF PAYMENT AND
25                                          | UNLAWFUL COERCION

26                                          | **9.** UNFAIR BUSINESS PRACTICES

27                                          | **10.**  PAGA

28

Plaintiff Sheri Garibaldi ("Plaintiff") brings the following class action on behalf of herself and all others similarly situated against Defendant Bank of America, National Association ("BofA" or "Bank").  Plaintiff files this Fourth Amended Complaint in accordance with the Court's Order Granting in Part the Bank's Motion to Dismiss.

## PARTIES

1.     Until February of 2013, Plaintiff worked as a part-time non-exempt employee in the Belmont and Foster City, California branches of Defendant BofA.  Plaintiff resides in San Mateo County.

2.      BofA does business in San Mateo County and throughout California.

3.     Plaintiff is ignorant of the true names of other potential defendants in this Action. Upon learning such names, Plaintiff will amend this complaint.

## FACTS

4.     Plaintiff started work for BofA as a part-time, non-exempt teller in 2005.  At all times, her hourly wage – as set by BofA – was less than $20.00 an hour.  Initially, she worked only in the Belmont branch of BofA.  In the latter part of her employment, she worked in both the Belmont and Foster City branches.

5.     BofA states in its policies and procedures that it intends to comply with federal and state wage and hour laws.  According to its 2010 Employee Handbook, "the company does not cause or tolerate any violation of the law or regulation in the conduct of its business or related activities."

6.     BofA's 2010 Timekeeping Compliance Learner's Guide states that "paying overtime-eligible associates for all time worked supports Bank of America's core values, and is also a requirement of federal and state labor laws."  Another timekeeping compliance policy states that "states with meal or rest period laws generally require that associates be given an unpaid 30 minute meal or rest period . . . . Consistent with these laws, Bank of America recommends a 30 minute unpaid meal period in many schedules."  Moreover, "because most state laws require a meal break, associates cannot volunteer to work through the meal period even if

they are paid."  BofA specifically notes that "managers should ensure they know and comply with overtime laws specific to their state, in addition to the FLSA."

7.     Similarly, BofA's policies contemplate compliance with state wage and hour and labor laws with respect to paid time off.  For example, with respect to vacation time, BofA's 2010 Employee Handbook states: "You may not carry over any unused vacation into the next calendar year, unless otherwise required by law. . . . For the states that require vacation carry over for accrued but unused vacation, the carryover occurs automatically in the payroll system."  BofA policies further note, specifically, that "California prohibits the forfeiture of earned by unused vacation."  BofA's occasional illness and floating holiday policies likewise call for the forfeiture of unused days, "unless otherwise required by law."

## I.     Paid Time Off

### A.     Overview

8.     Under BofA policy, a "part-time" employee is an employee whose regularly scheduled hours are between 20 and 37.5 hours a week on an ongoing basis.  "Part-time" employees are entitled to vacation pay, floating holidays, holiday pay, occasional illness days, jury duty, bereavement leave, military leave and other benefits.  BofA also provides part-time employees with an hours-based classification, *e.g.*, a "20 hour" employee, a "24 hour" employee, etc.

9.     Throughout her employment, BofA described and classified Plaintiff as a "20 hour" part-time employee.  Despite this classification, Plaintiff's regularly scheduled hours were significantly more than 20 hours a week.

10.    BofA regularly scheduled and schedules its part-time employees for more hours than their hours-based classification.  Among other things, different retail branches share part-time employees.  Thus, similar to Plaintiff, a "20 hour employee" might work, during the same week, 20 hours at one location and 12 hours at another location, and yet still be classified as a "20 hour" employee.

11.    On information and belief, BofA engaged in the practice of scheduling part-time employees in excess of their hours-based classification in order to reduce costs.  By scheduling

part-time employees in excess of their hours-based classification, BofA could avoid paying full-time employees overtime.  By scheduling part-time employees in excess of their classification, BofA could avoid the cost and overhead associated with hiring additional part-time employees, or converting part-time employees to full-time ones.

12.     By scheduling part-time employees in excess of their hours-based classification, BofA also paid these employees less than they were due in paid time off.  This is illegal.

13.     In exchange for her labor, BofA agreed to pay Plaintiff a specific wage.  A part of that wage was paid time off.  This paid time off took the form of vacation days, "floating" holidays, holiday pay, jury duty pay, occasional illness days, bereavement leave, military reserve training, parental leave, and military training, among other things.

14.     Another part of that wage was "recognition points."

15.     Pursuant to the terms of her employment with BofA (as evidenced by BofA's uniform vacation policies), BofA promised that Plaintiff would accrue vacation based (essentially) on her average scheduled hours.  Thus, for example, if Plaintiff was entitled to two weeks of vacation per year, and she averaged *20* hours per week, she would earn *40* hours of vacation per year.  If, on the other hand, Plaintiff averaged *25* hours per week, and she was entitled to a two-week vacation, then she would earn *50* hours of vacation per year.

16.     Similarly, BofA promised that Plaintiff would earn and be paid other Paid Time Off based on, essentially, her average scheduled hours.  Moreover, BofA promised that if Plaintiff's scheduled hours increased, the amount she earned and was paid in Paid Time Off (including vacation) would likewise increase.

17.     BofA did not pay Plaintiff her other Paid Time Off in accordance with its paid time off policies.  Instead, BofA paid Plaintiff paid time off based on her hours-based classification as a 20 hour employee.  It did not pay her based on her *actual* average scheduled hours (i.e., the number of hours she actually worked or was scheduled).

18.     BofA paid all of its part-time employees paid time off based on their hours-based classification as opposed to their actual average hours worked or scheduled.  These are the members of the PTO Class.  BofA systematically failed (and fails) to update the hours-based

1   classification of the PTO Class to account for increases in their actual average hours worked or

2   scheduled.

3         19.     As a result of BofA's action (or inaction), the PTO Class receive(d) less paid time

4   off pay than BofA promised them.

5       **B.**     **The Uniform PTO Policies**

6         20.     On information and belief, the PTO Class's work schedules were set through at

7   least two different software applications - either Click2Staff or Vermint Systems.  These

8   schedules were generally set a month in advance.  They are referred to by BofA as the "Daily

9   Schedule" or "Weekly Schedule."

10        21.     BofA's Click2Staff and Vermint Systems applications interact with other BofA's

11   software applications concerning employee pay.

12        22.     BofA's stated policy is to provide employees "paid time off from work to help

13   balance work and personal life."  (Ex 1, BANA0000149).  As noted above, it also provides paid

14   time off for holidays, occasional illness days, bereavement, jury duty, military reserve annual

15   training, parental leave, and military leave.  Nowhere does BofA state that it only provides

16   "partial" paid time off.

17        23.     As noted above, according to BofA's 2010 handbook,[1] certain part-time associates

18   are eligible for paid time off.  (Ex 1, BANA000138).  Part-time associates are defined as "[a]n

19   associate whose regularly scheduled hours, on a normal ongoing basis, are 20 or more per week,

20   but less than 37.5 per week (entered as weekly scheduled hours in the payroll system)."

21        24.     The term "payroll system" is not defined in BofA's policies.  However, "Payroll"

22   is typically defined as "A list of employees receiving wages or salaries, with the amounts due to

23   each.  <u>American Heritage Dictionary, Fourth Edition</u>.  "System" is typically defined as "a group

24   of interacting, interrelated, or interdependent elements forming a complex whole," or "a

25   functionally related group of elements, especially . . . a network of related computer software,

26

---

27   [1] Plaintiff's references to BofA's uniform policies are necessarily limited to those policies in her possession.  She
notes that BofA's pre-2010 policies are similar to those set forth above.  To date, BofA has objected to the

28   production of document requests seeking all relevant policies.  Plaintiff reserves the right to identify and rely
upon other PTO policies as evidence in her case.

14357879.1

hardware, and data transmission devices." *Id.* Plaintiff's and the PTO Class's regularly scheduled, weekly scheduled, daily scheduled and actual hours (including hours worked and PTO hours used) are included in the Bank's payroll system.

25. BofA's uniform PTO policies sometimes make reference to a "payroll system," and sometimes do not. The PTO policies make no reference to an employee's "hours-based classification." They do, however, make reference to "daily schedules," "weekly schedules," or "average projected hours," all of which concern the Click2Staff and Vermint Systems referenced above. For example:

26. According to BofA's 2010 Employee Handbook, vacation accrual is based upon "your weekly projected average hours, shown as weekly scheduled hours on the payroll system." (Ex. 1, BANA0000149). Moreover, BANA's Vacation Accrual Plan states, with respect to vacation, "vacation accruals are based on a combination of job band, length of service, *scheduled hours*, flexible work arrangements, and assignment status. *If there is a change to an associate's data, their accruals automatically re-calculate to determine if an adjustment is needed.* Updates are typically reflected in the system by the next pay period end date after the change goes into effect." (Ex. 2, BANA000599).

27. Despite these policies, BofA did not pay the PTO Class their vacation based on their scheduled hours or weekly scheduled hours. BofA also did not adjust vacation accruals based on an employee's actual scheduled hours when his or her scheduled hours changed. Instead, and contrary to its policies, BofA paid the PTO Class based on a lower number that advantaged BofA: The employee's suppressed and inaccurate "hours based classification."

28. The 2010 Handbook also states that "the amount you are paid for holiday time off is based on your daily scheduled hours as shown on the payroll system. If you do not have daily scheduled hours on the day of the holiday, you will receive floating holiday time equal to 1/5 of your weekly scheduled hours." (Ex. 1, BANA0000151).

29. Despite this policy, BofA did not pay the PTO Class their holiday time off based on their daily scheduled hours or weekly scheduled hours as shown in the payroll system. BofA

1    instead paid the PTO Class based on a lower number that advantaged BofA: The employee's

2    suppressed and inaccurate "hours based classification."

3         30.    The 2010 Employee handbook also states that BofA will provides ten paid

4    "occasional illness ("OI") days" to employees per year. "The 10 days are pro-rated based on

5    *regularly scheduled* hours. . . . If your scheduled hours change, your occasional illness days will

6    accrue based on your *most recent regularly scheduled* hours in the payroll system." (Ex 1,

7    BANA000151) BofA's Accrual Plan with respect to OI pay states that "occasional illness

8    accruals are based on a combination of job band, length of service, *scheduled hours*, flexible

9    work arrangement, and assignment status." (Ex. 3, BANA0000597). As with vacation pay, "if

10   there is a change to an associate's data, their accruals automatically recalculate to determine if an

11   adjustment is needed."

12        31.    Despite these policies, BofA did not pay the PTO Class their OI days based on

13   their regularly scheduled hours or most recent regularly scheduled hours. BofA also did not

14   adjust OI day accruals based on an employee's actual scheduled hours when his or her scheduled

15   hours changed. Instead, and contrary to its policies, BofA paid the PTO Class OI days based on a

16   lower number that advantaged BofA: The employee's suppressed and inaccurate "hours based

17   classification."

18        32.    The 2010 Handbook also provides paid time off for bereavement, jury duty,

19   military reserve training, military leave, and parental leave. This paid time off is based on an

20   employee's "weekly projected average hours." (Ex. 4, BANA0000152-53,156,164.)

21        33.    Despite this policy, BofA did not pay the PTO Class this other paid time off based

22   on their actual weekly projected average hours. BofA instead paid the PTO Class this other paid

23   time off based on a lower hours number that advantaged BofA: The employee's suppressed and

24   inaccurate "hours based classification."

25        34.    PTO is treated and recorded as "scheduled" hours in the Click2Staff and Vermint

26   Systems applications. PTO also must be recorded in BANA's time keeping system. BANA

27   policies state, "[i]n addition to your work time, you will record all non-work time in the

28   timekeeping tool. Examples of non-work time are vacation and occasional illness." (Ex 4,

1   BANA0000519).  PTO is accrued on an hourly basis so long as an employee is working or taking

2   PTO.  (Ex. 1, BANA000149, 151)("vacation [and occasional illness] is accrued in hours on a pay-

3   period-by-pay-period basis, as long as you worked or received paid time off during the pay

4   period.")

5        35.    BofA's floating holiday and occasional illness policies specifically provides that

6   "you may not carry over any unused floating holidays [or occasional illness days] into the next

7   year, unless otherwise required by law."  Moreover, "upon termination from employment . . .  you

8   will not receive pay for any accrued but unused occasional illness days, unless otherwise required

9   by law."  (Ex 1, BANA0000152).  BofA's uniform practice in California is to not carry-over or

10  payout *any* unused OI days.

11       36.    PTO – including occasional illness days and vacation - is subject to manager

12  discretion and change.  For example, the vacation policy states: "You should schedule vacation

13  time in advance and must obtain manager approval based on business needs and practices . . .

14  Management has the right to reschedule vacations or other time off for staffing and business

15  reasons . . . .  Once vacation days are selected and approved by management, you are responsible

16  for taking the vacation at the scheduled time, unless management approves changes to the

17  schedule in advance."  (Ex. 1, BANA0000150).

18       37.    As with vacation days, employees "should work with [their] manager to schedule

19  floating holidays based on business needs and practices within a business unit." (Ex 1,

20  BANA0000151).  The same goes for OI days.  (Ex 1, BANA0000152).  Moreover, OI days are

21  not just for sickness.  OI hours are described as "Sick or Personal" hours in BANA's Accrual

22  Plan, and the 2010 handbook specifically provides that an employee "may use up to two of the 10

23  occasional illness days for personal reasons with your manager's approval."  (Ex 1,

24  BANA0000151, Ex 3, BANA0000597).

25       38.    Occasional illness days that were not used were lost each year, even though two of

26  those days per year could be used for undefined personal reasons, subject only to manager

27  approval – just like vacation.  BofA's occasional illness policy was actually an illegal use or lose

28  it vacation policy.

14357879.1

GARIBALDI FOURTH AMENDED CLASS ACTION COMPLAINT AGAINST BOFA

**II.  Travel Time, Meal Breaks, Overtime, and Transportation Costs**

39.  During the latter part of her employment with BofA, Plaintiff worked at both the Belmont and Foster City retail bank locations.  Generally, she would work in the morning at Belmont and in the afternoon at Foster City on one day a week. Other part-time non-exempt employees also worked at more than one branch on the same day.

40.  Plaintiff was required to "clock-out" of the Belmont location when she stopped working at Belmont, and then "clock back in" to the Foster City location when she started working at Foster City.

41.  BofA knew or should have known that Plaintiff was working at both locations and that she had to travel by car between locations.  It knew or should have known that other non-exempt employees were working at more than one location in a day and traveling between locations.

42.  On occasion, Plaintiff was unable to take a 30 minute uninterrupted a meal break as a result of her travel between locations and her scheduled hours at each location.

43.  Plaintiff was not reimbursed for the travel costs she incurred in traveling from Belmont to Foster City during the middle of the work day.  She was not paid for the time she spent traveling from Belmont to Foster City.

44.  BofA has a uniform policy of not paying travel costs between branches to non-exempt employees who work at more than one branch in a day.  On information and belief, BofA has a uniform policy of not paying for the time spent traveling between branches to non-exempt employees who work at more than one branch in a day.  Often times, this off-the-clock work results in an employee (including Plaintiff) working more than 8 hours in a day, thus entitling the employee to overtime pay under California law.  Often times, this off-the-clock work results in non-exempt employees being unable to take an uninterrupted 30 minute meal break.

**III.  The Recognition Points Program**

45.  Also during Plaintiff's employment, BofA paid Plaintiff part of her wages and compensation in the form of "recognition points."  These points were paid for excellent

14357879.1

- 9 -

GARIBALDI FOURTH AMENDED CLASS ACTION COMPLAINT AGAINST BOFA

1  performance or for completion of pre-defined tasks (such as winning a sales contest).  On

2  information and belief, the purpose of such points was to drive behavior, unify teams and the

3  BofA culture, improve employee engagement and retention, and significantly impact BofA's

4  bottom line.   BofA's points program applied to California BofA employees in specific "bands"

5  of employment.

6       46.    Plaintiff earned a substantial amount of recognition points during the course of her

7  employment.

8       47.    The recognition points were accrued over time and assigned a cash value by BofA.

9       48.    BofA claims that, in reporting recognition points, it "grosses up" the value of the

10  recognition points for the stated reason of paying the tax obligation associated with the payment

11  of these points.

12      49.    Plaintiff, and other California-based employees, could "redeem" their points

13  through an on-line store.  The points could only be used to purchase merchandise or gift cards on

14  the on-line store.  Depending on how much merchandise the California-based employees

15  purchase in the on-line store, BofA receives a rebate from the third party vendor managing the

16  store.

17      50.    Upon her separation from BofA on February 20, 2013, BofA did not pay Plaintiff

18  the cash value, or the grossed up cash value, of her points.  BofA did not pay other former

19  employees the cash value, or the grossed up cash value, of their accrued points upon separation.

20      51.    Also upon her separation from BofA's employ, BofA shut-off Plaintiff's access to

21  the on-line store.  BofA restored this access, only upon Plaintiff's request, on March 20, 2013.  It

22  informed her that her points would "expire" on that same day.  Plaintiff attempted to use her

23  recognition on that day in the on-line store, but did not (and could not) use all her recognition

24  points.

25      52.    On information and belief, BofA has a practice of removing former employees'

26  access to its on-line store.  On information and belief, BofA has a policy and practice of causing a

27  forfeiture of employee recognition points if those points are not used by a date certain.

28                          **JURISDICTION AND VENUE**

14357879.1                          - 10 -

53.     Defendant BofA removed this Action to this Court pursuant to the Class Action Fairness Act.  At the present time, Plaintiff does not contest this Court's jurisdiction.

54.     Venue is proper in the Northern District of California because that is where Plaintiff worked for BofA and that is where Plaintiff resides.  BofA also does business in the Northern District of California.

## CLASS ALLEGATIONS

55.     Plaintiff brings this action on behalf of the following classes and subclasses (collectively "Classes").

a.      **The PTO Class.**  All current and former part-time, non-exempt BofA employees employed in California whose average hours worked or scheduled (including paid time off) exceed(ed) their hours-based classification within the applicable Class Period.

(i)     **The PTO Subclass.**  All former non-exempt, part-time, BofA employees employed in California whose average hours worked or scheduled (including paid time off) exceeded their hours-based classification within the applicable Class Period.

b.      **The Occasional Illness "OI" Class.**  All current and former BofA employees employed in California who accrued more occasional illness/personal hours than they took off in any given year.

(i)     **The OI Subclass.**  All former BofA employees employed in California who accrued more occasional illness/personal hours than they took off in any given year, and who separated from BofA's employ within the applicable Class Period.

c.      **The Travel Class.**  All current and former non-exempt, part-time, BofA employees employed at retail banking centers in California who worked at more than one location in a day within the applicable Class Period.

(i)     **The Travel Subclass.**  All former non-exempt, part-time, BofA employees employed at retail banking centers in California who worked at more than one location in a day within the applicable Class Period.

d.      **The Points Class.**  All former, California-based, BofA employees who were not paid the cash value (including the grossed up cash value) of their accrued recognition

1    points upon separation from BofA's employ within the applicable Class Period, whose access to

2    the on-line store was removed, and/or whose accrued points otherwise "expired" within the

3    applicable Class Period.

4        56.      For purposes of this Fourth Amended Complaint, Class Period means from (a)

5    four years prior to the earliest-filed class action complaint which would operate to toll Plaintiff's

6    and the Classes claims to (b) the present. Plaintiff reserves the right refine the definition of the

7    proposed Classes (including the applicable time frame) based on further investigation and

8    discovery.

9        57.      Plaintiff's claims should be resolved on a class-wide basis, and there is a well-

10    defined community of interest with respect to the litigation.

11        58.      The Classes are sufficiently numerous and joinder of all putative class members is

12    impracticable. While the exact number of Class members is currently unknown to Plaintiff,

13    Plaintiff contends – based on information and belief – that there are thousands of Class Members.

14        59.      The Classes are ascertainable.

15          a.      With respect to the PTO Class, it is possible, through discovery, to

16    identify: (1) the hours-based classification of each putative class member; and (2) the average

17    actual hours worked or scheduled of each class member.

18          b.      With respect to the OI Class, it is possible, through discovery, to identify:

19    (1) the number of OI hours accrued by each putative class member in any given year and (2) the

20    number of OI hours used by each putative class member in any given year.

21          c.      With respect to the Travel Class, it is possible, through discovery, to

22    identify all non-exempt employees who worked at more than one location in a day.

23          d.      With respect to the Points Class, it is possible, through discovery, to

24    identify all former BofA employees who were not paid the cash-value of their accrued

25    recognition points upon separation from BofA's employ, whose access to the on-line store was

26    removed, and/or whose accrued points otherwise "expired."

27        60.      Plaintiff's claims are typical of the claims of the classes she seeks to represent. All

28    class members sustained damage in the form of improperly paid (or unpaid) wages, unpaid

14357879.1

1   holiday pay, unpaid floating holiday pay, unpaid occasional illness days, unpaid vacation, unpaid

2   overtime and/or straight time pay, and unreimbursed expenses.

3        61.    Plaintiff will fairly and adequately represent and protect the interests of the class.

4   Plaintiff is a former part-time non-exempt employee.  She does not have interests which are

5   adverse to the interests of absent class members.

6        62.    Class counsel is experienced and qualified and capable.  He has litigated numerous

7   class action cases.

8        63.    There are common questions of law and fact, and these predominate.  These

9   include:

10        a.    Do BofA's policies concerning paid time off require it to award paid time

11   off on the basis of a part-time employee's hours-based classification or on her actual or scheduled

12   average hours?

13        b.    Did or does BofA comply with its paid time off policies with respect to the

14   class members, or does it engage in some other practice?

15        c.    In construing BofA's policies regarding vacation and occasional illness

16   pay, must the court apply principles of equity and fairness in accordance with Labor Code section

17   227.3?

18        d.    If BofA's policies permit it to award vacation on the basis of a part-time

19   employee's hours-based classification, is such a policy legal?

20        e.    Did or does BofA comply with its vacation policies with respect to the

21   class members, or does it engage in some other practice?

22        f.    Is BofA's occasional illness policy, as a legal matter, a vacation policy

23   with respect to the two OI days per year that can be used for undefined personal reasons?

24        h.    If BofA's occasional illness policy is actually a vacation policy, is it an

25   illegal policy?

26        i.    If BofA's occasional illness policy was actually a vacation policy, was

27   there any cap on the number of occasional illness/personal days that a class member could

28   accrue?

14357879.1

- 13 -

k.      Does the time a non-exempt employee spends traveling between locations on a single day constitute work time?

l.      If time spent traveling between locations on a single day constitutes work time, was BofA aware (or should it have been aware) of this work time?

m.      Does BofA have a policy of not compensating non-exempt employees for time spent traveling between work locations on a single day?

n.      If an employee cannot take an uninterrupted 30 minute meal break due to her travel between locations and her scheduled end and start times at each location, is BofA liable for premium pay for that missed break?

o.      Is the transportation cost of traveling between locations on a single day a reasonable and necessary expense that BofA is required to reimburse under Labor Code section 2802?

p.      Must BofA pay former employees the cash value of accrued recognition points upon separation from BofA's employ?

q.      Must BofA pay former employees the "grossed up" cash value of accrued recognition points upon separation from BofA's employ?

r.      Does BofA's recognition points program violate Labor Code section 212 because recognition points are the equivalent of "scrips, coupons, or other thing redeemable . . . in merchandise?"

s.      Does BofA's recognition points program violate Labor Code section 450 because the program, in effect, compels or coerces employees "to patronize his or her employer, or any other person, in the purchase of a thing of value?"

64.      A class action is the superior way of resolving the class members' claims.  Class treatment will permit a large number of similarly situated persons to prosecute their claims in a single forum and without unnecessary duplication, and without fear of retaliation.  The damage incurred by each class member is relatively small, and the burdens of litigation would make it difficult or impossible for individual members to redress the wrong done to them.  The cost to the

14357879.1

- 14 -

court system of individualized litigation would be substantial.  Individualized litigation would also present the potential for inconsistent or contradictory judgments.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**BREACH OF CONTRACT/PAID TIME OFF**

**(On Behalf of Plaintiff and the PTO Class)**

65.     Plaintiff incorporates paragraphs 1 through 64 of this Complaint as if fully set forth here.

66.      As a term of Plaintiff's and Class 1's employment, BofA agreed to provide Plaintiff and the PTO Class paid time off based on the average number of hours scheduled or worked (including paid time off) per week.  BofA also agreed to update Plaintiff and the PTO Class's hours-based classification when their average hours worked or scheduled increased.  This agreement was evidenced in BofA's uniform policies, as discussed above.  This paid time off constituted a part of Plaintiff and the PTO Class's wages.

67.      BofA breached the parties' agreement by providing Plaintiff and the PTO Class paid time off based on their hours-based classification and not on the average number of hours worked or scheduled per week.  BofA breached the parties' agreement by not updating Plaintiff and the PTO Class's hours-based classification when their average hours worked or scheduled increased.

68.      In construing BofA's vacation and occasional illness policies, a court must apply principles of equity and fairness.

69.      Plaintiff and the PTO Class suffered harm as a result of BofA's breach.  They were provided less paid time off than they were contractually entitled to.  They were not provided paid floating holidays.

**SECOND CAUSE OF ACTION**

**(FAILURE TO PAY ACCRUED WAGES UPON TERMINATION**

**(On Behalf of Plaintiff, All Subclasses, and the Points Class)**

70.     Plaintiff incorporates paragraphs 1 through 69 of this Complaint as if fully set forth here.

71.     Under California law, an employer must pay an employee all accrued wages upon her termination. *See* Labor Code section 201.   Vacation pay – which in BofA's case includes at least two days of accrued occasional illness pay each year - cannot be forfeited.  Other earned wages (as evidenced by the non-payment of travel time and missed meal breaks) cannot be forfeited.  Vacation policies must be interpreted applying principles of equity and fairness.  Labor Code section 227.3.

72.     BofA did not pay Plaintiff and the Subclasses all their accrued wages upon termination.  Under BofA's uniform policies, Plaintiff and the PTO Subclass accrued vacation pay and at least two days of occasional illness pay based on their actual hours scheduled or worked.  BofA, however, did not pay them the amount they had accrued.  Rather, BofA paid them vacation and OI pay based on their erroneous hours-based classification.  This resulted in the illegal forfeiture of the underpaid vacation pay and at least two days of occasional illness pay upon termination.

73.     In addition, BofA did not provide Plaintiff and the OI Subclass with occasional illness pay in accordance with their uniform policies.  At least two days of occasional illness pay per year constituted accrued vacation.  BofA did not pay Plaintiff and the OI Subclass these two days of accrued occasional illness pay upon their termination.  Instead, occasional illness pay was illegally forfeited if not used in the year in which it was earned.

74.     In addition, BofA did not pay Plaintiff and the Travel Subclass all the unpaid straight time, overtime, and meals breaks arising from their travel upon termination.

75.     In addition, BofA did not pay Plaintiff and the Points Class the cash value of their accrued recognition points upon termination.  These accrued recognition points constituted wages.  This resulted in the illegal forfeiture of wages upon termination.  Moreover, BofA removed Plaintiff's and Points Class's access to the on-line store, and permitted the expiration of earned recognition points, interfering with their right to "redeem" recognition points post-termination.  This resulted in an illegal forfeiture of accrued recognition points.

76.     In addition, BofA's practice is to have recognition points "expire" if not used by a date certain, thus resulting in an illegal forfeiture of accrued recognition points.

77.     Plaintiff, the Subclasses, and the Points Class were harmed as a result of BofA's actions. They did not receive all the accrued pay to which they were entitled upon their termination, and which could not be forfeited. They did not receive their unpaid straight time and overtime. They did not receive the cash value of their accrued recognition points upon termination. They lost access to the on-line store. Accrued recognition points expired upon a date certain, and thus lost all value.

### THIRD CAUSE OF ACTION

### (FAILURE TO PAY OVERTIME AND/OR STRAIGHT-TIME PAY)

#### (On Behalf of Plaintiff and Travel Class)

78.     Plaintiff incorporates paragraphs 1 through 77 of this Complaint as if fully set forth here.

79.     BofA was obligated to pay Plaintiff and the Travel Class their agreed-upon wage for all hours worked.

80.     In addition, under California law, an employer must pay an employee overtime based upon their agreed-upon wage for time worked in excess of 8 hours in a day. *See* California Labor Code sections 510, 1194 and Industrial Wage Order 8(3)A.

81.     BofA knew or should have known that Plaintiff's and the Travel Class's time spent traveling between retail locations on the same day constituted compensable time worked.

82.     BofA failed to pay Plaintiff and the Travel Class their agreed-upon wage and/or overtime for time spent by Plaintiff and the Travel Class traveling between retail bank locations on the same day.

83.     Plaintiff and the Travel Class were harmed as a result. They did not receive all the wages to which they were entitled.

### FOURTH CAUSE OF ACTION

### (MISSED MEAL BREAKS)

#### (On Behalf of Plaintiff and the Travel Class)

GARIBALDI FOURTH AMENDED CLASS ACTION COMPLAINT AGAINST BOFA

84.     Plaintiff incorporates paragraphs 1 through 83 of this Complaint as if fully set forth here.

85.     Plaintiff and the Travel Class were entitled to a 30 minute uninterrupted meal break each day they worked five hours or more for BofA.

86.     On numerous occasions, Plaintiff and the Travel Class did not receive this uninterrupted meal break because of their work schedule and the fact that they had to travel between locations during what would otherwise be their meal break.

87.     BofA knew or should have known that Plaintiff's and the Travel Class's time spent traveling between retail locations on the same day constituted compensable time worked and resulted, on numerous occasions, in a missed meal break.

88.     BofA's failure to provide an uninterrupted meal break results in premium pay.

89.     Plaintiff and the Travel Class were harmed as a result BofA's actions.  They did not receive all the wages (in this case, premium pay) to which they were entitled.

## FIFTH CAUSE OF ACTION

### (REIMBURSEMENT OF TRAVEL EXPENSES)

#### (On Behalf of Plaintiff and the Travel Class)

90.     Plaintiff incorporates paragraphs 1 through 89 of this Complaint as if fully set forth here.

91.     California law requires an employer to reimburse employees for their reasonable and necessary business expenses.  *See* Labor Code section 2802.

92.     Plaintiff and the Travel Class incurred reasonable and necessary business expenses in the form of transportation costs in traveling between retail banking locations on the same day. They were traveling between the branches to perform work for their employer.  Without traveling between these branches, they could not perform the work.

93.     BofA knew or should have known that Plaintiff and the Travel Class were incurring transportation costs.

94.     BofA did not reimburse Plaintiff and the Travel Class for the reasonable and necessary transportation costs incurred in traveling between branches on the same day.

95.     Plaintiff and the Travel Class were harmed as a result.  They did not receive reimbursement for the transportation costs to which they were owed.

## SIXTH CAUSE OF ACTION

### (WAITING TIME PENALTIES)

#### (On Behalf of Plaintiff, the Subclasses, and the Points Class)

96.     Plaintiff incorporates paragraphs 1 through 94 of this Complaint as if fully set forth here.

97.     Under California law, an employer must pay an employee all wages due upon termination or resignation.  The willful failure to do so can result in waiting time penalties equal to 30 days of an employee's wage.  *See* Labor Code section 203.

98.     BofA did not pay Plaintiff, the Subclasses, and the Points Class all wages due and owing upon their separation from BofA's employ.  BofA did not pay straight-time and/or overtime wages due as a result of the Travel Subclass's travel time.  BofA did not pay the accrued vacation and occasional illness pay due to the PTO and OI Subclasses.  BofA did not pay the cash value of Plaintiff's and the Points Class's accrued recognition points upon termination.

99.     This conduct by BofA was willful.  It knew or should have known of the travel time and missed meal breaks being incurred by Plaintiff and the Travel Subclass.  It knew or should have known that it was systematically under-calculating the value of Plaintiff and the PTO Class's vacation pay.  It knew or should have known that its use it or lose it occasional illness policies was illegal.  It knew of should have known that recognition points constituted wages that could not be forfeited and had to be paid.

100.    As a result, BofA is liable to Plaintiff, the Subclasses, and the Points Class for waiting time penalties.

## SEVENTH CAUSE OF ACTION

### (FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS)

#### (On Behalf of Plaintiff, the PTO Class, the Floating Holiday Class, the OI Class, and the Travel Class)

GARIBALDI FOURTH AMENDED CLASS ACTION COMPLAINT AGAINST BOFA

101.     Plaintiff incorporates paragraphs 1 through 100 of this Complaint as if fully set forth here.

102.     Under California law, an employer must provide employees with an accurate wage statement.  Among other things, the wage statement must include the gross wages earned, the total hours worked, and the wage rate worked for each hour.  An employee suffers injury when this law is violated if the employee cannot (among other things) easily determine from the wage statement the gross or net wages paid or earned or the hours worked.  The penalties for violating this law are set by statute.

103.     BofA knowingly failed to provide Plaintiff and the above classes with accurate wage statements.  As stated above, BofA did not accurately state the paid time off (such as vacation and occasional illness pay) or hourly wages which should have been paid each pay period.  BofA also did not accurately state the hours worked or the proper rate of pay.

104.     Plaintiff and the Classes suffered injury as a result of BofA's conduct.  They were not able, from a review of the wage statement, to determine the gross and net wages earned or paid, as well as hours worked.

## EIGHTH CAUSE OF ACTION

### (On Behalf of Plaintiff and the Points Class)

### (ILLEGAL FORM OF PAYMENT AND UNLAWFUL COERCION)

105.     Plaintiff incorporates paragraphs 1 through 91 of this Complaint as if fully set forth here.

106.     It is illegal for an employer to pay an employee in "scrip, coupon, cards, or other things redeemable, in merchandise . . . or redeemable otherwise than in money." *See* Labor Code section 212(a)(2).  BofA paid the Points Class in recognition points.  By virtue of its on-line store, these points were redeemable in merchandise.  This was an illegal form of payment.

107.     It is illegal for an employer to compel or coerce any employee to patronize his or her employer or a third party in the purchase of a thing of value.  *See* Labor Code 450.  BofA, by requiring that employees redeem their accrued recognition points in an on-line store (whether its own or a third party's), violated Labor Code section 450.

108.    BofA's withheld wages and violated the California Labor Code by not paying to Plaintiff and the Points Class the cash value of accrued recognition points upon termination.  As a result, Plaintiff and the Points Class are entitled to penalties.

### NINTH CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICES

### (On Behalf of Plaintiff and All Classes)

109.    Plaintiff incorporates paragraphs 1 through 108 of this Complaint as if fully set forth here.

110.    California law prohibits any unlawful, unfair, or fraudulent business practice. *See* California Business and Professions Code section 17200.

111.    Through its actions (as described above), BofA has violated a variety of California wage and hour laws.  Plaintiff and the Classes have been harmed by BofA's conduct.  Among other things, they have not been paid wages, overtime, vacation pay, business expenses, or the cash-value of accrued recognition points.  They are entitled to restitution.

### TENTH CAUSE OF ACTION

### PRIVATE ATTORNEYS GENERAL ACT

### (On Behalf of Plaintiff and Other Current and Former Employees)

112.    Plaintiff incorporates paragraphs 1 through 111 of this Complaint as if fully set forth here.

113.    Plaintiff is an aggrieved employee under Labor Code section 2699.

114.    On April 12, 2013, Plaintiff sent notice by certified mail of her Labor Code Claims to Defendant and the California Labor and Workforce Development Agency ("LWDA").  In that letter, and among other things, she stated that she sought to represent herself and other current and former employees with respect to Bank of America's violations of the California Labor Code.  She also attached a copy of her initial Complaint to her letter.

115.    On May 16, 2013, the LWDA responded that it did not intend to investigate Plaintiff's allegations.

14357879.1

116.   Plaintiff has since updated her PAGA notice to include claims she alleged in subsequent complaints.

117.   Plaintiff has satisfied the requirements of Labor Code section 2699.3

118.   On behalf of herself, other current and former employees, and the State of California, Plaintiff seeks appropriate civil penalties for BofA's systemic violations of the California Labor Code, including sections 201, 202, 203, 203.1, 206, 208, 212, 223, 226, 227.3, 450, 510, 1194, 1198, and 2802.

## DEMAND FOR A JURY TRIAL

1119.   Plaintiff hereby demands a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, the Classes, other former and current employees, and the State of California, prays for judgment against BofA as follows:

1.   An Order that this action may proceed and be maintained on a class-wide basis;

2.   Appropriate injunctive relief;

3.   Attorneys fees and costs;

4.   Restitution, according to proof;

5.   Damages, according to proof;

6.   Civil penalties, according to proof;

7.   Back wages, according to proof;

8.   Interest;

9.   All other relief the Court deems equitable and proper.

DATED: February 13, 2014

BAKER LAW PRACTICE

/s/

Chris Baker

14357879.1

- 22 -

Exhibit
1

# Bank of America
# Associate Handbook
# 2010



Bank of America

CONFIDENTIAL

BANA-0000001

## Section I – Eligibility and contributions

### Eligible associates

You are eligible for certain benefits depending on your work status. See below for definitions. For convenience, the terms defined below (**full-time, part-time, part-time working less than 20 hours** and **temporary**) will be used throughout this summary to indicate associate benefits eligibility.

- **Full-time:** An associate whose regularly scheduled hours, on a normal ongoing basis, are 37.5 or more per week (entered as weekly scheduled hours in the payroll system). Generally, full-time associates are scheduled to work 40 hours per week.
- **Part-time:** An associate whose regularly scheduled hours, on a normal ongoing basis, are 20 or more per week but less than 37.5 per week (entered as weekly scheduled hours in the payroll system). Part-time associates whose regularly scheduled hours are 20 or more per week are generally eligible for the health and insurance benefits described in this chapter.
- **Part-time working less than 20 hours:** An associate whose regularly scheduled hours, on a normal ongoing basis, are less than 20 per week (entered as weekly scheduled hours in the payroll system). Part-time associates whose regularly scheduled hours are less than 20 are generally not eligible for the health and insurance benefits described in this chapter.
- **Temporary:** A temporary associate who works at Bank of America on an hourly basis. Temporary associates are generally not eligible for the health and insurance benefits described in this chapter.

If you are unsure which category applies to you, contact the Personnel Center at **1.800.556.6044** (TTY **1.888.343.0860**).

In general, to be eligible to participate in a life management program, you must be a U.S.-based full-time or part-time associate. Part-time working less than 20 hours associates are eligible for some life management programs.

Temporary associates are not eligible for the life management programs described in this chapter. Associates on international assignment should refer to International Assignee Services (IAS) for specific information regarding eligibility for life management programs. International assignees are not eligible for the following programs discussed in this chapter: Child Care Plus, Dependent Care Flexible Spending Account, Commuter Benefit Program, or loaned hours. Additionally, associates in Puerto Rico are not eligible to participate in the life management programs with pre-tax contributions, including Dependent Care Flexible Spending Account, Commuter Benefit Program and Purchased Time Off.

These programs are generally available immediately after employment begins, but some programs have specific eligibility requirements and may require you to complete an application and enrollment process.

Additional eligibility requirements are specified in the eligibility sections for each individual program.

CONFIDENTIAL                                                                 BANA-0000138

## Section IX - Time Away

### Vacation

**Introduction**

Bank of America provides paid time off from work to help balance work and personal life.

**Eligibility**

With the exception of associates in bands 0 – 3, commissioned associates, or associates scheduled to work less than 20 hours per week, any full- or part-time United States associate is eligible to earn (accrue) paid vacation upon hire or rehire. The amount of vacation for which you are eligible is based on your job band and years of continuous service. Note that you will experience a break in service if your employment with Bank of America ends for 180 calendar days or more.

An associate on international assignment should refer to International Assignee Services (IAS) for specific information regarding time off from work provisions while on assignment.

**Annual vacation eligibility (allotment)**

| Job band | Years of continuous service | Weeks of vacation per year |
|---|---|---|
| Bands 4 – 5 | 0-24 years | 4 weeks |
| | 25 or more years | 5 weeks |
| Bands 6 – 7 | 0-14 years | 3 weeks |
| | 15-24 years | 4 weeks |
| | 25 or more years | 5 weeks |
| Bands 8 – 9 | 0-4 years | 2 weeks |
| | 5-14 years | 3 weeks |
| | 15-24 years | 4 weeks |
| | 25 or more years | 5 weeks |

**Accrual methodology**

Vacation is accrued in hours on a pay-period-by-pay-period basis, as long as you worked or received paid time off during the pay period.

The amount of vacation accrued per pay period is based on your weekly projected average hours, shown as weekly scheduled hours on the payroll system.

Vacation accrual is pro-rated based on the employment start date for any newly hired associate. The maximum amount of unused vacation you can accrue on an annual basis is capped at your annual vacation allotment. If you reach the maximum amount of accrued but unused vacation, you will not be eligible to accrue additional vacation until some vacation is used and the accrued and unused vacation balance becomes less than the maximum annual accrual amount.

**Carry over**

You may not carry over any unused vacation into the next calendar year, unless otherwise required by law or with management approval under the following circumstances:

- You are medically disabled and unable to take vacation
- Management determines that business needs do not allow you to take all accrued vacation during the same calendar year

For the states that require vacation carry over for accrued but unused vacation, the carry over occurs automatically in the payroll system after the end of the year. For the vacation carry over circumstances described above, accrued but unused vacation must be adjusted in the payroll system manually by your manager after the end of the year.

The company may also decide, at its discretion, to pay you for any unused, accrued vacation days at year-end instead of carrying the vacation time over to the next year.

**Promotion and job classification changes**

Your vacation allotment is proportionally adjusted to account for any change in employment status. The following guidelines generally apply:

- If you are promoted to a band that is eligible for more vacation during the year, you will begin to accrue vacation hours based on the new allotment beginning in the pay period following the date of the promotion. If you are moved through job reclassification to a band that is eligible for less vacation allotment than your prior position, your vacation eligibility will not be reduced.
- If you reach a vacation accrual milestone (the length of service anniversary that provides an additional week of vacation per year), the new vacation accrual amount will start at the beginning of the year in which the milestone occurs.
- If your scheduled hours change, vacation accrual going forward will be based on your scheduled hours beginning the pay period following the date of the schedule change.
- If you voluntarily accept a position with less vacation allotment or experience a job change due to demotion or performance issues, you will remain at the higher vacation accrual for the calendar year in which the job change occurred. Vacation accrual in subsequent years will be adjusted to reflect your new status.
- If you leave the company and are rehired, vacation accrual will be based on the position for which you are rehired.
- If you move to a position not eligible for vacation accrual, you will stop accruing vacation hours beginning the pay period following the date of the position.

CONFIDENTIAL                                                          BANA-0000149

**Bank of America Associate Handbook 2010**                    **Life Management Programs**

**Scheduling and tracking vacation**

You should schedule vacation time in advance and must obtain manager approval based on business needs and practices within the business unit. Management has the right to reschedule vacations or other time off for staffing and business reasons and, if necessary, to designate periods during which you may not take vacation or other time off, such as peak business periods. Management has the right to require you to use part or all of your accrued vacation.

Management may require that vacation be taken in full-week increments. This includes the combination of vacation time and a holiday to make up a full work week. Management has the discretion to allow vacation to be taken in less than full-week increments. Once vacation days are selected and approved by management, you are responsible for taking the vacation at the scheduled time, unless management approves changes to the schedule in advance.

All associates who are non-exempt (overtime-eligible) under the federal Fair Labor Standards Act and relevant state laws are required to track all vacation that is used in the timekeeping system. Associates who are exempt (non-overtime eligible) under the federal Fair Labor Standards Act and relevant state laws should track vacation usage per the practices within their business unit.

**Termination of employment**

Upon termination of employment, including retirement, you will receive payment at the final rate of pay for any accrued but unused vacation days.

If you use more vacation hours than you earned, the overpayment will be treated as a pay advance and will be reconciled with your future earnings, final pay or otherwise recovered from you, to the extent permitted by law.

## Purchased time off

### Introduction

Bank of America provides an opportunity to purchase time off from work beyond your annual vacation allotment.

### Eligibility

With the exception of associates in bands 0–3, commissioned associates, associates scheduled to work less than 20 hours per week and associates working in Puerto Rico, any full- or part-time United States associate is eligible to purchase time off. An associate on international assignment should refer to International Assignee Services (IAS) for specific information regarding time off from work provisions while on assignment.

You may purchase a minimum of four hours and a maximum of your weekly projected average hours, up to 40, shown as weekly scheduled hours on the payroll system. Purchased time off must be in whole hours. If you are scheduled to work fractional hours, the maximum purchased time off will be rounded down to the whole hour.

**Electing purchased time off**

You must obtain manager's approval before electing to purchase time off. Failure to obtain manager's approval may result in purchased time off being denied or the election being cancelled.

You may only elect to purchase time off during Annual Enrollment, and that election will apply to the following calendar year. The election you make during Annual Enrollment is binding for the entire calendar year for which you purchase the time off and cannot be changed during that calendar year for any reason.

You must be actively at work (not on a leave of absence) on Jan. 1 in order to use purchased time off elected during Annual Enrollment. If you are not actively at work on Jan. 1, the purchased time off elected during Annual Enrollment will not be available for use and you will not incur deductions for this time.

You will pay for purchased time off each pay period in the calendar year on a pro-rata basis via pre-tax payroll deduction. The cost of purchased time off is based on the cost elected during Annual Enrollment, and remains the same throughout the calendar year regardless of increases or decreases in your rate of pay. Payroll deductions for purchased time off may not be discontinued during the calendar year for which the Annual Enrollment election applies.

**Scheduling and tracking purchased time off**

You can only use purchased time off after your accrued vacation time has been exhausted. Purchased time off is scheduled after all associates in the business unit have had an opportunity to schedule their first two weeks of regular vacation.

You should obtain manager approval to schedule purchased time off based on business needs and practices within the business unit. Management has the right to reschedule purchased time off for staffing and business reasons and, if necessary, to designate periods during which you may not use purchased time off, such as peak business periods.

Once purchased time off is scheduled and approved by management, you are responsible for taking the purchased time off at the scheduled time, unless management approves changes to the schedule in advance.

You must use all purchased time off during the calendar year for which it is purchased. You will not be reimbursed for any unused purchased time off unless your manager is unable to schedule the time off or you become medically disabled. If either of those situations occurs, you will be reimbursed at the end of the year for the unused purchased time off at your rate of pay in effect when you elected to purchase the time off.

Purchased time off must be taken in a minimum of four hour increments unless the hours remaining are less than four. All purchased time off taken must be in whole hours.

All associates who are non-exempt (overtime-eligible) under the federal Fair Labor Standards Act and relevant state laws are required to track all purchased time off that is used in the timekeeping system. Associates who are exempt (non-overtime eligible) under the federal Fair Labor Standards Act and relevant state laws should track purchased time off usage per the practices within their business unit.

147

**Termination of employment**

Upon termination of employment, including retirement, any unused purchased time off that has been paid for will be reimbursed at your rate of pay in effect when you elected to purchase the time off. Any used purchased time off that has not been paid for will be reconciled from pay or otherwise recovered from you, to the extent permitted by law.

## Holidays

**Introduction**

Bank of America provides 10 days of paid time off from work annually in observance of holidays. Generally, Bank of America observes the Federal Reserve holiday schedule. However, certain business units may observe a different holiday schedule based on business needs, such as the New York Stock Exchange holiday schedule.

**Eligibility**

With the exception of associates scheduled to work less than 20 hours per week, any full- or part-time U.S.-based associate is eligible for paid holidays. An associate on international assignment should refer to International Assignee Services (IAS) for specific information regarding time off from work provisions while on assignment.

An associate on a leave of absence, paid or unpaid, is not eligible for paid holidays or a floating holiday for any holidays that are observed during the associate's leave.

**Holiday pay**

The amount you are paid for holiday time off is based on your daily scheduled hours as shown on the payroll system. If you do not have daily scheduled hours on the day of the holiday, you will receive floating holiday time equal to 1/5 of your weekly scheduled hours.

A floating holiday is a paid day off that is:
- Given to overtime-eligible associates in lieu of holiday pay when working on a corporate holiday
- Given to you when a corporate holiday falls on a day you are not scheduled to work
- Utilized by a line of business to observe a holiday other than a corporate holiday

Holiday hours **are not included** in overtime calculations for the time period in which the holiday falls. Floating holidays are also ineligible for premium pay.

**Carry over**

You may not carry over any unused floating holidays into the next year, unless otherwise required by law.

**Scheduling and tracking floating holidays**

You should work with your manager to schedule floating holidays based on business needs and practices within the business unit. Management has the right to reschedule floating holidays for staffing and business reasons and, if necessary, to designate periods during which you may not take floating holidays, such as peak business periods.

Management has the right to pay out your floating holiday, once it has been granted, rather than permit you to take the time off from work. Once a floating holiday is scheduled and approved by management, you are responsible for taking the floating holiday at the scheduled time, unless management approves changes to the schedule in advance.

All associates who are non-exempt (overtime-eligible) under the federal Fair Labor Standards Act and relevant state laws are required to track all floating holidays that are used in the timekeeping system. Associates who are exempt (non-overtime eligible) under the federal Fair Labor Standards Act and relevant state laws should track floating holiday usage per the practices within their business unit. Any holiday pay you receive for which you are not eligible will be treated as a pay advance and will be reconciled with your future earnings, final pay or otherwise recovered from you, to the extent permitted by law.

**Termination of employment**

Upon termination of employment, including retirement, you will not receive pay for any unused floating holidays, unless otherwise required by law.

## Occasional illness days

**Introduction**

Bank of America provides paid time off from work for your personal illness or for an illness of a spouse/domestic partner, parent, child or child of a domestic partner.

**Eligibility**

With the exception of associates in bands 0–3, commissioned associates or associates scheduled to work less than 20 hours per week, any full- or part-time United States associate is eligible to receive 10 occasional illness days. The 10 days are pro-rated based on regularly scheduled hours. An associate on international assignment should refer to International Assignee Services (IAS) for specific information time off from work provisions while on assignment.

You may use up to two of the 10 occasional illness days for personal reasons with your manager's approval.

**Accrual methodology**

Occasional illness days are accrued in hours on a pay-period-by-pay-period basis, as long as you worked or received paid time off during the pay period.

If your scheduled hours change, your occasional illness days will accrue based on your most recent regularly scheduled hours in the payroll system.

CONFIDENTIAL                                                                 BANA-0000151

Occasional illness days accrual is pro-rated based on the employment start date for any newly hired associate.

**Carry over**

You may not carry over any unused occasional illness days into the next year, unless otherwise required by law.

**Scheduling and tracking occasional illness days**

You should work with your manager to schedule occasional illness days based on business needs and practices within the business unit. Even if you are eligible for occasional illness days or other sickness benefit days, absences may be counted under the business's attendance guidelines.

Absences that are protected under family or medical leave laws or any other laws will not be counted under the business's attendance guidelines.

If you file a claim for Short-term Disability, you must use all available occasional illness days during the seven day waiting period of a Short-term Disability claim.

All associates who are non-exempt (overtime-eligible) under the federal Fair Labor Standards Act and relevant state laws are required to track all occasional illness days that are used in the timekeeping system. Associates who are exempt (non-overtime eligible) under the federal Fair Labor Standards Act and relevant state laws should track occasional illness days usage per the practices within their business unit.

**Termination of employment**

Upon termination of employment, including retirement, you will not receive pay for any accrued but unused occasional illness days, unless otherwise required by law.

If you use more occasional illness days than you earned, the overpayment will be treated as a pay advance and will be reconciled with your future earnings, final pay or otherwise recovered from you, to the extent permitted by law.

**Special provisions for former BankAmerica associates**

Former BankAmerica associates retained sickness benefit days accrued as of Dec. 31, 2000 (March 17, 2002 for Washington Division). After this date, no additional sickness benefit days accrued.

If you use all of the 10 occasional illness days, you may use unused accrued sickness benefit days for your personal illness, in the manner authorized by the company, but not for an illness of a spouse/domestic partner, parent, child or child of a domestic partner.

These accrued sickness benefit days will continue to be reconciled with any available state disability insurance (SDI) or Workers' Compensation benefits.

These accrued sickness benefit days will be used first to fund any Short-term Disability leave. This will not extend the time you receive Short-term Disability benefits. However, if you have any sickness benefit days remaining after the Short-term Disability benefit ceases, you can use those days as long as the medical condition would meet the requirements for receiving Short-term Disability benefits.

For a special group in Arizona, accrued sickness days will be paid out at retirement.

## Bereavement

**Introduction**

Bank of America provides paid time off from work in the event of the death of an immediate family member or a person with whom you have a close relationship, such that the person is considered to be an immediate family member.

**Eligibility**

With the exception of associates scheduled to work less than 20 hours per week, any full- or part-time United States associate may be eligible for time off from work due to bereavement up to five days per event. An associate on international assignment should refer to International Assignee Services (IAS) for specific information regarding time off from work provisions while on assignment.

**Immediate family member**

A member of your immediate family is defined as your:
- Spouse or domestic partner
- Parent
- Parent of spouse or domestic partner
- Child
- Sister or brother
- Grandparent
- Guardian
- A person with whom you have a close relationship such that the person is considered to be an immediate family member

**Scheduling time off for bereavement**

You must work with your manager to request time off from work for bereavement. The company reserves the right to require documentation to support the need for bereavement time off from work.

**Bereavement pay and tracking bereavement time off**

All deductions, including required contributions for health and insurance coverage, 401(k) contributions, tax withholdings and garnishments will continue.

Pay is based on your weekly projected average hours. For commissioned associates, pay will be based on the compensation practices specific to their lines of business.

Any bereavement pay you receive for which you are not eligible will be treated as a pay advance and will be reconciled with your future earnings, final pay or otherwise recovered from you, to the extent permitted by law.

CONFIDENTIAL                                                    BANA-0000152

All associates who are non-exempt (overtime-eligible) under the federal Fair Labor Standards Act and relevant state laws are required to track all bereavement time that is used in the timekeeping system. Associates who are exempt (non-overtime eligible) under the federal Fair Labor Standards Act and relevant state laws should track bereavement time usage per the practices within their business unit.

**Return to work**

You are expected to return to work on the first business day immediately following bereavement time off. Failure to return to work immediately following bereavement time off may result in disciplinary action, up to and including termination.

## Jury duty

### Introduction

Bank of America provides paid time off from work when you are required by a court to report for jury duty.

### Eligibility

With the exception of associates scheduled to work less than 20 hours per week, any full- or part-time United States associate may be eligible for up to 26 weeks of paid time off from work for jury duty. An associate on international assignment should refer to International Assignee Services (IAS) for specific information regarding time off from work provisions while on assignment.

### Scheduling time off for jury duty

You must work with your manager to request time off from work for jury duty. The company reserves the right to require a copy of the notice or jury summons to support the need for jury duty time off from work.

### Jury duty pay and tracking jury duty time off

All deductions, including required contributions for health and insurance coverage, 401(k) contributions, tax withholdings, and garnishments will continue.

Pay is based on your weekly projected average hours. For commissioned associates, pay will be based on the compensation practices specific to their lines of business.

Any jury duty pay you receive for which you are not eligible will be treated as a pay advance and will be reconciled with your future earnings, final pay or otherwise recovered from you, to the extent permitted by law.

All associates who are non-exempt (overtime-eligible) under the federal Fair Labor Standards Act and relevant state laws are required to track all jury duty time that is used in the timekeeping system. Associates who are exempt (non-overtime eligible) under the federal Fair Labor Standards Act and relevant state laws should track jury duty time usage per the practices within their business unit.

### Return to work

You are expected to return to work on the first business day immediately following completion of jury duty. Failure to return to work immediately following jury duty may result in disciplinary action, up to and including termination.

## Military reserve annual training

### Introduction

Bank of America provides paid time off from work for Military Reserve or National Guard annual training duty.

### Eligibility

Any full- or part-time United States associate may be eligible for paid time off work for Military Reserve or National Guard duty for up to two weeks per calendar year for annual training. Associates who are called to active duty should refer to the Military Leave policy. An associate on international assignment should refer to International Assignee Services (IAS) for specific information regarding leave of absence and time off from work provisions while on assignment.

### Scheduling time off for military reserve training

You must work with your manager to schedule time off from work for military reserve training. The company reserves the right to require documentation to support the need for military reserve annual training.

### Military reserve training pay and tracking military reserve time off

All deductions, including required contributions for health and insurance coverage, 401(k) contributions, tax withholdings, and garnishments will continue.

Pay is based on your weekly projected average hours. For commissioned associates, pay will be based on the compensation practices specific to their lines of business.

Any military reserve training pay you receive for which you are not eligible will be treated as a pay advance and will be reconciled with your future earnings, final pay or otherwise recovered from you, to the extent permitted by law.

All associates who are non-exempt (overtime-eligible) under the federal Fair Labor Standards Act and relevant state laws are required to track all military reserve training time off in the timekeeping system. Associates who are exempt (non-overtime eligible) under the federal Fair Labor Standards Act and relevant state laws should track military reserve training time off per the practices within the associate's business unit.

### Return to work

You are generally expected to return to work on the first business day immediately following time off work for military reserve training. Failure to return to work immediately following military reserve training may result in disciplinary action, up to and including termination.

CONFIDENTIAL

BANA-0000153

## Section II - Parental Leave

### Purpose

Bank of America provides paid and unpaid time off from work for a maximum of 26 weeks in a rolling 12-month period for an eligible associate to care for and bond with a newborn or adopted child. These leave provisions comply with and in some instances exceed the requirements of the Family and Medical Leave Act (FMLA).

### Eligibility

- Any full- or part-time U.S. associate with a minimum of one year of continuous service as of the date of birth or date the child is placed for adoption may be eligible for Parental Leave.
- An associate on international assignment should refer to International Assignee Services (IAS) for specific information regarding leave of absence and time off from work provisions while on assignment.
- An **eligible associate** is defined as a natural parent, same-sex partner of a natural parent, or a new adoptive parent.
- To be eligible for adoption leave, the child must be under the age of 18 years on the date of placement for adoption.

### Rolling 12-month calculation

When applicable, Parental Leave and Family Care Leave run concurrently. Maternity Leave runs concurrently with Short-term Disability (STD) for the period of the disability for child birth. The maximum time away from work for any one or a combination of the above leaves may not exceed 26 weeks in a rolling 12-month period. The rolling 12-month period is measured backward from the date you use Parental and/or Family Care Leave. Thus, when you take more than one of these leaves within a rolling 12-month period, the remaining leave available after the first such leave is taken is the balance of the 26 weeks that has not been used during the immediately preceding 12 months.

### Applying for Parental Leave

First, contact your manager and follow the specific requirements of your line of business (LOB) regarding reporting an absence or leave.

Second, contact the Leaves Administrator to initiate a leave. Aetna is the Leaves Administrator for Bank of America. Contact Aetna at **1.877.444.1012.**

When you contact the Leaves Administrator, you will need to provide:
- The date of the last day of work
- The date of the child's birth or date the adoption is finalized
- The date you intend to return to work
- A copy of the birth certificate or other legal documentation

Parental Leave must be used within the first 12 months from the birth or the date the child is placed for adoption.

### Extension of Parental Leave

During an approved leave and prior to the expected return to work date, if you are within the 26-week leave maximum and would like to extend Parental Leave, you should contact your manager to provide an updated anticipated return date. In addition, you should contact the Leaves Administrator to request an extension of the leave.

### Parental Leave provisions

- You may take a Parental Leave, return to work and then resume a Parental Leave again for the same child. In such cases, both periods of Parental Leave must be continuous. You cannot take more than two separate periods of Parental Leave within the 12-month period from the birth or placement for adoption of the same child.
- You may receive paid leave for up to 12 weeks through the regular payroll process.
- Paid leave must be taken within 12 weeks immediately following the birth or the date the child is placed for adoption. All deductions, including required contributions for health and insurance coverage, 401(k) contributions, tax withholdings, and garnishments will continue.
- All deductions, including required contributions for health and insurance coverage, 401(k) contributions, tax withholdings, and garnishments will continue.
- Pay is based on your weekly projected average hours. For commissioned associates, pay will be based on the annual benefits base rate determined for each associate by Bank of America for benefits purposes.
- Parental Leave benefits will be offset by other benefits you are eligible to receive such as applicable state maternity, paternity or adoption benefits.
- You may use up to two occasional illness days to fund an unpaid period of leave.
- You may use any accrued and unused vacation and purchased time off to fund an unpaid period of leave. Vacation and purchased time off may not be used to supplement any paid portion of the leave.
- Vacation and occasional illness days **do not accrue** during an unpaid leave that is longer than a single pay period. Vacation and occasional illness days **do accrue** during a paid leave.
- You are not eligible for any paid holidays that are observed during paid or unpaid leave.
- If you are on unpaid parental leave, you are not eligible to switch to another type of leave, unless required by law or unless you meet the eligibility requirements for medical leave.
- Any pay you receive for which you are not eligible will be considered a pay advance or overpayment. The overpayment amount will be reconciled from pay, or otherwise recovered, to the extent permitted by law.

**Note:** Bank of America system access is revoked on the effective date of your leave.

CONFIDENTIAL

BANA-0000156

## Section VI - Military leave

### Purpose

Bank of America provides time off and benefits to serve in the uniformed services of the United States.

### Eligibility

- You are eligible for Military Leave when it is necessary to be absent from work to serve in the uniformed services of the United States in accordance with applicable law.
- The uniformed services include: Armed Forces; Reserves; Army National Guard and Air National Guard; Commissioned Corps of the Public Health Service and any other category designated by the President in time of war or national emergency.
- The performance of duties on an involuntary or voluntary basis constitutes service in the uniformed services of the United States.
- During the time you are on a Military Leave, you are not eligible for any other type of leave, unless required by law.

### Applying for Military Leave

Contact your manager and follow the specific requirements of your line of business (LOB) regarding reporting an absence or leave.

Leave is granted based on your advance notice. Generally, oral or written notice is required unless notice is prevented by military necessity or it is unreasonable or impossible to do so.

Leave begins when you report for duty.

### Extension of Military Leave

During an approved leave and prior to the expected return to work date, if you would like to extend Military Leave, you should contact your manager to provide an updated anticipated return date.

### Pay

Military Leave provides eligible associates a cumulative total of five years of paid leave. Paid leave is provided at 90 days of full pay for each Military Leave period. Differential (or supplemental pay) is provided for each Military Leave period that extends beyond 90 days for the remainder of that Military Leave period, or until the five year maximum is reached. These cumulative five years of paid leave are not required to be consecutive. Both periods of full pay and periods of differential pay count toward the five year maximum for paid Military Leave.

These pay provisions apply to any associate who begins a Military Leave on or after July 1, 2010. Any paid or unpaid military leave prior to July 1, 2010, does not count toward the cumulative five year maximum for paid Military Leave.

Any pay you receive while on Military Leave will be paid through the regular payroll process. Most payroll deductions, including required contributions for health and insurance coverage, 401(k) contributions, payroll tax withholdings (except for Federal Insurance Contributions Act (FICA) for leaves that exceed 30 days) and garnishments will continue.

Pay for up to the first 90 days of a Military Leave is equal to your Bank of America base pay in effect at the time leave commences. This pay is in addition to any military pay you might receive and is not a subsidized difference.

Pay for the period of time from the 91st day to the end of the Military Leave (or until the cumulative five year maximum is reached, if earlier) will be paid on a differential basis. Differential pay will be calculated by taking the difference between military gross base pay and your Bank of America gross base pay (**differential pay**). Military gross base pay does not include special allowances (such as allowances for housing, subsistence, etc.).

Bank of America base pay is based on your weekly projected average hours. For certain commissioned associates, Bank of America base pay is based on the annual benefits base rate determined for each associate by Bank of America for benefits purposes.

If military gross base pay cannot be determined by Bank of America at the end of the 90-day fully paid period, pay will be suspended until military gross base pay information is provided. You will be classified as being on an unpaid Military Leave at that point in time. If the military gross base pay information is provided within one year from the date the leave began, you will receive differential pay calculated on a retroactive basis. You will not be eligible for retroactive payment if the military pay information is received more than one year from the date the leave began.

Full or differential pay while on Military Leave will cease when you are released from active duty or when five total years of such pay have been provided, whichever comes first. You will be placed on unpaid Military Leave if you remain on leave after paid leave ends.

To be eligible for paid leave, you must provide any requested documentation and cooperate fully with requests for information, including the status of the leave.

Any pay you receive for which you are not eligible will be considered a pay advance or overpayment. The overpayment amount will be reconciled from pay, or otherwise recovered, to the extent permitted by law.

CONFIDENTIAL

BANA-0000164

Exhibit
2

Accrual Plans – Vacation

## Accrual Plans – Vacation

### Overview

This posting provides an overview of the policy, time entry procedures, and exception processing for the Vacation Entitlement Plan and Old Bank Vacation Plan (legacy Fleet only). Vacation and Old Bank Vacation hours can be entered into the timekeeping tool to be passed to payroll for payment. Associates and managers should work together throughout the year to schedule days off.

### Vacation Entitlement Plan

### Eligibility

The following associates are eligible for Vacation accruals:

* **Employment Category** = Temporary
  * Scheduled Hours =20 per week
  * **Assignment Status** = LOA Unpaid
  * **Special Category** = Commission
  * Job Band = C-3 (eligible to take, but entitlement is not tracked systematically)

### General Information

* Vacation accruals are based on a combination of eligible factors, length of service, scheduled hours, employee work arrangement, and assignment status. If there is a change to an associate's data, their accruals automatically re-calculate to determine if an adjustment is needed. Updates are typically reflected in the system by the next pay period end date after the change goes into effect. Additional balance adjustments can be requested by managers if there is a need to change a balance outside of the accruals rules built into the system. See the "Balance Adjustments" section in this user guide for additional information.

* Associates are eligible to take their annual balance at the beginning of the calendar year, but they accrue hours on a per pay period basis. If an associate becomes ineligible or terminates mid-year, hours that have been taken but not yet accrued can result in an overpayment recovery. See the "Payout Requests" section in this user guide for additional information.

* Under certain situations, some associates might be eligible to accrue at a higher rate. If the higher accrual rate is not reflected in the system, the associate should discuss with their manager. Managers can submit a request to grandfather an associate's Vacation accrual at a higher rate, if applicable. See the "Grandfathered Vacation" section in this user guide for additional information.

* For service anniversaries, associates start to accrue at the next accrual band on January 1 prior to the anniversary date.

* This plan is not eligible for employee – unused hours are forfeited at the end of the calendar year, as allowed by state law.

* All associates must use all vacation days in the year in which they are earned. Unused days may not be carried into the next year unless one of the following occurs:
  * Associate is medically disabled and unable to take vacation during the year.
  * Managers cannot schedule vacation for associate due to business need.

If one of these situations occurs, please refer to the Associate Handbook for additional guidance and contact your manager and/or the Personnel Center to address this issue.

https://hrprworkplacesservices100.fidelity.com/asWork/eWorkPlace/InfoCenter/ICStream.asp?fileDRI=-DDjgHtmVm2SISKYNyzZwxfwLDjkkfqhEEpKTz7IhAxIKNK1Awm... 8/3/2006

BANA-0000599

Accrual Plans — Vacation

For the most current information regarding Bank of America's time off policies, refer to the Life tab on Personnel Online.

**Time Entry**

For Instructions on how to view your Vacation balance and/or to enter Vacation hours on your timesheet, see one of the following documents under the User Guides section of the Support tab:

- *Timekeeping Reports*
- *Time Entry for Non-Overtime Eligible Associates*
- *Time Entry Using eWorkplace – Overtime Eligible Associates*
- *Time Entry Using the IVR (the Phone)*

**Balance Adjustments**

If an associate's Vacation balance needs to be adjusted, their manager can request a balance adjustment by submitting an Element Adjustment Request form, which can be found on the Support tab of eWorkplace under the "Forms" section. The "Paid Time Off Accrual Balance Adjustments" section should be filled out as follows:

- Effective Date = Date the adjustment should go into effect
- Accrual Balance Element Name = Vacation Plan Balance Adj
- If Hrs Adjustment (+) = Hours to add to balance (fill out only if trying to increment balance)
- If Hrs Adjustment (-) = Hours to subtract from balance (fill out only if trying to decrement balance)
- Comments = Optional, but recommend adding the adjustment reason for audit purposes

Balance adjustments should be submitted when the manager would like to grant the associate additional hours or there's a one-time adjustment. They should not be submitted for situations where the accrual formula self-adjusts the associate's balance (e.g. work schedule or employment category changes), otherwise the balance can be inadvertently adjusted more than once. A general guideline is balance adjustments should be used in cases where the system would not know to calculate an adjustment, where manager discretion is involved rather than the system application of policy.

**Payout Requests**

If an associate becomes ineligible for Vacation accruals mid-year, neither manager should assess if a payout is needed for accrued hours that have not been used. Once ineligible, associates are no longer able to use Vacation hours through the Timekeeping tool. Payouts can be requested by submitting an Element Adjustment Request form, which can be found on eWorkplace under the Forms section. The "Non-Recurring Earnings/Deductions" section should be filled out as follows:

- Effective Date = Date the payout should go into effect.
- Element Name = Vacation Payout
- Element Type = Earning
- Amount = Hours to be paid out
- Amount Type = Hours

https://Imprworkplaceservices100.fidelity.com/eWorkPlace/InfoCenter/ICStream.asp/fileURL=DD9gJImY2nZ5iSKYANyzZoxFwLBjirKjmE5pJxCtz7iMxiKxNK1Awm... 8/3/2006

Accrual Plans – Vacation

Page 3 of 5.

If an associate who was previously eligible for Vacation accruals becomes ineligible, an alert is sent to the manager so they can assess if the associate is due a payout of their remaining hours. Remaining hours are those that have been accrued, but have not yet been taken. If an associate's balance is negative (i.e. they have used more hours than they have accrued), the manager can submit an Overpayment/Ie Authorization form to recover the overpaid hours.

To pay out an associate who is terminating, see the Termination Transaction user guide for details.

Grandfathered Vacation

There are situations where an associate is eligible to accrue at a higher rate than allowed by this standard policy. If this is the case, managers have the option to grandfather in the calculated accrual rate for this associate. The accrual formula is coded to take the greater of the calculated accrual rate and the Grandfathered Vacation accrual rate. This means the Grandfathered Vacation element stays in effect until either the calculated rate is higher or the element is end dated.

To either set up or end date a Grandfathered Vacation element, the manager must submit an Element Adjustment Request form, which can be found on the Support tab of eWorkplace under the Forms section. The "Recurring Earnings/Deduction" section should be filled out as follows:

* Effective Date = 1/1/XX (if the grandfathered value should apply to the whole year) or Actual Effective Date (if the grandfathered value should be pro-rated for the year)
* End Date = N/A, unless the element is being end dated (if end dating, the Effective Date and End Date should be the same)
* Element Name = Grandfathered Vacation
* Element Type = Earning
* Recurring Amount = Hours to be grandfathered (amount should be entered based on a work schedule of 40 hours because the accrual formula automatically pro-rates based on scheduled hours, if applicable)
* Amount Type = Hours

For example, if the manager would like to grandfather four (4) weeks (or an associate who would otherwise accrue three (3) weeks, 160 should be indicated as the "Recurring Amount". Keep in mind this element stays in effect unless the manager modifies or end dates it. If an associate with a Grandfathered Vacation element has a job change that results in a higher job band, an alert is sent to the manager so they can assess if the grandfathered value should still apply. If any changes are required, the Element Adjustment Request form must be used to indicate the necessary updates to the associate's Grandfathered Vacation element.

Old Bank Vacation Plan (Legacy/Fleet Associates Only)

Eligibility

* This is a grandfathered vacation plan that only applies to a sub-set of legacy Fleet associates.
* No additional associates can become eligible for this plan.
* Temporary associates are not eligible.

General Information

* Old Bank Vacation does not accrue additional hours – balances are based on a grandfathered amount, plus time taken. If there is a need to adjust the balance, managers can request balance adjustments. See the "Balance Adjustment" section in this user guide for additional information.
* If an associate becomes ineligible or terminates mid-year, any remaining hours are eligible to be paid out. See the "Payout Requests" section in this user guide for additional information.

https://hrprwrkplaceservices100.fidelity.com/eWork/eWorkPlace/InfoCenter/ICStream.asp?fileURL=DDDigElmVniZSfSfKYN0yz2wFwLBphkjnEffpKTz7fMAcKNKf4Awm...   8/3/2006

Accrual Plans – Vacation

- This plan is eligible for carryover through 2007 – unused hours are forfeited at the end of the 2007, as allowed by state law.

For the most current information regarding Bank of America's time off policies, refer to the Life tab on Personnel Online.

**Time Entry**

For instructions on how to view your Old Bank Vacation balance and/or to enter Old Bank Vacation hours on your timesheet, see one of the following documents under the User Guides section of the Support tab:

- Timekeeping Reports
- Time Entry for Non-Overtime Eligible Associates
- Time Entry Using eWorkplace – Overtime Eligible Associates

**Balance Adjustments**

If an associate's Old Bank Vacation balance needs to be adjusted, their manager can request a balance adjustment by submitting an *Element Adjustment Request* form, which can be found on the Support tab of eWorkplace under the "Forms" section. The "Paid Time Off Accrual Balance Adjustments" section should be filled out as follows:

- Effective Date = Date the adjustment should go into effect
- Accrual Balance Element Name = Old Bank Balance Adj
- If Adjustment (+) = Hours to add to balance (fill out only if trying to increment balance)
- If Adjustment (-) = Hours to subtract from balance (fill out only if trying to decrement balance)
- Comments = Optional, but recommend entering the adjustment reason for audit purposes.

**Payout Requests**

If an associate becomes ineligible for Old Bank Vacation accrual (i.e. becomes a Temporary associate), their manager should assess if a payout is needed for hours that have not been used. Once ineligible, associates are not longer able to use Old Bank Vacation hours through the timekeeping tool. Payouts can be requested by submitting an *Element Adjustment Request* form, which can be found on the Support tab of eWorkplace under the "Forms" section. The "Non-Recurring Earnings/Deductions" section should be filled out as follows:

- Effective Date = Date the payout should go into effect
- Element Name = Old Bank Vacation Payout
- Element Type = Earning
- Amount = Hours to be paid out
- Amount Type = Hours

To pay out an associate who is terminating, see the Termination Transaction user guide for details.

Location of Related Information About this Process:

https://hrprwork.chaseservices100.fidelity.com/at/Work/eWork/BusInfoCenter/ICSbteam.asp?fileURL=DD9gJHmVjnzSsiSKVMyz2oFrwLBjinfqinEt5pKTz7IMzsRcNKLAvem...   8/3/2006.

BANA-0000602

## Accrual Plans — Vacation

| | |
|---|---|
| Alert Notification(s) | • Grandfathered Vacation Accrual Eligibility Alert<br>• Vacation Accrual Eligibility Change Alert |
| Manual Form(s) | • Element Adjustment Request Form |
| Timekeeping Report(s) | • Balance Report<br>• Year at a Glance/ Absences |

**Further documentation is available on the Support page in eWorkplace:**

| | |
|---|---|
| User Guides | provide role-specific documentation on all eWorkplace and NetBenefits processes |
| FAQs | provides answers to frequently asked questions |
| Service Information | provides HR/Payroll information, including a list of paycheck elements, common terms dictionary, and the payroll calendar |
| Forms | provides manual forms and a guide to their use |
| Contact Information | provides details how to contact the Bank of America Personnel Center |

AND, on each page of eWorkplace and NetBenefits, click on HELP at the top of the screen to access the help topic for that page

Important Legal Information Copyright © 1999-2005  FMR Corp.  All rights reserved.
Version: PROD_Main_20050714204208_1537 (fnpphelpdeak)

https://hrmrworkplaceservices100.fidelity.com/atWorks/eWorkPlace/InfoCenter/ICStream.aspx?fileURL=DD9gJHmVm2ZSiKVA9zZwFwLBjfdqnEPpKTz7DAriKNKiAwm... 9/2/2005

CONFIDENTIAL

BANA-0000603

Exhibit
3

## Accrual Plan - Occasional Illness

### Overview

This process provides an overview of the policy, time entry procedures, and exception processing for the Occasional Illness Plan. Occasional Illness (Sick and Personal) hours can be entered into the timekeeping tool to be passed to payroll for payment.

### Eligibility

The following associates are not eligible for Occasional Illness accruals:

- Employment Category = Temporary
- Scheduled Hours <20 per week
- Assignment Status = LOA Unpaid
- Special Category = Commission
- Job Band = 0-3 (eligible to take, but entitlement is not tracked systematically)

### General Information

- Occasional Illness accruals are based on a combination of job band, length of service, scheduled hours, flexible work arrangement, and assignment status. If there is a change to an associate's data, their accruals automatically re-calculate to determine if an adjustment is needed. Updates are typically reflected in the system by the next pay period end date after the change goes into effect. Additional balance adjustments can be requested by managers if there is a need to change a balance outside of the accruals rules built into the system. See the Balance Adjustments section in this user guide for additional information.

- Associates are eligible to take their annual balance at the beginning of the calendar year, but they accrue hours on a per pay period basis. If an associate becomes ineligible or terminates mid-year, hours that have been taken but not yet accrued can result in an overpayment recovery.

- After Occasional Illness days have been exhausted, associates who are eligible for the West Accrued Sickness or Arizona Sick benefits can use their remaining days for personal illness. See Associate User Guide/Accrual Plans – Sick Plans, which can be found on the Support tab of eWorkplace under the User Guides section, for additional information.

- This plan is not eligible for carryover – unused hours are forfeited at the end of the year.

For the most current information regarding Bank of America's time off policies, refer to the Life tab on Personnel Online.

### Time Entry

For instructions on how to view your Occasional Illness balance and/or to enter Sick or Personal hours on your timesheet, see one of the following documents under the "User Guides" section of the Support tab:

- *Timekeeping Reports*
- *Time Entry for Non-Overtime Eligible Associates*
- *Time Entry Using eWorkplace – Overtime Eligible Associates*
- *Time Entry Using the IVR (the Phone)*

### Balance Adjustments

If an associate's Occasional Illness balance needs to be adjusted, his/her manager can request a balance adjustment by submitting an "Element Adjustment Request" form, which can be found on the Support tab of eWorkplace under the "Forms" section. The "Paid Time Off Accrual Balance Adjustments" section should be filled out as follows:

CONFIDENTIAL                                                                                    BANA-0000597

Accrual Plan - Occasional Illness

- Effective Date = Date the adjustment should go into effect
- Accrual Balance Element Name = Occ Illness Balance Adj
- # Hrs Adjustment (+) = Hours to add to balance (fill out only if trying to increment balance)
- # Hrs Adjustment (-) = Hours to subtract from balance (fill out only if trying to decrement balance)
- Comments = Optional, but recommend adding the adjustment reason for audit purposes

Balance adjustments should be submitted when the manager would like to grant the associate additional hours or there's a one-time adjustment. They should not be submitted for situations where the accrual formula self-adjusts the associate's balance (e.g. work schedule or employment category changes), otherwise the balance can be inadvertently adjusted more than once. A general guideline is balance adjustments should be used in cases where the system would not know to calculate an adjustment, where manager discretion is involved rather than the system application of policy.

## Location of Related Information about this Process

| Manual Form(s) | • Element Adjustment Request Form |
|---|---|
| Timekeeping Report(s) | • Balance Report<br><br>• Year at a Glance: Absences |

| **Further documentation is available on the Support page in *eWorkplace*:** | |
|---|---|
| User Guides | provides role-specific documentation on all *eWorkplace* and *NetBenefits* processes |
| FAQs | provides answers to frequently asked questions |
| Service Information | provides HR/Payroll information, including a list of paycheck elements, common terms dictionary, and the payroll calendar |
| Forms | provides manual forms and a guide to their use |
| Contact Information | provides details on how to contact the Bank of America Personnel Center |
| *AND*, on each page of *eWorkplace* and *NetBenefits*: click on <u>HELP</u> at the top of the screen to access the help topic for that page | |

Important Legal Information Copyright © 1998-2006 FMR Corp. All rights reserved.
Version: PKG_WEB_200607_07242006_1537 (febprdwp134win)

CONFIDENTIAL

BANA-0000598

Exhibit
4

Absences & Loaned Hours

Print

How to Enter a Full Day Absence? | How to Enter a Partial Day Absence? | Loaned Hours | How to Enter Loaned Hours?

## How to Enter a Full Day Absence?

In addition to your work time, you will record all non-work time in the timekeeping tool. Examples of non-work time are vacation and occasional illness.

A full day absence means that you are out for an entire scheduled workday. When you take a full day absence, the timekeeping tool records time off based on your scheduled work hours and removes your scheduled lunch.

To enter a full day absence:

1. Click the **Adjustments** drop-down menu and select **Full Day Absence**.



The Full Day Absence screen launches.

https://baclcms.sabahosted.com/lcmscontent/cninv000000000004787/tab_absences%20and%20loaned%20hours.htm

8/19/2008

CONFIDENTIAL

BANA-0000519

Print

Associate Responsibilities | Timekeeping Online | Timekeeping Automation | How to Access Timesheets?

## Associate Responsibilities

As an overtime eligible associate:

- You are responsible for reporting all time worked, including paid and unpaid time off.
- You must update your timesheet with your time worked each day, even if it matches your default schedule. Your failure to do so may result in disciplinary action.

Please check entries carefully for accuracy. By checking the boxes in the Submit column and clicking Save, you (the associate) are certifying that time entered, including start and end times, is an accurate record of time worked (and/or non-worked) during the time period.

Back to top

## Timekeeping Online

Time off balances and report features are only as accurate as the data provided. You must enter data in the tool consistently to ensure accurate balances. Associates use the timekeeping process to enter and track paid time off such as vacation, occasional illness and purchased time off.

The following is the process for online timekeeping:

- You will record when you start in the morning, break for a meal, return from a meal and leave for the day.
- You will record absences, such as vacation and occasional illness.
- You will submit your time to your manager for approval.
- Your manager will review and approve your time entries.

Additional features of the timekeeping tool include the ability to:

- Modify a default schedule.
- View time off balances.

https://baclcms.sabahosted.com/lcmscontent/cninv000000000004787/tab_overview.htm

8/19/2008

CONFIDENTIAL

BANA-0000505