# Exhibit 1

<div align="center">

**SETTLEMENT AGREEMENT**

</div>

This Settlement Agreement is made and entered into by and between Defendant BANK OF AMERICA, NATIONAL ASSOCIATION ("BANA" or "Defendant"), on the one hand, and Plaintiff Sheri Garibaldi, individually and on behalf of all members of certain classes as defined herein ("Garibaldi" or "Plaintiff"), subject to approval of the Court.  The purpose of this Settlement Agreement is to resolve all claims of the Classes as alleged in the Fourth Amended Complaint and Plaintiff's Floating Holiday claims in *Sheri Garibaldi v. Bank of America Corp.,* Northern District of California Case No. 3:13-cv-02223, and as defined below.

## I.  DEFINITIONS

As used in the Settlement Agreement, the following terms shall have the following meanings:

1.      "Accrued Points" means the total number of accrued but unused global recognition points received by a Points Class Member at the time of his or her Termination Date. (The Parties acknowledge and understand that the usage of the term "accrued" in this Settlement Agreement is not an agreement or admission that any "accrued" amounts are wages or are the legal equivalent of wages under California or federal law.)

2.      "Accrued Points Amount" means a Points Class Member's Accrued Points multiplied by .05145.

3.      "Base Penalty" means, for each Travel and Points Subclass Member, the member's final rate of pay (calculated as an hourly rate of pay), multiplied by seven, and multiplied by thirty.

4.      "Case" means the civil action styled *Sheri Garibaldi (on behalf of herself and all others similarly situated) vs. Bank of America Corporation, et al.*  The Case is presently pending in the United States District Court for the Northern District of California, Case No: 3:13-cv-02223-SI.

5.      "Claims Administrator" means KKC LLC.

6. "Class Counsel" means Baker & Schwartz, P.C.

7. "Classes" means the Travel Class, the Points Class, and the PTO Class, as well as the Travel Subclass, Points Subclass, Part-time PTO Subclass, Occasional Illness Subclass, and Floating Holiday Subclass.

8. "Class Member" means any Eligible Class Member who has not validly requested exclusion from the settlement as provided in the Settlement Agreement and the Class Notice.

9. "Class Notice" means the Notice to Class of Proposed Settlement of Class Action to be sent to the Settlement Class pursuant to the terms of the Preliminary Approval Order. The Class Notice shall be substantially in the form of Exhibit A.

10. "Effective Date" refers to the first date on which all of the following have occurred: (1) this Settlement Agreement has been executed by Plaintiff, Class Counsel, Defendant and counsel for Defendant; (2) the Court has given preliminary approval of the Settlement; (3) the Court has held a Final Fairness Hearing and entered a Final Order and Judgment in accordance with the terms herein, approving this Settlement Agreement and dismissing with prejudice the claims of the Classes; and (4)(i) the expiration date of the time for the filing or noticing of any appeal from the Order and Final Judgment, without an appeal or a notice of appeal being filed; or (ii) if a notice of appeal is timely filed, the date of final affirmance of the Order and Final Judgment, the expiration of the time for a petition for a writ of review to review the Order and Final Judgment, and, if review is granted, the date of final affirmance of the Order and Final Judgment following review pursuant to that grant; or (iii) the date of final dismissal of any appeal from the Order and Final Judgment or the final dismissal of any proceeding to review the Order and Final Judgment.

11. "Eligible Class Members" means any potential member of any of the Classes and whose information was provided to the Claims Administrator by BANA in accordance with paragraphs 107, 109, 112, and 115.

12. "Final Fairness Hearing" means the hearing to be requested by the Parties, and conducted by the Court, following appropriate notice to the Settlement Class and an opportunity

for members of the Settlement Class to exclude themselves from participation in the Settlement Class and the proposed settlement, at which time the Parties will request that the Court approve the fairness, reasonableness and adequacy of the terms and conditions of the proposed settlement and the Settlement Agreement and enter the Order of Final Approval and Final Judgment, with the Court retaining jurisdiction to enforce the terms of the Settlement and Final Judgment.

13.     "Floating Holiday Hours" (or "FH Hours") means the Floating Holiday Hours accrued but not used by PTO Class Members pursuant to the Bank's policies.

14.     Floating Holiday (or "FH") Subclass means former California-based BANA employees with a Termination Date between October 4, 2008 and December 31, 2014 who did not use all of their accrued floating holidays during that time period.

15.     "Gross Settlement Amount" means Nine Million Dollars ($9,000,000.00).

16.     "The Inderbitzen Settlement Class" means those persons subject to the class settlement in *Inderbitzen v. Bank of America*, Case No. 37-2010-00099388, approved by the Superior Court of California in San Diego.

17.     "Individual Penalty Payment" means each Travel and Points Subclass Member's proportionate share of the Penalty Amount.

18.     "Interest" means the amounts additional paid as interest on the Points Value Pay, as defined below.

19.     "MDL Action" means *In Re: Bank of America Wage and Hour Employment Practices Litigation*, Case No. 10-md-2138.

20.     "Motion For Preliminary Approval" means the contemplated motion to preliminarily approve the Settlement Agreement, set a Final Fairness Hearing, and issue the Class Notice, as set forth in paragraph 96 of the Settlement Agreement.

21.     "Net Funds Available for Settlement Awards" means the Gross Settlement Amount less (i) the enhancement payment to Plaintiff specified in this Settlement Agreement as approved by the Court, (ii) the amount of attorneys' fees and costs awarded to Class Counsel, (iii)

the costs of the administration of the settlement by the Claims Administrator, (iv) the amount set aside for payment to the LWDA with respect to PAGA; and (v) the Reserve Fund.

22.    "OI Personal Days" means the two days accrued per year by OI Subclass Members that need not necessarily be used for sickness, under the conditions set forth in BANA's policies.

23.    "OI Personal Hours" means the number of occasional illness hours accrued and not used by OI Subclass Members that need not necessarily be used for sickness, under the conditions set forth in BANA's policies.

24.    "OI Sick Days" means the eight days accrued per year by OI Subclass Members that could be used for employee sickness pursuant to BANA's policies.

25.    "OI Sick Hours" means the number of occasional illness hours accrued for use for employee sickness that each OI Subclass Member did not use.

26.    "OI Subclass" means former California-based BANA employees with a Termination Date between October 4, 2008 and December 31, 2014 who did not use all of their accrued occasional illness hours during that time period.

27.    "Order and Final Judgment" means the Court's Order and Final Judgment approving the Settlement Agreement.

28.    "Part-Time PTO Subclass" means any former part-time, non-exempt BANA employee  (as defined by BANA policies), in California, with a Termination Date between April 12, 2009 and December 31, 2014, and whose actual average hours worked exceeded his or her hours-based classification at the time of his or her termination or as of the time they last worked as a part-time employee.

29.    "Partial Settlement Agreement" means the settlement agreement executed by the parties on or about May 7, 2014 resolving the claims by the Travel Class and the Points Class.

30.    "Participating Class Member" means any Class Member who completes and submits a timely claims form in accordance with paragraph 134 of this Agreement.

31.     "Penalty Amount" means the amount remaining after subtracting the Travel Recovery, Point Value Pay, and Interest from the Travel and Points Class Settlement Fund.

32.     "Points Class" means those employees identified by BANA as former, California-based, BANA employees who were not paid the cash value of their accrued recognition points upon separation from BANA's employment between April 12, 2009 and December 31, 2014.

33.     "Points Class Member" means a member of the Points Class.

34.     "Points Subclass" means those employees identified by BANA as former, California-based, BANA employees who were not paid the cash value of their accrued recognition points upon separation from BANA's employment between April 12, 2010 and December 31, 2013.

35.     "Points Value Pay" means the difference between a Points Class Member's Accrued Points Amount and Redeemed Points Amount.

36.     "Preliminary Approval Order" means the order to be entered by the Court upon the Plaintiff's Motion For Preliminary Approval.

37.     "PTO Class" means those employees identified by BANA who are members of the Part-Time PTO Subclass, FH Subclass, and OI Subclass.  The PTO Class does not include persons who are members of the Inderbitzen Settlement Class.

38.     "The PTO Class Settlement Fund" means 75.6% of the Gross Settlement Amount.

39.     PTO Class Member means a member of the PTO Class.

40.     "Redeemed Points" means the number of global recognition points spent by a Points Class member following his or her separation from BANA's employ.

41.     "Redeemed Points Amount" means each Points Class Member's Redeemed Points multiplied by .025725.

42.     "Released Claims" means the claims identified in Paragraph 152 of this Settlement Agreement as being released.

43. "Reserve Fund" means $40,000.00 of the Gross Settlement Amount, which shall be set aside by the Claims Administrator to cover any correctable errors or omissions, and satisfy any claim for relief allowed pursuant to Fed. R. Civ. P. 60(b) (1) or 60(d).

44. "Settlement Administration Costs" means all costs of administering the settlement, including but not limited to all tax obligations, custodial fees, and accounting fees incurred by the Claims Administrator; all costs and fees associated with preparing, issuing and mailing any and all notices to Eligible Class Members; all costs and fees associated with computing, processing, reviewing, issuing and paying any enhancement payment, Settlement Awards, interest, taxes, and any other payments to be paid out of or into the Qualified Settlement Fund; all costs and fees associated with preparing any tax returns and any other filings required by any governmental taxing authority or agency; all costs and fees associated with preparing any other notices, reports, or filings to be prepared in the course of administering disbursements from the Gross Settlement Amount; and any other costs and fees incurred and/or charged by the Settlement Administrator in connection with the execution of its duties under this Settlement Agreement.

45. "Settlement Agreement" and "Settlement" means this Settlement Agreement, including the attached exhibits.

46. "Settlement Award" means the gross payment that each Class Member shall be entitled to receive under the terms of the Settlement Agreement.

47. "Settlement Class" means the Classes.

48. "Subclass Members" means members of a specified Subclass, except those who have validly requested exclusion from the settlement as provided in the Settlement Agreement and the Class Notice.

49. "Termination Date" means the date on which an Eligible Class Member separated from the Bank's employ. If an Eligible Class Member has multiple separation dates during the relevant time period(s), the latest separation date shall be used for all purposes herein.

50. "Total Weighted Base Penalty" means the sum of all Weighted Base Penalties.

51. "The Travel and Points Class Settlement Fund" means 24.4% of the Gross Settlement Amount.

52. "Travel Class" means those employees identified by BANA pursuant to paragraph 107 of the Settlement Agreement as all current and former non-exempt, part-time, BANA employees employed at retail banking centers in California who worked at more than one location in a day between April 12, 2009 and December 31, 2014.

53. "Travel Class Member" means a member of the Travel Class.

54. "Travel Instance" means each day on which a Travel Class Member worked at more than one location in a day.

55. "Travel Recovery" means the recovery of each Travel Class Member, per Travel Instance, as detailed in paragraph 108 of the Agreement.

56. "Travel Subclass" means all members of the Travel Class who were separated from BANA's employ in California between April 12, 2010 and December 31, 2014.

57. "Unit" means the value given to a Floating Holiday (FH) Hour, Occasional Illness (OI) Personal Hour, Occasional Illness (OI) Sick Hour, or membership in the Part-Time PTO Subclass, as explained in paragraph 116 of the Settlement Agreement.

58. "Weighted Base Penalty" means a multiple of the Base Penalty, as set forth in paragraph 113 of the Settlement Agreement.

59. "Weighted Unit" means the value assigned to a Unit, as set forth in paragraphs 117 to 120 of the Settlement Agreement.

## II.   **RECITALS**

61. On April 12, 2013, Sheri Garibaldi, individually and on behalf of a purported class of similarly-situated individuals, filed a complaint against Bank of America Corporation in the Superior Court of the State of California, County of San Mateo, Case No. CIV521097 ("the Case"). The Complaint alleged the following causes of action: (1) Breach of Contract; (2) Failure to Pay Accrued Vacation and Holiday Pay and Accrued Recognition Points Upon Termination; (3) Failure to Pay Overtime and/or Straight-Time Pay; (4) Reimbursement of Travel

Expenses; (5) Waiting Time Penalties; (6) Failure to Provide Accurate Itemized Wage

Statements; (7) Illegal Form of Payment and Unlawful Coercion; (8) Unfair Business Practices.

62.     On May 15, 2013, Bank of America Corporation removed the Case to the United

States District Court for the Northern District of California, where it was assigned case number

3:13-cv-02223.

63.     On May 21, 2013, the Judicial Panel on Multidistrict Litigation declined to

transfer the Case to the United States District Court for the District of Kansas, which was

managing a multi-district litigation concerning Bank of America's employment practices titled *In

Re: Bank of America Wage and Hour Employment Practices Litigation*, Case No. 10-md-2138

(Judge John W. Lungstrum, presiding) (the "MDL Action").

64.     On May 28, 2013, the Case was assigned to the Honorable Susan Illston.

65.     On June 5, 2013, Plaintiff filed a First Amended Complaint.  In doing so, Plaintiff

substituted BANA for Bank of America Corporation as the Defendant in this Case.  In the First

Amended Complaint, Plaintiff also added a ninth cause of action for civil penalties under the

California Labor Code Private Attorney General Act, Cal. Lab. Code § 2698, et seq.  Shortly after

the filing of the First Amended Complaint, the parties agreed to participate in a mediation for the

purpose of determining whether a settlement of the case could be reached.

66.     BANA has provided to Plaintiff policies and procedures concerning the practices

challenged by the Travel and Points Classes, other class settlement agreements and pleadings that

potentially implicated the Settlement Class's claims, BANA's form severance agreements, and

contracts and other documents between BANA and the third-party vendor that manages BANA's

Global Recognition Points Program.

67.     BANA has also produced to Plaintiff, and both BANA and Class Counsel

reviewed and analyzed, voluminous electronic data related to the claims of the Classes.  As to the

Points and the Travel Classes, this data consisted of more than 90,000 rows of Excel data and

more than 2,000,000 individual Excel cells.  As to the PTO Class and related Subclasses, this

data consisted of more than 1,000,000 rows of Excel data and more than 23,000,000 individual

Excel cells. The review and analysis of this data by Class Counsel included the creation of both complex Excel formulas and unique non-Excel computer code to better understand and analyze the produced data.

68.     In advance of the first mediation, the parties exchanged extensive position statements analyzing the facts, the law, BANA's potential exposure, and the risks of litigation. The parties also exchanged mediation briefs in advance of mediation.

69.     On July 26, 2013, the court in the MDL Action issued an Order permitting BANA to negotiate with Class Counsel concerning the claims alleged in the Case.

70.     On September 24, 2013, Plaintiff filed a Second Amended Complaint. The Second Amended Complaint asserted the same nine causes of action as the First Amended Complaint, but added a cause of action for missed meal breaks.

71.     On September 27, 2013, the Court held an initial case management conference.

72.     On October 9, 2013, the parties held a full-day mediation before David Rotman, a well-respected mediator with extensive experience mediating wage and hour class action lawsuits. The parties were unable to reach an agreement to resolve the entire case. At the end of the day, however, Mr. Rotman made a mediator's proposal with respect to the Travel Class, Travel Subclass, and the Points Class.

73.     On October 16, 2013 the parties agreed to the mediator's proposal.

74.     On October 17, 2013, Plaintiff filed a Notice of Partial Settlement with the Court.

75.     On October 25, 2013, Plaintiff filed her Third Amended Complaint. The Third Amended Complaint alleged the same ten causes of action as the Second Amended Complaint, but redefined and expanded the scope of the proposed classes.

76.     On November 18, 2013, the plaintiffs in the MDL Action filed a sealed motion for approval of a settlement of the MDL Action.

77.     On December 2, 2013, the Bank filed a motion to dismiss Plaintiff's Third Amended Complaint.

78.     On December 4, 2013, the Court in the MDL Action granted the Bank's motion for leave to provide the sealed motion for settlement approval to Class Counsel in this Case.

79.     On December 9, 2013, Plaintiff filed a notice of consent to join the MDL Action for the purpose of seeking a modification of the California and Nationwide notices attached to the proposed sealed settlement agreement in the MDL Action, stating that "[t]he requested modification directly relates to both the settled and the unsettled claims in *Garibaldi v. Bank of America, N.A.*"

80.     On December 13, 2013, the plaintiffs in the MDL Action filed a sealed motion to substitute the settlement notices in the MDL Action.

81.     On December 16, 2013, the Court heard the plaintiffs' motion for approval of the settlement in the MDL Action.  Class Counsel for Garibaldi attended this hearing.

82.     On December 18, 2013, the Court in the MDL Action approved the MDL settlement with modifications.  Plaintiff and the Bank continue to dispute whether those modifications alter the extent to which the MDL Action settlement releases claims asserted in this Case.  Following this approval, Plaintiff withdrew her notice of consent to join the MDL Action.

83.     On January 15, 2014, this Court granted in part and denied in part, the Bank's Motion to Dismiss.  Specifically, the Court concluded that the National Bank Act did not preempt Plaintiff's wage and hour claims.  It dismissed with leave to amend Plaintiff's PTO breach of contract claim.  It dismissed with leave to amend Plaintiff's failure to pay wages upon termination as to the two OI Personal Days.  It dismissed with prejudice Plaintiff's Floating Holiday claim, her OI Sick Day claim, and her non-derivative wage statement claim.  It denied the Bank's motion to dismiss as to Plaintiff's other claims.

84.     On February 13, 2014, Plaintiff filed her Fourth Amended Complaint in this matter.  The Fourth Amended Complaint alleges causes of action for: (1) Breach of Contract/Paid Time Off Policies; (2) Failure to Pay Accrued Pay Upon Termination; (3) Failure to Pay Overtime and/or Straight-Time Pay; (4) Missed Meal Breaks; (5) Reimbursement of Travel Expenses; (6) Waiting Time Penalties; (7) Failure to Provide Accurate Itemized Wage

Statements; (8) Illegal Form of Payment and Unlawful Coercion; (9) Unfair Business Practices; and (10) PAGA. The Fourth Amended Complaint alleges a "PTO Class" and "PTO Subclass," which encompasses "all current and former part-time, non-exempt Bank employees whose average hours worked or scheduled (including paid time off) exceed(ed) their hours-based classification within the applicable Class Period;" an "Occasional Illness Class" and "Occasional Illness Subclass," which consists of "all current and former BofA employees employed in California who accrued more occasional illness/personal hours than they took off in any given year;" a "Travel Class" and "Travel Subclass," which consists of "all current and former non-exempt, part-time BofA employees employed at retail banking centers in California who worked at more than one location in a day within the applicable Class Period;" and a "Points Class" and "Points Subclass," which consists of "all former, California-based, BofA employees who were not paid the cash value (including the grossed up cash value) of their accrued recognition points upon separation from BofA's employ within the applicable Class Period, whose access to the on-line store was removed, and/or whose accured points otherwise 'expired' within the applicable Class Period." The Fourth Amended Complaint did not include those claims that the Court had dismissed with prejudice, i.e., Plaintiff's claim for alleged illegal forfeiture of Floating Holidays claim, alleged illegal forfeiture of Occasional Illness sick days, and Plaintiff's non-derivative wage statement claim.

85.     On March 3, 2014, BANA filed its second motion to dismiss as to Plaintiff's Fourth Amended Complaint.

86.     On April 1, 2014, the Court granted in part and denied in part the Bank's second motion to dismiss. Specifically, the Court dismissed with prejudice Plaintiff's PTO breach of contract claim. The Court denied the Bank's motion to dismiss as to Plaintiff's Claim for failure to pay accrued wages upon termination as to the OI Personal Days. It also denied the Bank's motion as to Plaintiff's other remaining claims.

87.     On April 4, 2014, the Court held a case management conference, in which it suggested that the entire case may be ripe for settlement.

88.     On April 15, 2014, the Bank answered Plaintiff's Fourth Amended Complaint.

89.     On May 7, 2014, the Parties executed the Partial Settlement Agreement with respect to claims on behalf of the Travel Class and the Points Class.  Plaintiff did not move for preliminary approval of the Partial Settlement Agreement, and the Partial Settlement Agreement has not been submitted to the Court.  Paragraph 146 of the Partial Settlement Agreement provides that it "may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest, subject to Court approval."  Except as described further herein, the execution of this Settlement Agreement shall supersede, replace, and nullify the Partial Settlement Agreement in its entirety.

90.     The parties subsequently agreed to engage in another day of mediation in an effort to resolve the remainder of the Case.  As a part of this agreement, the Bank provided Class Counsel with a considerable amount of additional data and documents, including additional and updated datasets with respect to the OI, FH, and PTO claims.  Class Counsel analyzed and relied on these datasets and earlier datasets in conducting further analysis of Plaintiff's claims and the Bank's potential liability and exposure.

91.     On September 4, 2014, the parties engaged in a second day of mediation before David Rotman.  This mediation resulted in a mediator's proposal for a resolution of the entire Case.  As a result of subsequent follow-up, analysis, and negotiation, on October 10, 2014, the parties reached a tentative agreement as to a resolution of the entire Case.

92.     After extensive discovery and analysis, Plaintiff's position is that the Classes are entitled to compensation for their claims. At the same time, Plaintiff recognizes that the Court has dismissed with prejudice certain of Plaintiff's claims.  Plaintiff also acknowledges the expense and length of continued proceedings necessary to continue the litigation against Defendant through trial and through any possible appeals.  Plaintiff has also taken into account the uncertainty and risk of the outcome of further litigation, the potential that the resolution of other class actions against BANA could negatively impact (or have negatively impacted) the value of the Settlement Class's claims, as well as the possibility of class certification, and the difficulties

and delays inherent in litigation.  Plaintiff is also aware of the burdens of proof necessary to establish liability, Defendant's defenses thereto, and the difficulties in establishing and proving entitlement to wages, penalties, damages, or restitution.  Plaintiff has also taken into account the discovery, extensive information exchange and settlement negotiations conducted in the case to date.  Based on the foregoing, Plaintiff has determined that the settlement is fair, adequate and reasonable, and that it is in the best interests of the Settlement Class.

93.     BANA denies any and all charges alleged in the Case and denies all wrongdoing whatsoever or that any of the claims alleged in the Case are suitable for class treatment. Nevertheless, BANA has concluded that any further defense of the Case would be protracted, expensive, and with an uncertain outcome.  Substantial amounts of time, energy and resources of Defendant have been and, unless this settlement is made, will continue to be devoted to the defense of the claims of the Settlement Class.  BANA has, therefore, agreed to settle in the manner and upon the terms set forth in this Settlement Agreement in order to put to rest those claims.  At the same time, as a consequence of this litigation, BANA is reviewing and evaluating potential changes to certain personnel policies and procedures as they relate to the claims asserted in this Case to ensure compliance with California law.

94.     This Settlement Agreement is not a concession or admission by any party. Whether or not the Settlement Agreement is finally approved, neither the Settlement Agreement, nor any document, statement, proceeding or conduct related to this Settlement Agreement (including Plaintiff's motion for preliminary and final approval), nor any reports or accounts thereof, shall in any event be construed as, offered or admitted in evidence as, received as, or deemed to be, evidence for any purpose, including, but not limited to, evidence of a presumption, concession, indication or admission by BANA or Plaintiff.

NOW, THEREFORE, IT IS HEREBY AGREED, BY AND BETWEEN the undersigned, that the claims of the Settlement Class shall be settled, subject to approval of the Court, upon and subject to the following terms and conditions:

**III.     PROCEDURE FOR OBTAINING PRELIMINARY APPROVAL**

95.     The Parties and their respective counsel shall take all steps that may be requested by the Court relating to the approval and implementation of this Settlement Agreement and shall otherwise use their respective best efforts to obtain Court approval and implement this Settlement Agreement.  As part of this Settlement Agreement, the Parties agree to the following procedures for obtaining the Court's preliminary approval of the Settlement Agreement:

(a)     Upon full execution by the parties, the Plaintiff shall promptly submit this Settlement Agreement to the United States District Court along with Plaintiff's Motion for Preliminary Approval requesting that the Court enter an order substantially in the following form:

    i.   Solely for purposes of settlement, certifying a Settlement Class subject to final approval of the Settlement Agreement.

    ii.  Approving as to form and content the proposed Class Notice and Claim Form.

    iii. Approving the appointment of Class Counsel.

    iv.  Approving the selection of KKC LLC as Claims Administrator.

    v.   Directing the mailing of the Class Notice and Claim Form by first class mail to the Eligible Class Members in substantially the same form as Exhibits A and B hereto.

    vi.  Preliminarily approving the Settlement subject only to final review and approval by the Court.

    vii. Setting the date for Class Members to file objections, if any, to the Settlement Agreement.

    viii. Preliminarily approving payment of the Settlement Administration Costs to the Claims Administrator.

    ix.  Scheduling a final approval hearing as soon as practicable on the question of whether the proposed Settlement, including the payment of attorneys' fees and costs, and the enhancement payment to Plaintiff, should be finally approved as fair, reasonable and adequate.

(b)    The Parties will and hereby do stipulate that this Settlement Agreement was the product of arms-length negotiations, before an experienced mediator, taking into account all relevant factors, present and potential.

(c)    Defendant shall not oppose the Plaintiff's motion for preliminary approval of the settlement so long as the motion and supporting papers are consistent with the terms of this Settlement Agreement and facts of this case. Class Counsel shall provide Defendant's counsel with at least three court days to review and provide comments to the motions for preliminary and final approval of the settlement before the motion and supporting papers are filed with the Court.

## IV.    PROCEDURES FOR OBTAINING FINAL APPROVAL

96.    Upon expiration of the deadline for requesting exclusion from the Settlement as set forth in the Class Notice and for filing objections to the Settlement, a Final Fairness Hearing shall be conducted to determine final approval of the Settlement, including the amounts properly payable for (i) Plaintiff's attorneys' fees and costs, (ii) an enhancement payment to Plaintiff; and (iii) Settlement Administration Costs.  Prior to the Final Fairness Hearing and the deadline for filing objections, Class Counsel will prepare and, after review and comments by BANA, submit to the Court a motion for final approval of the settlement and a proposed final order and judgment of dismissal:

(a)    Approving the Settlement Agreement, adjudging the terms thereof to be fair, reasonable and adequate and directing implementation of its terms and provisions;

(b)    Approving Class Counsel's application for an award of attorneys' fees and reimbursement of costs;

(c)    Approving the enhancement payment to the Plaintiff;

(d)    Approving the payment of the Settlement Administration Costs to the Claims Administrator;

(e)    Dismissing the claims of the Classes on the merits with prejudice and permanently barring and enjoining all  Class Members from prosecuting against the Released

Parties any individual or class, collective, or representative claim that has been released, upon satisfaction of all payments and obligations hereunder;

             (f)      Providing that after entry of the Order and Final Judgment, the Court shall have continuing jurisdiction solely for purposes of addressing (i) settlement administration matters and (ii) such post-final judgment matters as may be appropriate under Court rules or as set forth in this Settlement Agreement.

## V.     SETTLEMENT CALCULATIONS AND PAYMENTS

97.     Subject to Court approval and the conditions specified herein, and in exchange for the release of all Released Claims by the Class Members, BANA shall make available a Gross Settlement Amount in the gross amount of Nine Million Dollars ($9,000,000.00). All amounts to be paid by BANA under this Settlement shall be paid to a qualified settlement fund (the "Qualified Settlement Fund"), which shall be administered by the Claims Administrator. All amounts to be paid to anyone pursuant to this Settlement Agreement shall be paid out of the Qualified Settlement Fund. These amounts shall include all Settlement Awards; all amounts to be paid to Class Counsel as attorneys' fees and costs; all amounts to be paid as an enhancement payment to Plaintiff; all amounts to be paid as Settlement Administration Costs; all employee withholdings required under federal, state and local laws and any other payroll charges required to be paid or deposited with the pertinent federal, state and local taxing agencies with respect to each Settlement Award (except as set forth in paragraph 98, below); the payment to the California Labor and Workforce Development Agency ("LWDA") for its portion of the amount paid to settle alleged PAGA claims; and the Reserve Fund.

98.     BANA shall be responsible for payment of the employer's share of any payroll taxes due as a result of the settlement payments separate and apart from the Gross Settlement Amount described above.

99.     All amounts to be paid under this Settlement Agreement shall be paid from the Qualified Settlement Fund and BANA shall have no obligation under this Settlement Agreement (or otherwise) to make any payment whatsoever beyond its obligations to make payments to the

Qualified Settlement Fund in an amount not to exceed the designated Gross Settlement Amount and the total amount of BANA's share of any payroll taxes.

100.    Class Members shall be entitled to participate in this settlement and receive a Settlement Award, regardless of their participation in other wage and hour class or collective action settlements or their purported release of wage and hour claims against BANA or its affiliates, including with respect to the MDL Action.  However, this shall be without prejudice to BANA's position in this Case, or in any other case or forum, that any prior or subsequent settlement or release that may or could encompass any of the claims of any Class Member alleged in the First, Second, Third, or Fourth Amended Complaints that are being resolved by this Settlement, including but not limited to the Floating Holiday claims, is otherwise enforceable to the fullest extent permitted by law.  It is also without prejudice to Plaintiff's position that prior or subsequent settlement or releases are not enforceable and/or do not encompass the claims set forth in this Case.

101.    <u>Settlement Administration Costs</u>.  Assuming that there is no significant change in the proposed scope of work or size of the class, the Claims Administrator's costs in administering the settlement of this Class Action is estimated to be no more than $ 185,000, and shall be reserved from the Gross Settlement Amount by the Claims Administrator.  Payments to the Claims Administrator shall be made after the Effective Date; however advances may be authorized in writing by the Parties to cover the costs of Claims Administration prior to the Final Fairness Hearing.

102.    <u>Attorneys' Fees and Costs</u>.  Plaintiff will seek Court approval for payment of Plaintiff's attorneys' fees in the amount of 25% of the Gross Settlement Amount, or Two Million Two Hundred and Fifty Thousand Dollars ($2,250,000.00), plus Plaintiff's actual litigation costs, which are currently estimated to be between $25,000 and $40,000.  BANA will not oppose Plaintiff's request for fees of up to $2,250,000 or oppose Plaintiff's request for reimbursement of actual litigation costs.  An appropriate 1099 form shall be provided to Class Counsel for such payments.

103.   <u>Enhancement Payment for Plaintiff</u>.  Plaintiff will seek Court approval for an enhancement payment to Plaintiff Sheri Garibaldi in the amount of Fifteen Thousand Dollars ($15,000.00).  This payment is intended to compensate Plaintiff for her efforts on behalf of the Settlement Class, which have substantially benefited the Settlement Class.  BANA will not oppose Plaintiff's request for an enhancement payment of up to $15,000.

104.   <u>Payment to the LWDA</u>.  The Parties agree to allocate Thirty Thousand Dollars ($30,000.00) to the settlement of the PAGA claims alleged in the Case, which the Parties believe in good faith is a fair and reasonable apportionment.  The Claims Administrator shall pay Seventy Five percent (75%), or $22,500.00, of this amount to the LWDA, and Twenty Five percent (25%), or $7,500.00, of this amount to Class Members in proportion to their Settlement Award.

105.   In arriving at the Net Funds Available For Settlement Awards, the Claims Administrator will deduct the following from the Gross Settlement Amount: (a) the enhancement payment to Plaintiff; (b) the award of attorneys' fees and costs to Class Counsel; (c) Settlement Administration Costs; (d) the payment to the LWDA for settlement of PAGA claims; and (e) the Reserve Fund.

106.   <u>Travel Class</u>.  Payments to the Travel and Points Class will be made from funds allocated to the Travel and Points Class Settlement Fund (after deductions).

107.   BANA will provide the Claims Administrator and Class Counsel information sufficient to show, with respect to each Travel Class Member, the Travel Class Member's employee identification number and each date on which the Travel Class Member worked at more than one location in a day ("a Travel Instance").  The time frame for this data set shall be April 12, 2009 through December 31, 2014.

108.   Each Participating Class Member who is a Travel Class Member shall receive $23.91 for each Travel Instance.  The total of each Participating Class Member who is a Travel Class Member's Travel Instances, multiplied by $23.91, shall be his or her Travel Recovery.  Fifty percent (50%) of this amount shall be allocated to wages.  Twenty-five percent (25%) of

this amount shall be allocated to travel reimbursement for unpaid travel expenses (e.g., mileage), and 25% of this amount shall be allocated to interest on both the wages and the unpaid travel reimbursement. This calculation method was devised as being not only equitable, but also as a practical and logistical tool to simplify the claims process.

109. <u>Points Class</u>. BANA will identify from its records each former, California-based, BANA employee whose employment with BANA ended between April 12, 2009 through December 31, 2014, and who had accrued, unused recognition points upon his or her separation from BANA's employment, and with respect to each such Points Class Member: (1) Their termination date; (2) Their number of accrued recognition points at the time of termination; and (3) Their number of recognition points redeemed post-termination. The time frame for this data set shall be April 12, 2009 to December 31, 2014. BANA will provide this information, as well as the Points Class Members' employee identification numbers, to both the Claims Administrator and Class Counsel.

110. Each Participating Class Member who is a Points Class Member shall receive a payment in accordance with the following calculation:

(a) <u>Points Value Pay</u>. Each Points Class Member's accrued recognition points upon termination ("Accrued Points") shall be multiplied by .05145 to arrive at the Accrued Points Amount; (2) the recognition points redeemed by each Points Class Member post-termination (i.e., "Redeemed Points") shall be multiplied by .025725 to arrive at the Redeemed Points Amount. The difference between the Accrued Points Amount and the Redeemed Points Amount shall be the Point Value Pay paid to each Points Class Member.

(b) <u>Interest</u>. Each Points Class Member shall also be entitled to Interest on the Points Value Pay, calculated at a rate of 10%, non-compounded, from the date of each Points Class Member's separation from BANA's employ through December 31, 2014.

(c) The foregoing method of calculation was devised as being not only equitable, but also as a practical and logistical tool to simplify the claims process.

111.    To the extent that there are insufficient funds in the Travel and Points Class Settlement Fund to make full payment for each Participating Class Member contemplated in paragraphs 107 through 110, each Participating Class Member who is a Travel and Points Class Member shall have their payment reduced  on a *pro rata* basis.

112.    <u>Points and Travel Subclass</u>.  BANA will provide the Claims Administrator and Class Counsel with information sufficient to show: (a) if a Travel Class Member was separated from BANA's employ in California between April 12, 2010 and December 31, 2014 (the members of the Travel Subclass), the Travel Class Member's final rate of pay; and (b) the hourly rate of each Points Class Member at the time of his or her final separation from BANA's employ in California between April 12, 2010 and December 31, 2014.

113.    <u>Calculating the Individual Penalty Payment</u>.  The total Travel Recovery, Point Value Pay, and associated Interest of all Participating Class Members who are Travel and Points Class Members shall be subtracted from the Travel and Points Class Settlement Fund.  The remainder of the funds, if any, shall be allocated to the Penalty Amount.  The Penalty Amount will be paid to Participating Class Members in the Travel and Points Subclass.  The Penalty Amount shall be divided among the Participating Subclass Members as Individual Penalty Payments, which shall be calculated as follows:

(a)    The Claims Administrator shall calculate the Base Penalty for each Participating Member of the Travel and Points Subclass as follows: final rate of pay, multiplied by seven (7) (hours), multiplied by 30 (days).

(b)    Each of the following conditions will receive the following numeric value:

(i)    If the Participating Subclass Member is a member of the Travel Class, value = 1; and

(ii)    If the Participating Subclass Member is a member of the Points Subclass, value = 2

(c)    The Base Penalty for each Participating Subclass Member shall be multiplied by the sum of the values in sections (b) (i) and (ii), which shall constitute his or her

Weighted Base Penalty. The sum of all of the Weighted Base Penalties for all Participating Travel and Points Subclass Members shall be termed the Total Weighted Base Penalty.

(d)     Each Participating Subclass Member will receive an Individual Penalty Payment in proportion to his or her share of the Penalty Amount, given the number of underlying claims upon which their penalty claims are based. To accomplish this, the Claims Administrator shall engage in the following calculation:

(i)     Each Participating Subclass Member's Weighted Base Penalty shall be the numerator. The Total Weighted Base Penalty shall be the denominator. This proportion shall be equal to "x" over the Penalty Amount, with x constituting the "Individual Penalty Payment." The exact equation will be as follows:

*Individual Weighted Base Penalty/Total Weighted Base Penalty = "x"/Penalty Amount.*

*Solve for "x" as the Individual Penalty Payment.*

114.     <u>PTO Class</u>. Payments to the PTO Class will be made from funds allocated to the PTO Class Settlement Fund (after deductions).

115.     BANA will provide the Claims Administrator and Class Counsel with the following information with respect to each PTO Class Member:

(a)     The employee number of the PTO Class Member.

(b)     If the PTO Class Member is a member of the Part-Time PTO Subclass.

(c)     The number of accrued but unused OI Personal Hours from October 4, 2008 through December 31, 2014.

(d)     The number of accrued but unused OI Sick Hours from October 4, 2008 through December 31, 2014.

(e)     The number of accrued but unused Floating Holiday hours from October 4, 2008 through December 31, 2014.

(f)     The Termination Date of each PTO Class Member.

(g)     Whether the PTO Class Member opted-in to the settlement of the MDL Action.

(h)     Whether the PTO Class Member signed a severance agreement with the Bank in connection with his or her termination.

116.    Each Participating PTO Class Member's PTO Recovery shall depend on his or her share of the Total Weighted Units.  In calculating a Participating PTO Class Member's share of the Total Weighted Units, the Claims Member shall first assign the following unit value to each OI Personal Hour, OI Sick Hour, and/or FH Hour, and/or a Participating Class Member's membership in the Part-Time PTO Class.

(a)     An OI Personal Hour shall equal one hundred (100) Units.

(b)     An OI Sick Hour shall equal one (1) Unit.

(c)     An FH Hour shall equal twenty-five (25) Units.

(d)     If the participating PTO Member is a member of the Part-time PTO Subclass, he or she will receive 198 Units.

117.    The Claims Administrator will then add all the Units together, per Participating Class Member, to arrive at the Total Individual Units for that PTO Class Member.  The Claims Administrator will then perform the following calculations as to each Participating PTO Class Member's Total Individual Units:

(a)     If a Participating PTO Class Member opted into the MDL Settlement, the Total Individual Units shall be multiplied by .80.

(b)     If a Participating PTO Class Member signed a severance agreement in connection with his or her termination, the Total Individual Units shall be multiplied by .20

(c)     If a Participating PTO Class Member's employment with BANA terminated between October 4, 2008 and April 11, 2009, the Total Individual Units shall be multiplied by .80.

(d)     If a Participating PTO Class Member is a member of the Part-time PTO Class, the Total Individual Units shall be multiplied by 1.01.

(e)    If a Participating PTO Class Member's employment with BANA
terminated between April 12, 2010 and December 31, 2014, the Total Individual Units shall be
multiplied by 1.3.

118.    The sum of these calculations, for each Participating Class Member, shall be
called the Participating Class Member's Weighted Units.

119.    The Claims Administrator will then add all the Participating Class Member's
Weighted Units together to arrive at the Total Weighted Units.

120.    The Claims Administrator will then calculate each Participating Class Member's
PTO Recovery as a proportion of his or her share of the Total Weighted Units. Specifically, Each
Participating Class Member's Weighted Units shall be the numerator. The Total Weighted Units
of the Participating Class Members shall be the denominator. A Participating PTO Class
Member's Individual PTO Recovery shall be equal to "x" over the PTO Settlement Fund (after
deductions), with "x" constituting the "Individual PTO Recovery." The exact equation will be as
follows:

*Individual Weighted Units/Total Weighted Units = "x"/PTO Settlement Fund."*
*Solve for "x" as the Individual PTO Recovery.*

121.    Fifty percent (50%) of each Participating Class Member's Individual PTO
Recovery shall be attributed to wages. Twenty-five percent (25%) of each Participating Class
Member's Individual PTO Recovery shall be attributed to interest. Twenty-five percent (25%) of
each Participating Class Member's Individual PTO Recovery shall be attributed to penalties.

122.    In providing Class Members with their anticipated PTO Recovery in the notice
sent to the Class, the Claims Administrator shall assume that PTO Class Members totaling 50%
of the Total Weighted Units will participate in the Settlement.

125.    Individual Settlement Award. The Individual Settlement Award for each
Participating Class Member shall be the total of their Travel Recovery, Points Value Pay,
Interest, Individual Penalty Payment, and PTO Recovery.

126.   <u>Tax Treatment of Payments.</u>  From each Participating Class Member's Settlement Award, the Claims Administrator shall deduct the proper amounts for the Participating Class Member's share of federal and state income tax withholdings as set forth in this Agreement.  In making these deductions, the Claims Administrator shall report any amount considered wages to the appropriate tax authorities on a Form W-2 issued to the Participating Class Member.  The Claims Administrator shall report any amount not considered wages to the appropriate taxing authorities on a Form 1099 issued to the Participating Class Member.  Any enhancement payment to Plaintiff will be treated as non-wage income and reported by the Claims Administrator to the appropriate taxing authorities on a Form 1099 issued to Plaintiff.  The Claims Administrator shall pay the proper amounts to the Internal Revenue Service and state and local tax authorities after the Effective Date and issue the appropriate tax forms.

127.   All Settlement Awards shall be deemed to be paid to Participating Class Members solely in the year in which such payments are actually received by them.

128.   <u>No Effect on Benefit Plans.</u>  No employee benefit provided by BANA to any Class Member, including but not limited to any 401(k) benefits, shall increase or accrue as a result of any payment made in accordance with this Agreement.

129.   <u>No Additional Contribution by BANA.</u>  The monetary obligation of BANA and all Released Parties under this Settlement Agreement is limited to the amount defined as the Gross Settlement Amount and any payroll tax obligations as set forth in paragraphs 97 and 98 of this Agreement.  BANA and the Released Parties may not be called upon or required to contribute additional monies above the Gross Settlement Amount and any payroll tax obligations as set forth in paragraphs 97 and 98 under any circumstances whatsoever.  All costs and expenses arising out of or in connection with the performance of this Settlement Agreement shall be paid from the Gross Settlement Amount paid by BANA into the Qualified Settlement Fund, except as expressly provided otherwise herein.  In the event that this Settlement Agreement is canceled, rescinded, terminated, voided, or nullified, or the settlement of the Action is barred by operation of law, or invalidated, or ordered not to be carried out by a court of competent jurisdiction, BANA will

cease to have any obligation to pay any portion of the Gross Settlement Amount to the Qualified Settlement Fund, or any other party under the terms of this Settlement Agreement, and all previous disbursements made from BANA to the Qualified Settlement Fund will immediately revert back to BANA. In the event that this Settlement Agreement is canceled, rescinded, terminated, voided, or nullified by an act or circumstance outside of BANA's control, any Settlement Administration Costs already incurred shall be shared equally by Plaintiff and BANA. Otherwise, BANA shall be solely responsible for the Settlement Administration Costs.

130.   V.   **SETTLEMENT ADMINISTRATION**

131.   The Parties have chosen KKC LLC to administer this settlement and to act as the settlement claims administrator (the "Claims Administrator"). The Claims Administrator will administer disbursements from the Gross Settlement Amount paid by BANA into the Qualified Settlement Fund, including, but not limited to, distributing the Notice of Class Settlement and Claim Form, calculating Settlement Awards, calculating the employee's share of payroll tax, calculating interest owed, preparing and issuing all disbursements to be paid to Class Members, Class Counsel, the Labor Workforce Development Agency ("LWDA"), and the local state and federal payroll tax authorities, and handling inquiries and/or disputes about the calculation of the Settlement Awards. The Claims Administrator shall be responsible for the timely filing of all federal, state and local tax returns of the Qualified Settlement Fund and making the timely payment of any and all taxes and withholdings required with such returns. The Claims Administrator shall coordinate as necessary with Defendant to report and remit all state and unemployment payroll taxes to the California Employment Development Department, and other tax agencies. The Claims Administrator shall establish an email address and toll-free telephone number to direct inquiries regarding the Notice of Class Settlement and Claim Form and determination of Settlement Awards. All questions by Eligible Class Members shall be directed to the Claims Administrator and Class Counsel. All Settlement Administration Costs associated with administering disbursements from the Qualified Settlement Fund including, but not limited to, the fees and costs of the Claims Administrator and the cost of the Notice of Class Settlement,

shall be paid entirely from the Gross Settlement Amount.  The Parties expect that the Claims

Administrator shall conduct all administration of all disbursements of the Gross Settlement

Amount and that Class Counsel shall receive no portion of the Settlement Administration Costs

paid to the Claims Administrator.  However, as part of Class Counsel's application for an award

of attorneys' fees and costs pursuant to paragraph 96 and 102, above, Class Counsel may request

an award of appropriate attorneys' fees to compensate them for time spent addressing issues that

arise relating to administration of the Settlement, but in no event shall the total amount of

attorneys' fees requested by or awarded to Class Counsel exceed the amounts contemplated by

paragraph 102.

## VI.   CLASS NOTICE AND PROCEDURE FOR OBJECTIONS AND EXCLUSION

132.     The Claims Administrator shall disseminate the Notice of Class Settlement and

Claim Form substantially the same as the forms attached hereto as Exhibits A ("Notice of Class

Settlement") and B ("Claim Form"), or as otherwise approved by the Court, by giving notice by

first-class United States mail.

133.     The Notice of Class Settlement and Claim Form shall be provided to Eligible

Class Members in the following manner:

(a)     No later than thirty (30) calendar days after Defendant receives from the

Court an order granting preliminary approval of the settlement reflected in the Settlement

Agreement, Defendant will provide the Claims Administrator with a database including the

following information for each eligible member of the Class: (1) Eligible Class Members names

and employee identification numbers;  (2) last known addresses and telephone numbers; (2)

Social Security number; and (3) the data described in paragraphs 107, 109, 112, and 115

pertaining to each Eligible Class Member (the "Class List").  The Claims Administrator will keep

the Class List confidential, use it only for the purposes described herein, and return it to

Defendant upon final approval of the Settlement and the completion of the Claims

Administrator's obligations under this Agreement, or otherwise certify that it has been

permanently and irreversibly destroyed.  Unless otherwise agreed by the parties, all eligibility and Settlement Award determinations shall be based solely on electronic personnel and employment records provided by BANA and the formulas set forth in this Settlement Agreement.  To the extent any of the data in the electronic personnel records appear absurd or unreasonable, the parties shall meet and confer for the purpose of resolving any dispute or arriving at more accurate data.

(b)     Within thirty (30) calendar days of receipt of the Class List from Defendant, the Claims Administrator shall mail the Notice of Class Settlement and Claim Form by first-class United States mail, postage prepaid, to the last known address(es) of each Eligible Class Member.  The envelope containing the Notice of Class Settlement and Claim Form shall bear the following phrase, in bold type, 1/4 inch below the return address or 1/4 inch above the addressee's address: **RETURN SERVICE REQUESTED.**  The Claims Administrator will also mail a single postcard reminder notice to all Eligible Class Members who have not filed a claim form thirty to thirty-five days after the initial notice is sent.

(c)     With respect to those Eligible Class Members whose envelope containing the Notice of Class Settlement and Claim Form is returned to the Claims Administrator as undeliverable, the Claims Administrator shall promptly attempt to obtain a valid mailing address by use of one or more skip trace databases such as the Equifax, NCOA ("National Change of Address") database search, and skip trace.  If another address is identified, the Claims Administrator shall immediately thereafter send the Notice of Class Settlement and Claim Form to the new address.

(d)     All costs of preparing and sending the Notice of Class Settlement and Claim Form whether foreseen or not, shall be paid from the Gross Settlement Amount.

134.    For an Eligible Class Member to share in disbursements from the Net Funds Available For Settlement Awards (to become a "Participating Class Member"), the Claim Form must be signed by the Eligible Class Member or his or her authorized representative.  The Claim Form must be returned to the Claims Administrator no later than forty-five (45) days after the

date the Claims Administrator first mails the Notice of Class Settlement and Claim Form to Class Members. The Claims Administrator shall provide a self-addressed, postage paid envelope to each Class Member for this purpose.  Any completed Claim Form that is returned to the Claims Administrator and is postmarked more than forty-five (45) days after the date of first mailing of the Notice of Class Settlement and Claim Form to Eligible Class Members will not be accepted and processed.  However, if an Eligible Class Member can establish that a bona fide hardship prevented him or her from timely returning the Claim Form to the Claims Administrator, said Eligible Class Member will not be barred from sharing in the Net Funds Available For Settlement Awards, so long as the Claims Administrator receives his or her valid Claim Form before the date of the Final Fairness and Approval Hearing. Any dispute regarding the existence of a bona fide hardship regarding the untimely submission of a Claim Form shall be resolved in the manner set forth in paragraph 136 below.

136.  <u>Submission of Deficient Claim Forms</u>.  If any Eligible Class Member timely submits a deficient Claim Form then, within seven (7) days of the Claims Administrator's receipt of such Claim Form, the Claims Administrator shall send by first-class United States mail a notice to such Eligible Class Member informing him or her of the deficiency and that he or she has ten (10) days from the date of the notice (which shall be the date the notice is mailed) to cure the deficiency.  If such Eligible Class Member fails to timely cure the deficiency, said Eligible Class Member's rights to pursue any claims covered by the Settlement Agreement will be extinguished and said Eligible Class Member will not be entitled to any Settlement Award.

136.  <u>Dispute Process</u>.  Anyone who claims they are a Class Member but who did not receive a Notice of Class Settlement and Claim Form, or any Class Member who disputes the estimated or actual amount of his or her Settlement Award under the terms of the Settlement Agreement (or any of the information used to calculate the amount of their Settlement Award or any portion thereof) may indicate and explain such disagreement under penalty of perjury within forty-five (45) days of the Claims Administrator originally mailing the Claim Form.  Any such Class Member must submit written documentation to the Claims Administrator relating to his or

28

her dispute.  The Claims Administrator shall notify Defendant's Counsel and Class Counsel of any such dispute no later than ten (10) calendar days after receiving notice of the dispute.  In the case of a dispute, Defendant's records shall control and will have a rebuttable presumption of correctness.  For any dispute that arises, counsel for the Parties may stipulate to a compromise or stipulate to allow the Claims Administrator to resolve the dispute and make a final and binding determination without hearing or right of appeal as to (a) whether to include the individual as a Participating Class Member; (b) whether or not a bona fide hardship prevented a Class Member from timely returning the Claim Form to the Claims Administrator such that the untimely submission should be excused and the Claim Form should be honored; and (c) the amount of any Class Member's Settlement Award.

137.    <u>Requests for Exclusion from Class</u>.  Any person who receives a Notice of Class Settlement and Claim Form may request to be excluded from the Settlement Class by submitting a Request for Exclusion.  Any such request must be made in accordance with the terms set forth in the Notice of Class Settlement and will be timely only if postmarked no later than forty-five (45) days after the mailing of the Notice of Class Settlement and Claim Form by the Claims Administrator, or if otherwise agreed by the Parties, through Class Counsel and Defendant's Counsel, in writing.  Requests for Exclusion that do not include all required information, or that are not submitted on a timely basis, will be deemed null, void and ineffective.  Persons who are eligible to and do submit valid and timely requests to opt out of or be excluded from the settlement will not participate in the settlement, nor will they be bound by the terms of the proposed settlement, if it is approved, or any final judgment entered in the Action.

138.    <u>Objections to Settlement</u>.  Any Class Member wishing to object to the approval of this settlement must file his or her objection with the clerk of the Courtno later than 14 calendar days before the original date scheduled for the hearing regarding final approval of the settlement, or such number of days as the Court shall specify before the date of the final approval hearing.

(a)    Any Class Member who fails to timely file such a written statement of his or her intention to object, or who submits a Request For Exclusion, shall be foreclosed from

making any objection to this settlement, unless otherwise ordered by the Court.

(b)   Counsel for the Parties shall file any response to any objections to the settlement submitted by any Class Members at least five court days before the date of the final approval hearing, or as otherwise ordered by the Court.

139.   <u>Failure to Submit Request For Exclusion</u>.  Regardless of whether they submit a Claim Form, any Eligible Class Member who fails to submit a timely Request For Exclusion to the Claims Administrator by following the procedure set forth in the Notice of Class Settlement shall automatically be deemed to have their rights and claims with respect to the issues resolved in this Settlement Agreement extinguished upon the granting of final approval and any judgment the Court ultimately enters approving this Agreement.  Any such Eligible Class Member's rights to pursue any claims covered by the Action will be extinguished.

140.   The Claims Administrator shall provide the Parties with a weekly update as to the number of Claim Forms and Requests for Exclusion it has received from Eligible Class Members.

141.   Upon completion of the forty-five (45) day time period in which Eligible Class Members can timely submit a Claim Form or Request for Exclusion, the Claims Administrator shall inform the Parties as to the total number of Eligible Class Members who submitted a Claim Form or Request for Exclusion.

142.   The Claims Administrator shall, as soon as possible after expiration of the 45 day notice and claims period, and at least 45 days before the Final Fairness Hearing, provide Defendant's Counsel and Class Counsel with an excel-based register listing all Participating Class Members (or whose Claim Forms the Claims Administrator and/or Defendant's Counsel and Class Counsel have agreed to accept) and the proposed Settlement Awards for those individuals for verification.  This register will also include data as to each category of each Participating Class Member's Settlement Award (e.g, Travel Recovery, Points Value Pay, PTO Recovery, Etc.).

143.   Upon verification of the proposed Settlement Awards for all Participating Class Members who submitted timely and valid Claim Forms (or whose Claim Forms the Claims

Administrator and/or Defendant's Counsel and Class Counsel have agreed to accept), the Claims Administrator shall calculate the total amount of the employer's share of payroll taxes.

144.    At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage Eligible Class Members to submit written objections to the settlement or request exclusion from the settlement, or appeal from the Order and Final Judgment.


## VII.   <u>FUNDING OF SETTLEMENT AND DISBURSEMENTS</u>

145.    <u>Funding of Qualified Settlement Fund</u>.  Within fifteen (15) calendar days after the Effective Date, Defendant shall wire the Gross Settlement Amount to the Claims Administrator for deposit into the Qualified Settlement Fund, as well as a separate amount sufficient to cover the amount of the employer's share of payroll taxes for the Settlement Awards as calculated by the Claims Administrator.

146.    <u>Disbursement of Settlement Awards, Attorneys' Fees and Costs, and Service Awards</u>.  No later than fifteen (15) calendar days after Defendant has wired the Gross Settlement Amount into the Qualified Settlement Fund, the Claims Administrator shall issue and mail the checks representing the Settlement Awards, as well as disburse any court-approved attorney's fees and costs (consistent with paragraphs 96 and 102), Settlement Administration Costs, payment to the LWDA, and enhancement payment.  The mailing of Settlement Awards shall be by first-class United States mail to the last known mailing address of each Participating Class Member.  Class Counsel shall be paid either by check or wire transfer per the written instructions provided by Class Counsel to the Claims Administrator.

147.    The Claims Administrator shall make the required payments as set forth in the Court's Final Order and Judgment.  The Claims Administrator must keep counsel for the Parties apprised of all distributions of Settlement Awards and upon completion of the mailing of the Settlement Awards, the Claims Administrator shall promptly provide a written report to counsel for the Parties showing all payments made to Participating Class Members, tax authorities, Plaintiff, Class Counsel and the Claims Administrator.

148.    Any amount of the Reserve Fund remaining 180 days after the Effective Date, and after any correctable errors or omissions are covered will be donated to the East Bay Community Law Center under the *cy pres* doctrine, subject to court approval.

149.    Settlement Award checks shall remain valid and negotiable for 180 days from the date of their issuance and may thereafter automatically be canceled if not cashed by a Class Member within that time period.  The Claims Administrator shall provide a list of any settlement checks that are not cashed/negotiated by Class Members to counsel for the Parties at the conclusion of the 180-day period, and within 10 days of the expiration of the 180-day period, the Claims Administrator shall transfer any remaining funds to the State of California Unclaimed Property Fund.

150.    Upon completion of the administration of the settlement under this Agreement, the Claims Administrator shall provide to Defendants' and Class Counsel the following: (a) specimens of all form documents sent to Class Members, including the Notice of Class Settlement and Claim Form; (b) copies of all non-privileged documents actually sent to Class Members, including without limitation, those itemized in (a), *supra*; and (c) a register listing all Class Members and the payment made to each Class Member under this settlement.  In addition, the Claims Administrator shall provide to Defendant a register of all Eligible Class Members who excluded themselves from the settlement.

## VIII.  <u>RELEASE OF CLAIMS</u>

151.    Solely for purposes of settlement, there will be a Settlement Class consisting of the Classes and Subclasses.   If the Court does not grant preliminary approval or final approval of the Settlement reflected herein, the Parties agree that they will placed in the same position as if this Agreement had never existed with each side reserving the right to present and/or oppose a contested motion for class certification.  The Parties further agree that class certification for purposes of this Settlement Agreement is not an admission that class certification is proper under the standard applied to contested certification motions and that other than according to the terms

32

of the Stipulation will not be admissible in this or any other proceeding as evidence that (i) a class should be certified or (ii) Defendant is liable in any way. Defendant expressly reserves its rights to oppose class certification of any purported class should this Settlement Agreement not become final and effective.

152. This Settlement Agreement shall constitute a full and complete settlement and release of only those claims, demands, rights, liabilities, and causes of action that were asserted in the Complaint, First Amended Complaint, Second Amended Complaint, Third Amended Complaint, and Fourth Amended Complaint and/or that arise from or relate to claims made in this Case, but *only* with respect to claims that arose from the Class Members' employment by BANA, and no other Bank of America entity (the "Released Claims").

153. This Settlement Agreement releases no claims, other than the Released Claims.

154. This Settlement Agreement shall become effective in full upon the Effective Date.

155. In exchange for the Settlement Amount, it is hereby agreed, by and between Plaintiff and BANA, that upon entry of the Order and Final Judgment, each Class Member (including Plaintiff) shall be deemed to have and by operation of law shall have jointly and severally released and forever discharged BANA and each of its past, present and future parents, subsidiaries and affiliates (including, but not limited to, Bank of America Corporation) and each of their respective present and former officers, directors, stockholders, agents, employees, insurers, co-insurers, reinsurers, attorneys, accountants, auditors, advisors, representatives, consultants, pension and welfare benefit plans, plan fiduciaries, administrators, trustees, partners, predecessors, successors and assigns (referred to herein as "Released Parties") from any and all Released Claims, including any and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorney's fees, damages, wages, premium wages, penalties, interest, action or causes of action, contingent or accrued for, known or unknown, including without limitation, claims arising under the California Labor Code, California Industrial Welfare Commission Wage Order and Regulations or California Business & Professions Code Section 17200 et seq.; claims for restitution and other equitable relief, damages, liquidated damages,

33

punitive damages, waiting time penalties of any nature, penalties of any nature whatsoever, including any claims for penalties related to itemized wage statements, interest, or any other benefit claimed as a result of this Case, through and including December 31, 2014. In addition, the Class Members shall be bound by all the terms of the Settlement Agreement and the Court's Order and Final Judgment.

156.    It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge the Released Claims. Except for Class Members who submit a timely and valid Request for Exclusion, upon entry of an order granting final approval and judgment in the Action, Plaintiff and each and every Class Member shall be bound by the terms of this Stipulation and shall have recourse exclusively to the benefits, rights, and remedies provided hereunder. Plaintiff and each and every Class Member shall be deemed to have, and by operation of the judgment and final approval order entered by the Court shall have fully, finally, and forever released, relinquished, and discharged each and all of the Released Parties from any and all Released Claims (including unknown Released Claims) through December 31, 2014.

157.    With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, Plaintiff and the Class Members shall and have, by operation of the judgment and final approval order entered by the Court, waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of § 1542 of the California Civil Code, which provides:

> **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."**

Plaintiff and each and every Class Member shall be deemed to have acknowledged that this Agreement is intended to include in its effect all Released Claims that they do not know or suspect to exist in their favor at the time of the final approval of this Agreement.

158.    Plaintiff and each and every Class Member shall be deemed to have acknowledged and agreed that: (1) their Released Claims are disputed; (2) the payments set forth herein constitute full payment of any amounts allegedly due to them for the Released Claims; and (3) they have received full and complete reimbursement of all business-related mileage of the type alleged in the Fourth Amended Complaint. In light of the payment by Defendant of all amounts due to them, Plaintiff and each and every Class Member shall be deemed to have acknowledged and agreed that California Labor Code section 206.5 is not applicable to the Parties hereto. That section provides in pertinent part as follows:

> **"An employer shall not require the execution of any release of a release of a claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made."**

159.    Each Class Member shall be deemed to have made the foregoing Release and representations as if by manually signing them. Notwithstanding the release of claims set forth above, nothing in this Agreement shall be construed as prohibiting any Class Member from participating in the class action settlements or final resolutions of claims brought in *Lopez v. Bank of America, N.A.,* N.D. Cal. Case No. 3:10-cv-01207 or *Jorge Pineda v. Bank of America, N.A.*, San Francisco Superior Court Case No. 07819-00112.

## X.    <u>VOIDING THE AGREEMENT</u>

160.    If (a) the Court should for any reason fail to certify a class for settlement; or (b) the Court should for any reason fail to approve this settlement in substantially the form agreed to by the Parties (with the exception of approving any request for attorneys' fees and costs or an enhancement payment); or (c) the Court should for any reason fail to enter a judgment and order granting final approval; or (d) the judgment and order granting final approval is reversed, modified, or declared or rendered void, then (i) this Agreement shall be considered null and void, (ii) neither this Agreement nor any of the related negotiations or proceedings shall be of any force

or effect, (iii) all Parties to this Agreement shall stand in the same position, without prejudice, as if the Agreement had been neither entered into nor filed with the Court, and (iv) Class Counsel shall make repayment of any disbursements it received from the Gross Settlement Amount.

161.    If ten percent (10%) or more of the Eligible Class Members request exclusion and opt out of this settlement, then BANA, in its sole discretion, may nullify and void this Agreement in its entirety.  BANA shall have ten (10) calendar days after the expiration of the request for exclusion period set forth in paragraph 137 to inform Class Counsel of its decision to nullify and void this Agreement.

162.    If the Court does not approve any material condition of this Settlement Agreement or effects a fundamental change, the entire Settlement Agreement will be voidable and unenforceable.  The Parties expressly agree that the Court's approval or denial of any request for attorneys' fees and costs or an enhancement payment for Plaintiff are not material conditions to this agreement, and are to be considered by the Court separately from the fairness, reasonableness, adequacy, and good faith of the settlement.  Any order or proceeding relating to the application by Class Counsel of an award for fees and costs or for an enhancement payment for Plaintiff shall not operate to terminate or cancel this agreement.

163.    In the event that for any reason final distribution of the Settlement Awards does not occur (for example, because this Agreement and/or the judgment and order granting final approval is modified or reversed on appeal), the entire Gross Settlement Amount, including any interest accrued, shall remain the sole property of Defendant and any sums previously paid or distributed shall be returned to BANA (minus any Settlement Administration Costs incurred by the Claims Administrator).

164.    In the event of a timely appeal from the judgment and order granting final approval, the judgment and order granting final approval shall be stayed and the Settlement Awards shall not be distributed to Class Members pending the completion of the appeal.  Any interest accrued on the Gross Settlement Amount shall be retained by BANA.  If the judgment or

final approval of the settlement is reversed on appeal, then BANA is entitled to prompt return of the principal and all interest accrued.

## X.   <u>STAY OF PROCEEDINGS</u>

165.   The Parties agree to stay all proceedings in the Case with respect to the Released Claims only, except such proceedings as may be necessary to implement the Settlement Agreement, until the Effective Date or until the Settlement Agreement is voided or not approved.

## XI.   <u>MISCELLANEOUS PROVISIONS</u>

166.   <u>Settlement Agreement Voids and Supersedes Partial Settlement Agreement</u>. Pursuant to Paragraph 146 of the Parties' prior Partial Settlement Agreement, which provides for the amendment or modification of that agreement, by executing this Settlement Agreement, the Parties intend and hereby do amend and modify the Partial Settlement Agreement to replace it in its entirety with this Settlement Agreement. Upon execution of this Settlement Agreement, the Partial Settlement Agreement shall have no force or effect, shall create no obligation, duty or right. Notwithstanding this provision, if this Agreement is not approved by the Court or any reviewing Court, is voided or determined to be unenforceable or without effect, the Partial Settlement Agreement shall remain in full force and effect.

167.   The parties agree to fully cooperate with each other to accomplish the terms of the Settlement Agreement, including but not limited to, execution of such documents and taking such other action as reasonably may be necessary to successfully implement the terms of this Settlement Agreement. The parties to this Settlement Agreement shall use their best efforts, including all efforts contemplated by this Settlement Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Settlement Agreement and the terms set forth herein. For example, if the Court denies or expresses serious concerns about preliminary approval or denies final approval of the Settlement Agreement, the parties shall work in good faith to address any concerns raised by the Court, so that the parties may attempt to resubmit the Settlement Agreement for preliminary or final approval.

168.    Each Party to Bear Own Costs.  Except as specifically provided herein, the Parties hereto will bear responsibility for their own attorneys' fees and costs, taxable or otherwise, incurred by them or arising out of this Action, and will not seek reimbursement thereof from any Party to this Stipulation.

169.    Headings.  The descriptive headings of any paragraphs or sections of this Agreement are inserted for convenience of reference only and do not constitute any part of this Agreement.

170.    This Settlement Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, trustees, executors, administrators, successors and assigns.

171.    Non-Evidentiary Use.  Neither the fact of this Agreement, the existence of this Agreement, the terms of this Agreement, nor any order or action pursuant thereto (including Plaintiff's motion for preliminary or final approval of the Settlement) may be referred to, relied upon, cited, or used as evidence by any of the Parties, Eligible Class Members, Class Members, or their respective counsel in the Action or in any other action or proceeding; provided, however, that nothing contained in this section shall prevent this Agreement from being used, offered, or received in evidence in any proceeding to enforce, construe, or finalize this Agreement.

172.    No Collateral Attack.  This Agreement shall not be subject to collateral attack by any Eligible Class Member, Class Member, or any recipient of the Notice of Class Settlement after the Judgment and Final Order is entered.  Such prohibited collateral attacks shall include but not be limited to claims that the Settlement Award attributed to any Class Member or any information used to arrive at that their Settlement Award was erroneous or that the Class Member failed for any reason to receive timely notice of the procedure for disputing the calculation of his or her Settlement Award.

173.    This Settlement Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest, subject to Court approval.

174.     This Settlement Agreement and the attached exhibits constitute the entire agreement among these Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Settlement Agreement or the exhibits other than the representations, warranties and covenants contained and memorialized herein.  Exhibits A and B, which are incorporated by this reference as though fully set forth herein, are an integral part of the Settlement Agreement.  However, in the event of any conflict between the Settlement Agreement and the Exhibits, the terms of the Settlement Agreement shall control.  Except as noted in paragraph 166, the Parties expressly acknowledge that, with the complete execution of this Settlement Agreement, their prior Partial Settlement Agreement is void, superseded, and otherwise nullified.

175.     Counsel for all Parties warrant and represent that they are expressly authorized by the Parties whom they represent to negotiate this Settlement Agreement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Settlement Agreement to effectuate the terms hereof, and to execute any other documents required to effectuate the terms of this Settlement Agreement.  The Parties and their respective counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement Agreement.  In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement Agreement, or on any supplemental provisions that may become necessary to effectuate the terms of this Settlement Agreement, the Parties may seek the assistance of the Court to resolve such disagreement.  The person signing this Settlement Agreement on behalf of Defendant represents and warrants that he/she is authorized to sign this Settlement Agreement on behalf of Defendant.

176.     Assignment.  None of the rights, commitments, or obligations recognized under this Stipulation may be assigned by any Party, Eligible Class Member, Class Member, Class Counsel or Defendant's Counsel without the express written consent of each Party and their respective counsel hereto.  The representations, warranties, covenants, and agreements contained

in this Agreement are for the sole benefit of the Parties under this Agreement, and shall not be construed to confer any right or to avail any remedy to any other person.

177.    All terms of this Settlement Agreement and any Exhibit attached hereto shall be governed by and interpreted according to the laws of the State of California.

178.    <u>Confidentiality</u>.  The Parties and their counsel agree that they will not issue any press releases or press statements, post any internet disclosures, have any communications with the press or media about this Agreement, or otherwise publicize the terms of this Agreement in any medium, including but not limited to internet blogs or chat rooms, Facebook, or a law firm website, prior to the entry by the Court of an order granting preliminary approval.  If counsel for either Party receives an inquiry about settlement from the media, counsel may respond only after the motion for preliminary approval has been filed and only by confirming the terms of the settlement.  Thereafter, Plaintiff and her counsel agree not to issue press releases, hold any press conferences, or otherwise actively publicize the settlement (except on Class Counsel's public website through webpages and links intended to inform class members about the settlement and its terms, the Court's orders in the case, and to maximize participation in the Settlement Fund). Notwithstanding the foregoing, the Parties shall have the right to disclose this Agreement as may be required under federal or state tax and/or securities laws or under generally accepted accounting principles, and may disclose in legal proceedings the terms of this Agreement.

179.    The Court shall retain jurisdiction with respect to the interpretation, implementation and enforcement of the terms of this Settlement Agreement and all orders and judgments entered in connection therewith, and the Parties and their counsel hereto submit to the jurisdiction of the Court for purposes of interpreting, implementing and enforcing the settlement embodied in this Agreement and all orders and judgments entered in connection therewith.

180.    Each of the Parties has cooperated in the drafting and preparation of this Settlement Agreement.  Hence, in any construction made to this Settlement Agreement, the same shall not be construed against any of the Parties.

181.   This Settlement Agreement may be executed in one or more counterparts and by facsimile or email.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Settlement Agreement shall exchange among themselves signed counterparts.

Dated: _March 4, 2015_            _Sheri Garibaldi_
                                  SHERI GARIBALDI
                                  Plaintiff and Representative on behalf of
                                  herself and the Settlement Class


Dated: _____        BANK OF AMERICA, NATIONAL
                                  ASSOCIATION


                                  By: _____
                                  Its:

181.   This Settlement Agreement may be executed in one or more counterparts and by facsimile or email.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Settlement Agreement shall exchange among themselves signed counterparts.

Dated: _____

SHERI GARIBALDI
Plaintiff and Representative on behalf of
herself and the Settlement Class

Dated: _____*March 5, 2015*_____

BANK OF AMERICA, NATIONAL
ASSOCIATION

By: _____
Its: _____

**Approved as to Form**

Dated: _3/6/2015_                    BAKER & SCHWARTZ, P.C.

                                     Chris Baker
                                     Attorney for Plaintiff Sheri Garibaldi


Dated: _3/6/2015_                    McGUIREWOODS LLP

                                     By: _____
                                     Michael D. Mandel
                                     Attorneys for Defendant
                                     Bank of America, N.A.

*Exhibit A*

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA
Notice of Proposed Class Action Settlement

# IF YOU WORKED FOR BANK OF AMERICA, N.A.  BETWEEN OCTOBER 2008 AND DECEMBER 2014, YOU COULD GET A PAYMENT FROM A CLASS ACTION SETTLEMENT

*A federal court has authorized this notice.  This is not a lawyer's solicitation.*

- The proposed class action settlement is for approximately $9,000,000  The majority of this amount will be used to make payments to former and current employees of Bank of America, N.A. (the "Bank") who submit claims forms.

- The settlement resolves a lawsuit which alleges that the Bank violated California law by: (1) not paying certain employees appropriately when they traveled between work locations (generally between shifts) on the same day; (2) not paying former employees the cash value of their unused Global Recognition Points upon termination; and (3) not paying former employees all of their earned, but unused, paid time off (like vacation, occasional illness days, and floating holidays) upon their termination.

- Court-appointed lawyers for the employees will ask the Court for up to $2,290,000 of the $9,000,000 settlement amount (approximately 25.5%) to pay for their fees and costs associated with the litigation. The lawyers have not been paid anything yet, and will not be paid unless the employees obtain a recovery.  The lawyers have thus far paid for all the costs of the litigation on the employees' behalf.

- The two sides disagree as to whether the Bank violated the law and how much the employees' claims are worth.  However, in light of the risk and expense of proceeding with litigation, both the Bank and Class Counsel for the Plaintiffs believe that this is a fair settlement of the claims.

- Your legal rights may be affected *whether or not you act*.  READ THIS NOTICE CAREFULLY.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **Submit a claims form** | The only way to receive a payment. |
| **Exclude yourself** | If you affirmatively exclude yourself (*i.e.*, "opt out" of the case), you will receive no payment from this settlement.  However, you can pursue your claims separately against the Bank.  The steps to exclude yourself are explained below. |
| **Object (and, if you choose, go to the final approval hearing)** | If you wish to challenge the terms of the settlement, you may file an objection with the Court, setting forth the reasons why you oppose the settlement.   You may also appear in Court and explain why you do not like the settlement or use an attorney to |

QUESTIONS?  CALL [TOLL FREE NUMBER] OR VISIT [WEBSITE ADDRESS]

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA
Notice of Proposed Class Action Settlement

|  |  |
|---|---|
|  | appear for you.  Note that you can exclude yourself or object, but you cannot do both. |
| **Do Nothing** | If you do nothing, you will not receive a payment from the settlement, but you will still give up the right to pursue any of the claims covered by this settlement. |

- The Court still must grant final approval of the settlement.  Payments will be made only after final approval and after any appeals are resolved.   Please be patient, as this process will take several months, or longer.

**DO NOT CONTACT THE COURT WITH ANY QUESTIONS REGARDING THIS SETTLEMENT OR THE CLAIM PROCESS.  ALL QUESTIONS REGARDING THE SETTLEMENT SHOULD BE DIRECTED TO THE CLAIMS ADMINISTRATOR OR CLASS COUNSEL (IDENTIFIED BELOW).**

**THIS NOTICE MAY AFFECT YOUR RIGHTS**

**1.    WHY SHOULD I READ THIS NOTICE?**

Because your rights may be affected by the proceedings in a class action lawsuit pending before Judge Susan Illston of the United States District Court, Northern District of California. The case is named *Garibaldi v. Bank of America Corporation, et al.* (Case No. 3:13-cv-02223-SI).

The Court has ordered that this Notice be sent to you so that you can be fully informed about the lawsuit and your rights and options in connection with it.

A settlement has been reached with the Bank with respect to this case.  The Court has granted preliminary approval to the settlement.  The Bank's records indicate that you are someone entitled to payment pursuant to the settlement.

**If you do not affirmatively request to exclude yourself from of the settlement, you will release certain claims you may have against the Bank regardless of whether you submit a claim form and receive any payment from the settlement.**

**2.    WHAT IS THIS CASE ABOUT?**

This case involves claims on behalf of three classes of employees.  You may belong to one or more of the three classes:

1.    All current and former non-exempt, part-time, Bank employees employed at retail banking centers in California who worked at more than one location in a day between April 1, 2009 and December 31, 2014 (the **"Travel Class"**);

2.    All former, California-based, Bank employees who were not paid the cash value

QUESTIONS?  CALL [TOLL FREE NUMBER] OR VISIT [WEBSITE ADDRESS]

of their accrued global recognition points upon separation from the Bank's employ between April 1, 2009 and December 31, 2013 (the **"Points Class."**)

      3.      All former, California-based, Bank employees with accrued but unused floating holiday or occasional illness hours between October 4, 2008 and December 31, 2014, as well as all part-time non-exempt Bank employees who regularly worked hours in excess of their hours based classification between April 12, 2009 and December 31, 2014. (the **"PTO Class"**).

Plaintiff claims that the Bank should have paid the members of the Travel Class for the time they spent traveling between bank locations during the work day. Plaintiff also claims that when members of the Travel Class missed a meal break as a result of this travel, they should have been compensated. Finally, Plaintiff claims that members of the Travel Class should have been reimbursed for the travel costs they incurred in traveling between locations on a single day.

Plaintiff claims that members of the Points Class had accrued, unused Global Recognition Points at the time of the termination of their employment with the Bank, but they were not able to redeem those points. Plaintiff claims that these points, once earned, cannot expire, and that the Points Class was entitled to the cash value of these points when they separated from the Bank's employ.

Finally, as for the PTO Class, Plaintiff claims that, pursuant to its personnel policies, the Bank was required to calculate part-time employees' paid time off based on their regularly-worked hours, as opposed to their hours-based classification. Plaintiff further claims that the Bank's "use-it-or-lose it" floating holiday and occasional illness day policies are illegal under California law.

The Bank denies Plaintiff's claims and contends that it has at all times complied with applicable law. The Bank also denies that this case can or should properly proceed as a class action.

## 3.    WHAT IS A CLASS ACTION?

A class action is a lawsuit in which one or a few plaintiffs bring suit on behalf of all the members of a similarly situated group to pursue a judgment for all members of the group. Class actions may be used by courts when the legal claims and evidence appear to raise issues of law or fact that are common to all members of the class, thereby making it fair to bind all class members to any orders and any judgment in the case.

## 4.    WHAT ARE THE SETTLEMENT TERMS?

The Court has granted preliminary approval to the proposed settlement and conditionally certified the settlement class. The settlement has not yet been granted final approval by the Court. Final approval will take place only after a fairness hearing, at which class members (such as yourself) will have an opportunity, if they desire, to comment on the proposed settlement.

     **a.**     **How Much Money Is The Bank Paying, And How Will It Be Divided?**

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA
Notice of Proposed Class Action Settlement

The proposed settlement requires the Bank to pay a gross sum of $9,000,000, plus its share of any payroll taxes. Of the $9,000,000 amount, $6,804,000 is for the benefit of the PTO Class, and $2,196,000 is for the benefit of the Travel and Points Classes. The amounts will be divided among class members, class counsel, the class representative, and the claims administrator (to pay for notice and administrative costs). In addition, a portion of the settlement will be paid to the California Labor and Workforce Development Agency (LWDA), and there will be a Reserve Fund which may be used to satisfy any later claims of class members. To the extent the Reserve Fund is not used by class members, it will be provided to the East Bay Community Law Center, a non-profit legal organization.

The Court must approve the entire settlement, including class counsel's application for attorneys fees and costs, as well as the service payment to the class representative.

The estimated allocation of this gross settlement payment is:

| | |
|---|---|
| $6,804,000 | (Payment by the Bank for PTO Class Claims) |
| + $2,196,000 | (Payment by the Bank for Travel and Points Class Claims) |
| = $9,000,000 | (Total Payment by the Bank (not including its share of payroll taxes)) |
| - $2,250,000 | (Plaintiffs' Attorneys' Fees) |
| - $40,000 | (Plaintiffs' Litigation Costs (Estimated)) |
| - $15,000 | (Class Representative's Service Payment) |
| - $185,000 | (Claims Administrator's Costs (Estimated)) |
| - $22,500 | (Payment to California Labor & Workforce Development Agency) |
| $40,000 | Reserve Fund (to pay for potential later claims) |
| = $6,447,500 | (Net Funds Available For Settlement Awards (Estimated)) |

The amount payable to all the Class Members is called the "Net Funds Available for Settlement Awards." If you submit a claim form, you will be sent a check for your share of these Net Funds pursuant to the terms of the settlement. Your share will be based on the Bank's payroll records and related data, and will be determined as follows:

**If you are a member of the Travel Class**, the settlement provides you with $23.91 for each time, according to the Bank's records, that you had to travel between locations in a single day. This is an estimate of your damages for travel time, missed breaks, unreimbursed mileage, and interest per instance of travel. It is based on a sampling of data provided by the Bank.

**If you are a member of the Points Class**, the settlement provides you with money depending on how many unused Global Recognition Points you lost as a result of your termination. The settlement assigns a value to each unused point and a value to each point you redeemed after your termination for something other than cash. The value of each point is 5.145 cents, which is approximately the same value the Bank placed on each point as part of its program. The settlement also provides for payment of interest.

QUESTIONS? CALL [TOLL FREE NUMBER] OR VISIT [WEBSITE ADDRESS]

If you are a part of the Travel or Points Classes you may also receive an additional payment to compensate you for "waiting time" and other penalties that Plaintiff claims you are owed.

**If you are a member of the PTO Class,** the settlement is intended to compensate you for your potential claims for unpaid or underpaid paid time off, such as vacation, floating holidays, and occasional illness hours. Generally speaking, the settlement assigns a "unit value" to each type of PTO hour or PTO claim you have. The settlement then either discounts or increases your total units depending on a number of variables that could affect the strength of your claim, resulting in an individual weighted unit number. You will receive your proportional share of all the weighted units of those PTO members who submit claims forms.

**An estimate of how much you could receive, assuming that 50% of the class members submit claims, appears on your claim form. You may receive more or less money than indicated on your claim form, depending on how many people send in a claim form, as well as the actual cost of administering the settlement, and the amount of any court-approved fees, costs, or enhancement payments.**

      **b.**    **What Are You Giving Up In Exchange For This Money?**

If you are a member of the Settlement Class and do not exclude yourself from the settlement, you will be deemed to have given a complete release of all claims related to the case. In other words, you will not be able to bring any claims alleging the same sort of violations based on the same sort of facts. For certain claims – primarily those for penalties for alleged inaccurate itemized wage statements and waiting-time penalties – you will also be excluded from bringing any claims for them in the future, regardless of the factual basis for them.

While you will be completely releasing certain claims (including claims for penalties for alleged inaccurate itemized wage statements and waiting-time penalties), please note that your participation in this settlement will not impact your ability to participate in two other class actions that predate this case and are currently pending against the Bank: *Lopez v. Bank of America, N.A.,* N.D. Cal. Case No. 3:10-cv-01207 and *Pineda v. Bank of America, N.A.,* San Francisco Superior Court Case No. 07819-00112.

If the Court grants final approval to the settlement, the Court will enter a final judgment and dismiss all of the claims described in this Notice and the Settlement Agreement with prejudice.

      **C.**    **Can I Receive Payment Even If I Have Participated In A Prior Class Action Settlement Or Signed A Severance Agreement?**

Yes. You can participate in this settlement even if you have participated in other prior class action settlements with the Bank, and even if you have previously signed a severance agreement with the Bank. However, if either (or both) of these apply to you, the amount of your settlement payment will be reduced to reflect the reduced likelihood of success of you prevailing on your claims if they had proceeded in litigation.

QUESTIONS?  CALL [TOLL FREE NUMBER] OR VISIT [WEBSITE ADDRESS]

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA
Notice of Proposed Class Action Settlement

## 5.   HOW DO I RECEIVE A PAYMENT FROM THE SETTLEMENT?

**In order to receive a payment, you must complete and sign the enclosed Claim Form** and mail it to the Claims Administrator.  There is a postage pre-paid, self-addressed, envelope included with this Notice.  Your Claim Form must be mailed by first class mail and be postmarked no later than [DATE] .    The Claim Form should be sent to:

Garibaldi v. Bank of America, N.A. Class Action Settlement
c/o KCC LLC
[Address]
[Tel.]

If you lose, misplace, need another Claim Form or believe you have not been sent the necessary forms, you should contact the Claims Administrator or Class Counsel.

## 6.   DO I HAVE TO PARTICIPATE IN THIS SETTLEMENT?

**No.  However, if you wish to exclude yourself (or opt out) from the Settlement, you must submit a letter requesting exclusion.**

Your request for exclusion must be signed by you personally, and it must clearly state: (1) your name, address, and telephone number, and (2) your wish to be excluded from the Settlement Class.

**Your letter requesting exclusion must be delivered to the Claims Administrator and postmarked on or before  _[45 days after original mailing], and mailed to:**
_____.

If you submit a properly completed and timely request for exclusion, you will not be bound by the settlement and you will not be eligible to participate in the potential benefits. Moreover, if you opt out, you will not be entitled to object to the settlement or to appear and be heard at the final fairness hearing.

**If you do not request exclusion in the manner and time prescribed, you will be bound by the settlement and will release claims you may have against the Bank, even if you do not submit a Claim Form.**

**DO NOT SUBMIT BOTH A REQUEST FOR EXCLUSION FORM AND A CLAIM FORM.**  If you submit both, and if the Claims Administrator is unable to contact you to ascertain your intent, the request for exclusion form will be deemed invalid, the timely claim for will be accepted for payment pursuant to the terms of the settlement, and you will be bound by the terms of the settlement.

## 7.   WHAT IF I DO NOT AGREE WITH THE INFORMATION ON MY CLAIM FORM?

QUESTIONS?  CALL [TOLL FREE NUMBER] OR VISIT [WEBSITE ADDRESS]

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA
Notice of Proposed Class Action Settlement

Depending on the class or classes to which you belong, the Claim Form enclosed with this Notice lists may include: (1) the number of times, according to the Bank's records, that you had to travel between locations in a single day, (2) whether your regularly-worked hours exceeded your hours-based classification; (3) how many unused floating holiday and occasional illness hours you had at the time of your termination; and/or (4) the number of accrued but unused recognition points you had upon termination. The Claims Form will also include your anticipated payment under the settlement.

If you wish to challenge the information listed on your Claim Form, you may do so by submitting a written challenge to the Claims Administrator, along with the signed Claim Form, by _____, 2015 (within 45 days of the date of mailing of this Notice). You must include supporting evidence or documentation, in accordance with the instructions on the Claim Form, and sign the challenge under penalty of perjury. The Claims Administrator, along with the Bank's Counsel and Class Counsel, will evaluate the evidence you submit and, after reviewing the Bank's records, will make a final decision, which will be binding on you.

## 8.   CAN I OBJECT TO THIS SETTLEMENT?

**Yes.**

The Court has scheduled a final fairness hearing on _____ at ____ a.m. in Courtroom 10 of the Northern District of California, which is located at 450 Golden Gate Ave., San Francisco, California, 94102, to hear evidence and testimony regarding whether final approval should be given to the proposed Settlement. The Court may continue the time and date of the hearing without further notice. The class representative and class counsel will submit their application for service awards, costs, and fees on or before _____.

You can ask the Court to deny approval by filing an objection. You cannot ask the Court to order a larger settlement; the Court can only approve or deny the settlement as presented to it by the parties. If the Court denies approval, no settlement payments will be made and the lawsuit will continue. If that is what you want to happen, you must object.

You may object to the proposed settlement in writing. You may also appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for paying that attorney.

All written objections and supporting papers must: (a) clearly identify the case name and number (Garibaldi v. Bank of America, Case No. 3:13-CV-02223-SI), (b) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA, 94102-3489, or by filing them in person at any location of the United States District Court for the Northern District of California, and (c) be filed or postmarked on or before: [14 days before the date originally scheduled for the final fairness hearing].

## 9.   WHAT HAPPENS IF THE SETTLEMENT DOES NOT BECOME FINAL?

QUESTIONS?  CALL [TOLL FREE NUMBER] OR VISIT [WEBSITE ADDRESS]

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA
Notice of Proposed Class Action Settlement

If the Settlement is not approved by the Court or is later terminated, you will receive no benefits under the Settlement, the lawsuit will proceed as active litigation with the same or different class definition, and you will not be bound by the releases in the Settlement.

### 10.    WHO REPRESENTS THE SETTLEMENT CLASS?

Sheri Garibaldi is the class representative who represents the interests of Class Members in this Litigation.  Garibaldi and the Settlement Class are represented by:

Chris Baker
Baker & Schwartz, P.C.
44 Montgomery Street, Suite 3520
San Francisco, CA  94104
cbaker@bakerlp.com
415.433.1064

### 11.    OTHER THAN THE CLASS MEMBERS, WHO ELSE IS BEING PAID UNDER THE SETTLEMENT AND WHY?

Subject to approval of the Court, Class Counsel's attorneys' fees and costs, Plaintiff's enhancement award and settlement administration costs shall be paid from the proposed Settlement amount.

As noted above, in connection with the fairness hearing on _____, class counsel will make a request to the Court for the following: (1) An attorneys' fees award of $2,250,000; (2) Reimbursement of costs and expenses of up to $40,000; (3) An incentive award of $15,00 for the named plaintiff, Sheri Garibaldi, as compensation for her representation of the class throughout the litigation; (4) Payment of settlement administration costs, currently estimated to be no more than $185,000; and (5) Payment to the LWDA of $22,500 in settlement of PAGA claims.

### 12.    HOW DO I OBTAIN ADDITIONAL INFORMATION?

This notice is intended only to provide a summary of the circumstances surrounding the case, the terms of the proposed Settlement, and related matters.  In case there is any discrepancy between this Notice and the Settlement Agreement, the terms of the Settlement Agreement will control.

You can view a copy of the Settlement Agreement and other key documents in this case at the following web address:  [WEBSITE PAGE].  You can also access the Court's docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https:/ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District for the Northern District of California in San Francisco, California, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

You can also contact Class Counsel at garibaldisettlement@bakerlp.com or call Class Counsel at (415) 433-1064.  You may also contact the Claims Administrator toll-free at _____.

QUESTIONS?  CALL [TOLL FREE NUMBER] OR VISIT [WEBSITE ADDRESS]

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA
Notice of Proposed Class Action Settlement

**PLEASE DO NOT CONTACT THE COURT WITH ANY QUESTIONS REGARDING THIS SETTLEMENT OR THE CLAIM PROCESS. ALL QUESTIONS REGARDING THE SETTLEMENT SHOULD BE DIRECTED TO THE CLAIMS ADMINISTRATOR OR CLASS COUNSEL.**

*Exhibit B*

# CLAIM FORM

*Sheri Garibaldi v. Bank of America Corporation, et al.*
United States District Court, Northern District of California Case 3:13-cv-02223-SI

**IF YOU WANT TO RECEIVE MONEY UNDER THIS SETTLEMENT, YOU MUST SIGN THIS CLAIM FORM AND SEND IT TO THE CLAIMS ADMINISTRATOR.  A POSTAGE PRE-PAID ENVELOPE IS INCLUDED FOR THIS PURPOSE.**

YOU MUST COMPLETE, SIGN, AND RETURN THIS CLAIM FORM BY MAIL (FIRST CLASS U.S. MAIL OR EQUIVALENT), **ON OR BEFORE [45 days after mailing]_____, 2015**, OR YOU WILL BE INELIGIBLE TO RECEIVE MONETARY RECOVERY.  A POSTAGE PRE-PAID, SELF ADDRESSED, ENVELOPE IS INCLUDED FOR THIS PURPOSE.

> MAIL TO:
>
> *Garibaldi v. Bank of America Corp.*
> Claims Administrator
> c/o _____
> P.O. Box _____
> _____

## INSTRUCTIONS

1. You must complete, sign, and mail this Claim Form in order to be eligible for monetary recovery.

2. If you move, please send the Claims Administrator your new address.  It is your responsibility to keep a current address on file with the Claims Administrator.

3. If you wish to challenge the employment data below, you must submit your challenge by [45 days after mailing]_____, 2015.

4. It is advised that you maintain a copy of your Claim Form for your records until you receive payment.

**YOU MUST COMPLETE ALL PAGES OF THE CLAIM FORM.**

&lt;&lt;Claim Number&gt;&gt;                     Name/Address Changes, if any:
&lt;&lt;Name&gt;&gt;                            _____
&lt;&lt;Address&gt;&gt;                         _____
&lt;&lt;City&gt;&gt;, &lt;&lt;State&gt;&gt; &lt;&lt;Zip Code&gt;&gt;     _____
                                   _____

( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___
Home Telephone Number

     1.     Bank of America, N.A.'s (hereafter, the "Bank") records show that: (a) you worked for the Bank as a non-exempt (hourly), part-time employee at a retail banking center in California **and** you worked at more than one retail banking center in a day in California; and/or (b) you used to work for the Bank in any capacity, and upon your termination you had accrued Global Recognition Points, accrued floating holiday hours, and/or accrued occasional illness hours that you had not used; and/or (c) you were a part-time, non-exempt Bank employee and the average number of hours you worked per week exceeded your hours-based classification as of the time that you last worked for the Bank as a part-time employee or the termination of your employment.

     2.     Based on the settlement formula, including the data set forth below (as well as other data as identified in the Settlement Agreement), the Parties estimate that the gross amount you will receive if you file a claim is approximately:

<div align="center">

[AMOUNT]

</div>

**Note: This is only an estimate, based upon an assumption of the number of people who will submit claim forms. The amount you ultimately receive could be higher or lower, depending on how many persons participate in the settlement, the claims administration costs, and the amounts awarded by the Court in fees, costs and as an enhancement payment.**

     3.     This calculation is based on this data, as well as other data and factors referenced in the Agreement. The terms used below are defined in the Agreement.

| | |
|---|---|
| The number of times you traveled between retail banking center locations on the same day between April 12, 2009 and December 31, 2014. | _____ |
| At the time of your termination, your total number of accrued but unused:<br><br>1. Global Recognition Points.<br><br>2. Occasional Illness "Sick" Hours<br><br>3. Occasional Illness "Personal" Hours<br><br>4. Floating Holiday Hours | _____<br><br>_____<br><br>_____<br><br>_____ |
| Whether you were a part-time non-exempt employee whose average hours worked exceeded your hours-based classification at the time of your termination. | YES/NO |
| Whether you opted into the settlement in the case of *In Re Bank of America Wage and Hour Employment Litigation.* | YES/NO |
| Whether you signed a severance agreement in connection with your termination from the Bank. | YES/NO |
| Your termination date from the Bank. | |

**IF YOU WISH TO CHALLENGE ANY OF THE INFORMATION LISTED ABOVE, YOU MUST SUBMIT DOCUMENTATION AND AN EXPLANATION OF YOUR DISAGREEMENT, SIGNED UNDER PENALTY OF PERJURY, TO THE CLAIMS ADMINISTRATOR ON OR BEFORE _____, 2015 (WITHIN 45 DAYS AFTER THIS FORM WAS FIRST MAILED TO THE CLASS).**

## RELEASE OF CLAIMS

My signature constitutes my full and complete release of all Released Claims, as defined in the Settlement Agreement.   I understand that the Released Claims include all claims that were or could have been brought in this case in the light of the lawsuit's factual allegations.  These include: (1) claims for unpaid wages arising from time spent traveling between locations on the same day; (2) claims for unreimbursed travel costs associated with travel between locations; (3) claims for unpaid wages arising from the Bank's failure to pay me my accrued but unused global recognition points, occasional illness hours, or floating holiday hours at the time of my termination; (4) claims for unpaid wages arising from the Bank's decision to calculate my paid time off based on my hours-based classification as opposed to my average hours worked or scheduled.  I am releasing all claims for wages, penalties, attorneys' fees, costs, interest and any other compensation arising from the Released Claims, even if I am currently unaware of these claims, including claims under California Labor Code sections 201-203, 226, 226.7,510, 1194, 2698, et seq., and 2802.

I also understand that the Release of Claims set forth in this Claims Form is only intended to summarize the release of claims set forth in the Settlement Agreement, and that to the extent there is any conflict between this form and the Settlement Agreement, the Settlement Agreement will control.  A copy of the Settlement Agreement preliminarily approved by the Court is set forth at [WEBSITE]

I also understand that my participation in this Settlement will not preclude me from participating in any settlements of the *Lopez v. Bank of America, N.A.* or *Pineda v. Bank of America, N.A.* class actions, to the extent that I may be eligible to participate in one or both of those class actions.

Finally, I understand that I may participate in this Settlement even if I have participated in other settlements of wage and hour class or collective action lawsuits against Bank of America, or have previously signed a severance agreement.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

**SIGN AND PROVIDE THE LAST FOUR DIGITS OF YOUR SOCIAL SECURITY NUMBER IF YOU WISH TO RECEIVE YOUR MONEY UNDER THE SETTLEMENT AND RELEASE YOUR CLAIMS**

Date: _____          Social Security Number (last 4 digits only) _____

_____
Signature

# Exhibit 2

1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                       **NORTHERN DISTRICT OF CALIFORNIA**

10

11  SHERI GARIBALDI, on behalf of herself and          CASE NO. 3:13-CV-02223-SI
    all others similarly situated,
                                                       ~~[PROPOSED]~~ ORDER ON PLAINTIFF'S
12                  Plaintiff,                         **MOTION FOR PRELIMINARY
                                                       APPROVAL OF CLASS ACTION
13         vs.                                         SETTLEMENT:**

14  BANK OF AMERICA, NATIONAL                          **(1) PRELIMINARILY CERTIFYING THE
    ASSOCIATION, and DOES 1 through 10,                CLASSES AND SUBCLASSES FOR
15                                                     PURPOSES OF SETTLMENT;**
                    Defendants.
16                                                     **(2) APPOINTING CLASS COUNSEL;**

17                                                     **(3) PRELIMINARILY APPROVING THE
                                                       CLASS ACTION SETTLEMENT
18                                                     AGREEMENT;**

19                                                     **(4) SETTING A FINAL FAIRNESS
                                                       HEARING; AND**
20
                                                       **(5) DIRECTING THAT NOTICE BE
21                                                     MAILED TO CLASS MEMBERS**

22                                                     Date:  March 20, 2015
                                                       Time: 9:00 a.m.
23                                                     Ctrm: 10

24

25       Plaintiff's Motion for Preliminary Approval of a Class Action Settlement, Approval of

26  Class Notice, and Conditional Certification of Settlement Class came before this Court and was

27

28
                                                    1

heard on March 20, 2015 (the "Motion"). The Court considered the proposed class action Settlement Agreement, attached as Exhibit 1 to the Motion for Preliminary Approval, the submissions of counsel, and all other papers filed in this action.

The matter having been submitted, and good cause appearing therefore, this Court HEREBY ORDERS THE FOLLOWING:

1. This Order incorporates by reference the definitions in the Settlement Agreement, attached as Exhibit 1 to the Motion for Preliminary Approval (the "Settlement Agreement"), and all terms defined therein shall have the same meaning in this Order as set forth in the Settlement Agreement.

2. The Court GRANTS preliminary approval of the class Settlement Agreement. The Court finds that the Settlement falls within the range of possible approval.

3. Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), and for purposes of, and solely in connection with the Settlement, the Court finds that each of the requirements for certification of the classes and subclasses set forth in Plaintiff's Motion for Preliminary Approval are met and hereby certifies the following classes and subclasses, subject to this Court's final approval:

a. **"Travel Class"** which is those employees identified by Bank of America, N.A. ("BANA") pursuant to paragraph 107 of the Settlement Agreement as all current and former non-exempt, part-time, BANA employees employed at retail banking centers in California who worked at more than one location in a day between April 12, 2009 and December 31, 2014.

b. **"Points Class"** which is those employees identified by BANA as former, California-based, BANA employees who were not paid the cash value of their accrued Global Recognition Points upon separation from BANA's employment between April 12, 2009 and December 31, 2014.

c. **"PTO Class"** which is those employees identified by BANA who are members of the Part-Time PTO Subclass, FH Subclass, and OI Subclass. The PTO Class does not include persons who are members of the Inderbitzen Settlement Class.

2

1      d. **"Travel Subclass"** which is all members of the Travel Class who were
2   separated from BANA's employ in California between April 12, 2010 and December 31, 2014.

3      e. **"Points Subclass"** which is all members of the Points Class who were not
4   paid the cash value of their accrued recognition points upon separation from BANA's employment
5   between April 12, 2010 and December 31, 2013.

6      f. **"Part-Time PTO Subclass"** which is any former part-time, non-exempt
7   BANA employee (as defined by BANA policies), in California, with a Termination Date between
8   April 12, 2009 and December 31, 2014, and whose actual average hours worked exceeded his or
9   her hours-based classification at the time of his or her termination or as of the time they last
10  worked as a part-time employee.

11     g. **"Occasional Illness ("OI") Subclass"** which is former California-based
12  BANA employees with a Termination Date between October 4, 2008 and December 31, 2014 who
13  did not use all of their accrued occasional illness hours during that time period.

14     h. **"Floating Holiday (or "FH") Subclass"** which is former California-based
15  BANA employees with a Termination Date between October 4, 2008 and December 31, 2014 who
16  did not use all of their accrued floating holidays during that time period.

17    4. The Court, for settlement purposes only, finds that this action satisfies the
18  requirements for class action certification under Federal Rules of Civil Procedure 23(a) and
19  23(b)(3).  In support of this ruling, the Court conditionally and preliminarily finds that: (a) the
20  Class is so numerous that joinder of all members is impracticable; (b) there are questions of law
21  and fact common to the Class; (c) the named Plaintiff's claims are typical of the claims of the
22  Class; (d) the named Plaintiff and Plaintiff's Counsel have and are able to adequately represent the
23  Class; and (e) class-wide treatment of this dispute is superior to other available methods for
24  adjudicating the controversy.

25    5. If the Settlement Agreement is terminated or not consummated, or does not receive
26  final approval, the class certification shall be void and have no effect.  The parties shall retain their
27  respective rights to bring and oppose a motion for class certification, and the Settlement

28            3

1   Agreement shall not prejudice any party's positions regarding the appropriateness of class

2   certification.

3       6.      The Court appoints and designates the named Plaintiff Sheri Garibaldi as Class

4   Representative.

5       7.      The Court appoints and designates Baker & Schwartz, P.C. as Class Counsel, who

6   are located at the following addresses:

<div align="center">
Baker & Schwartz, P.C.<br>
44 Montgomery Street, Suite 3520<br>
San Francisco, CA  94104<br>
dschwartz@bakerlp.com<br>
Direct: 415.433-1064<br>
Fax: 415.520.0446
</div>

7       7.      The Court approves, as to form and content, the proposed Notice of Class Action

Settlement and proposed Claim Form substantially in the form attached hereto as **Exhibit A** and

**Exhibit B**, to the Settlement Agreement, including the procedure for Class Members to object to

or opt out of the Settlement, and accordingly directs that notice be given in the form and manner

consistent with this Order.  The Court finds that the proposed notice is the best means practicable

of providing notice under the circumstances and when completed shall constitute due and

sufficient notice of the Action, the proposed Settlement, and the Final Fairness Hearing to all

persons affected by and/or authorized to participate in the Settlement in full compliance with

Federal Rules of Civil Procedure 23(c) and (e) and the requirements of due process.

8       8.      The Court appoints and designates Kurtzman Carson Consultants  LLC ("KCC") as

the Claims Administrator.  The Court hereby directs the Claims Administrator to provide the

approved Class Notice in accordance with the schedule and procedures set forth below.

9       9.      The Court orders the following schedule for further proceedings:

10      10.     No later than thirty (30) days after the Court issues this Order, BANA shall provide

to the Claims Administrator an electronic Database with each Class Member's name, last known

address, social security number, and status as a current or former employee, as well as the

information set forth in the Settlement Agreement necessary to calculate each Class Member's

<div align="center">4</div>

1    recovery under the Agreement.  [*Estimated date of April 20, 2015*]

2        12.    Class Counsel will also establish a settlement website within thirty (30) days of this

3    Order and maintain it at least through the Final Fairness Hearing.  The website will include, at a

4    minimum, a copy of this Order, the Settlement Agreement, a summary of the settlement terms, and

5    the date and location of the Final Fairness Hearing. [*Estimated date of April 20, 2015*]

6        11.    The Claims Administrator will mail via first class mail the Notice of Settlement and

7    Claim Form directly to the last known address of each Class Member within thirty (30) days of

8    receiving the data from Defendant. [*Estimated date of May 20, 2015*]  Consistent with the

9    Settlement Agreement, the Claims Administrator will also promptly conduct a skip trace with

10   respect to all Notices that are returned undeliverable and re-mail the Notice if the another address

11   is identified.

12       12.    The Claims Administrator will also mail a reminder postcard concerning the

13   Settlement between thirty (30) and thirty-five (35) days after the initial mailing of the Notice and

14   Claim Form to all Class Members who have not, as of that time, submitted a Claim Form or

15   Request for Exclusion. [*Estimated last day of June 24, 2015*]

16       13.    Class Members, except for Plaintiff, will have forty-five (45) days from the date of

17   mailing the Notice of Settlement within which to mail a Claim Form.  The Claim Form must be

18   postmarked on or before forty-five (45) days from the date of the original mailing of the Notice of

19   Settlement, unless the Class Member can establish a bona fide hardship, the parties agree

20   otherwise, or the Court orders otherwise. [*Estimated date of July 6, 2015*]

21       14.    Class Members, except for Plaintiff, will have forty-five (45) days from the date of

22   mailing the Notice of Settlement within which to opt-out or request exclusion from the Settlement.

23   [*Estimated date of July 6, 2015*]  Class Members who wish to exercise this option must timely

24   submit a request for exclusion to the Claims Administrator.  Class Members who do not timely

25   submit an executed request for exclusion shall be part of the Settlement Class and bound by the

26   Settlement.  Class Members who timely submit a request for exclusion shall have no further role

27   in the Action, and for all purposes they shall be regarded as if they never were a party to this

28

**[PROPOSED] ORDER GRANTING PLAINTIFF SHERI GARIBALDI'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1  Action or a Class Member, and thus they shall not be entitled to any payment as a result of this

2  Settlement and shall not be entitled to or permitted to assert an objection to the Settlement.

3      15.    Consistent with the terms of the Settlement Agreement, the Claims Administrator

4  shall provide to Class Counsel and Defendant's Counsel weekly status reports, which will be

5  cumulative, setting forth the number of Class Members who have submitted a Claim Form or

6  request for exclusion.

7      16.    Class Counsel shall file Plaintiff's Motion(s) for Attorneys' Fees, Costs, and the

8  Enhancement Award, and its motion for Final Approval of the Settlement, no later than 35 days

9  before the date scheduled for the Final Fairness Hearing.  [*Estimated date of July 24, 2015*].

10     17.    Class Members will have until 14 calendar days before the original date scheduled

11 for the Final Fairness Hearing within which to file an objection to the Settlement. [*Estimated date

12 of August 14, 2015*].  Only Class Members who have not filed a request for exclusion may object

13 to the Settlement. To object, a Class Member must send a written objection to the Court or appear

14 at the hearing.

15     18.    Class Counsel shall file any reply papers in support of Plaintiff's Motion for

16 Attorneys Fees, Costs, the Enhancement Award, and for Final Approval of the Settlement, no later

17 than five court days before the hearing. [*Estimated date of August 21, 2015*]

18     19.    The parties shall file any response to any objections to the settlement no later than

19 five court days before the Final Fairness Hearing. [*Estimated date of August 21, 2015*]

20     20.    The Final Fairness Hearing in this matter, in which the Court will consider

21 Plaintiffs' Motions and any objections to the Settlement, shall be held before this Court on August

22 28, 2015 at 9:00 a.m. in Courtroom 10.

23     21.    If for any reason the Court does not execute and file a Judgment, or if the

24 "Effective Date" of the Settlement Agreement, as defined in Paragraph 10 of the Settlement

25 Agreement, does not occur for any reason whatsoever, the proposed Settlement Agreement, and all

26 evidence and proceedings had in connection therewith, shall be without prejudice to the *status quo*

27 *ante* rights of the parties to the litigation.

28

1    22.    Pending further order of the Court, all proceedings in this matter except those

2  contemplated herein and in the Settlement Agreement, are stayed.

3

4  Dated: _____March 20_____, 2015    _____

5                                          Hon. Susan Illston
                                           United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[PROPOSED] ORDER GRANTING PLAINTIFF SHERI GARIBALDI'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1

## CERTIFICATE OF SERVICE

2       I hereby certify that on March 6, 2015, I electronically transmitted the foregoing document

3  to the Clerk's Office using the CM/ECF System for filing and service via transmittal of a Notice

4  of Electronic Filing.

5       A Word version was also emailed to: SIpo@cand.uscourts.gov

6       I declare under penalty of perjury under the laws of the United States of America that the

   foregoing is true and correct.

7

8

9      Executed on March 6, 2015

10                        /s/ Chris Baker
                              Chris Baker

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

**[PROPOSED] ORDER GRANTING PLAINTIFF SHERI GARIBALDI'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**